UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO. 5:19-CV-00257-RH-MJF

MGFB PROPERTIES, INC., FLORA-BAMA MANAGEMENT, LLC, and FLORA-BAMA OLD S.A.L.T.S., INC.,

          Plaintiffs,

vs.

VIACOM INC. F/K/A MTV NETWORKS, 495 PRODUCTIONS HOLDINGS LLC, and 495 PRODUCTIONS SERVICES LLC,

          Defendants.

---

## **DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Viacom Inc. f/k/a MTV Networks, 495 Productions Holdings LLC, and 495 Productions Services LLC (collectively, "Defendants") respectfully request that this Court enter an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissing the Complaint of Plaintiffs MGFB Properties, Inc., Flora-Bama Management, LLC, and Flora-Bama Old S.A.L.T.S., Inc. (collectively, "Plaintiffs").

This motion to dismiss is supported by Defendants' Memorandum of Law and Declaration of Susan J. Kohlmann and accompanying exhibit, filed contemporaneously herewith and incorporated herein by reference.

WHEREFORE, Defendants respectfully request that this Court dismiss

Plaintiffs' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and grant such other and further relief as justice may require.

Respectfully submitted this 4th day of October, 2019.

By:   /s/ Susan J. Kohlmann
Susan J. Kohlmann (*Pro Hac Vice*)
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, NY 10022
Tel:  (212) 891-1600
Fax: (212) 891-1699
skohlmann@jenner.com

Robert W. Pass (FL Bar #183169)
CARLTON FIELDS, P.A.
215 South Monroe Street, Suite 500
Tallahassee, FL 32301
Tel:  (850) 224-1585
Fax: (850) 222-0398
rpass@carltonfields.com

*Counsel for Defendants*

**<u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1</u>**

Pursuant to N.D. Fla. Local Rule 7.1, I hereby certify that this Motion to Dismiss is in compliance with the Court's word limit.  According to the word processing program used to prepare this motion, the total number of words in the motion, inclusive of headings, footnotes, and quotations, and exclusive of the case style, signature block, and any certificate of service is 123.

Date:   October 4, 2019          By:    /s/ Susan J. Kohlmann
              Susan J. Kohlmann (*Pro Hac Vice*)
              JENNER & BLOCK LLP
              919 Third Avenue, 38th Floor
              New York, NY 10022
              Tel:  (212) 891-1600
              Fax: (212) 891-1699
              skohlmann@jenner.com

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 4, 2019, I filed the foregoing using the CM/ECF system, which will send notification to all counsel of record.

Date:   October 4, 2019          By:    /s/ Susan J. Kohlmann
              Susan J. Kohlmann (*Pro Hac Vice*)
              JENNER & BLOCK LLP
              919 Third Avenue, 38th Floor
              New York, NY 10022
              Tel:  (212) 891-1600
              Fax: (212) 891-1699
              skohlmann@jenner.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO. 5:19-CV-00257-RH-MJF

MGFB PROPERTIES, INC., FLORA-
BAMA MANAGEMENT, LLC, and
FLORA-BAMA OLD S.A.L.T.S., INC.,

       Plaintiffs,

vs.

VIACOM INC. F/K/A MTV
NETWORKS, 495 PRODUCTIONS
HOLDINGS LLC, and 495
PRODUCTIONS SERVICES LLC,

       Defendants.

_____

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................1

FACTUAL BACKGROUND ..........................................................5

LEGAL STANDARD....................................................................7

ARGUMENT ................................................................................7

    I.     THE FIRST AMENDMENT PRECLUDES APPLICATION OF THE LANHAM ACT. ................................8

         A.    The *Rogers* Test Applies To Defendants' Alleged Uses. ..................................................................10

         B.    The First Amendment Bars Plaintiffs' Federal Claims.................................................................13

    II.    PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER FLORIDA STATE LAW. .............................................23

         A.    Because Plaintiffs Fail To State A Claim Under The Lanham Act, They Also Fail To State A Claim Under Florida Statutory Or Common Law. ......................24

         B.    As Plaintiffs' Equitable Claim For Unjust Enrichment Relies On The Same Predicate Facts As Plaintiffs' Other Claims, It Should Also Be Dismissed With Prejudice. ................................26

CONCLUSION .............................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................7, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................7

*Brown v. Elec. Arts, Inc.*,
  724 F.3d 1235 (9th Cir. 2013) ..........................................................15, 16

*Brown v. Showtime Networks, Inc.*,
  ___ F. Supp. 3d ____, 2019 WL 3798044 (S.D.N.Y. 2019).............................11

*Caiz v. Roberts*,
  382 F. Supp. 3d 942 (C.D. Cal. 2019) .......................................................22

*Claybrooks v. Am. Broad. Cos.*,
  898 F. Supp. 2d 986 (M.D. Tenn. 2012) ....................................................11

*Club Mediterranee, S.A. v. Fox Searchlight Pictures, Inc.*,
  2004 WL 5589591 (S.D. Fla. Feb. 17, 2004) .................................................9

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
  508 F.3d 641 (11th Cir. 2007) .................................................................18

*E.S.S. Entm't 2000 Inc. v. Rock Star Videos, Inc.*,
  547 F.3d 1095 (9th Cir. 2008) ...........................................................passim

*Fortres Grand Corp. v. Warner Bros. Entm't Inc.*,
  947 F. Supp. 2d 922 (N.D. Ind. 2013) ..................................................13, 17

*Gift of Learning Found., Inc. v. TGC, Inc.*,
  329 F.3d 792 (11th Cir. 2003) .................................................................24

*Gordon v. Drape Creative, Inc.*,
  909 F.3d 257 (9th Cir. 2018) .................................................19, 21, 22, 23

*Heron Dev. Corp. v. Vacation Tours, Inc.*,
　2017 WL 5957743 (S.D. Fla. Nov. 30, 2017) ....................................................25

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*,
　910 F.3d 1186 (11th Cir. 2018) ..........................................................................5

*Hidden City Phila. v. ABC, Inc.*,
　2019 WL 1003637 (E.D. Pa. Mar. 1, 2019) ......................................................16

*Koski v. Carrier Corp.*,
　347 F. Supp. 3d 1185 (S.D. Fla. 2017) ..............................................................26

*Legacy Entm't Group, LLC v. Endemol USA Inc.*,
　2015 WL 12838795 (M.D. Fla. Oct. 1, 2015) ....................................................11

*Licul v. Volkswagen Grp. of Am., Inc.*,
　2013 WL 6328734 (S.D. Fla. Dec. 5, 2013).......................................................26

*Mattel, Inc. v. MCA Records, Inc.*,
　296 F.3d 894 (9th Cir. 2002) ....................................................................8, 9, 11

*Medieval Times U.S.A., Inc. v. Pirate's Dinner Adventure, Inc.*,
　2013 WL 12155442 (M.D. Fla. Feb. 14, 2013)...................................................24

*Miccosukee Tribe of Indians of Fla. v. Jewel*,
　996 F. Supp. 2d 1268 (S.D. Fla. 2013)...............................................................23

*MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*,
　2013 WL 3288039 (S.D. Fla. June 28, 2013).....................................................25

*Nat. Answers, Inc. v. SmithKlineBeecham Corp.*,
　529 F.3d 1325 (11th Cir. 2008) .........................................................................25

*Nodar v. Galbreath*,
　462 So. 2d 803 (Fla. 1984) ................................................................................26

*Parks v. LaFace Records*,
　329 F.3d 437 (6th Cir. 2003) ........................................................................8, 16

*Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*,
　2013 WL 1944888 (E.D. Mich. May 9, 2013) ...............................................7, 17

*Rebelution, LLC v. Perez*,
　732 F. Supp. 2d 883 (N.D. Cal. 2010)................................................................17

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) .......................................................................8, 9, 14

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*,
    2011 WL 12877019 (C.D. Cal. May 11, 2011)...................................................13

*Stouffer v. Nat'l Geographic Partners, LLC*,
    ___ F. Supp. 3d ____, 2019 WL 3935180 (D. Colo. Aug. 20, 2019) ...............11

*Suntree Techs., Inc. v. Ecosense Int'l, Inc.*,
    693 F.3d 1338 (11th Cir. 2012) .........................................................................25

*Twentieth Century Fox v. Empire Distribution, Inc.*,
    875 F.3d 1192 (9th Cir. 2017) ....................................................................passim

*Tyne v. Time Warner Entm't Co., L.P.*,
    901 So. 2d 802 (Fla. 2005) ................................................................................26

*Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*,
    677 F. Supp. 2d 1238 (N.D. Ala. 2009)..............................................................12

*Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*,
    683 F.3d 1266 (11th Cir. 2012) ...................................................................passim

*Valencia v. Universal City Studios LLC*,
    2014 WL 7240526 (N.D. Ga. Dec. 18, 2014) .............................................passim

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
    699 F. App'x 667 (9th Cir. 2017) .........................................................................7

*Westchester Media v. PRL USA Holdings, Inc.*,
    214 F.3d 658 (5th Cir. 2000) ...............................................................................8

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
    809 F. Supp. 267 (S.D.N.Y. 1992) ....................................................................24

**STATUTES**

Fla. Stat. § 495.181 ...................................................................................................25

**OTHER AUTHORITIES**

Jordana Ossad, "Back by Popular Demand: *Jersey Shore* Is Returning
    to MTV," MTV News, Nov. 27, 2017,
    http://www.mtv.com/news/3049355/jersey-shore-family-vacation-
    return-mtv/ ............................................................................................................5

**INTRODUCTION**

*MTV Floribama Shore* is a reality television series set along the Gulf of Mexico coastline stretching from Florida to Alabama.  It premiered on MTV in November 2017 as a domestic continuation of the network's popular "*Shore*" franchise that celebrates youth beach culture.  The franchise began 10 years ago with *Jersey Shore*, a blockbuster hit that ran on MTV from 2009 to 2012 and in 2018 was relaunched on MTV as *Jersey Shore Family Vacation*.  Since the original *Jersey Shore* premiered, the "*Shore*" franchise has expanded internationally to include *Acapulco Shore* in Mexico, *Gandia Shore* in Spain, *Geordie Shore* in the United Kingdom, *Super Shore* in southern Europe, and *Warsaw Shore* in Poland, all of which air on MTV networks.  Two seasons of *MTV Floribama Shore* have already aired and a third has been announced.  Defendants Viacom Inc. ("Viacom"), 495 Productions Holdings LLC, and 495 Productions Services, LLC (collectively, "Defendants") created the "*Shore*" franchise, including *MTV Floribama Shore*, and continue to produce and distribute it.

Plaintiffs MGFB Properties, Inc., Flora-Bama Management, LLC, and Flora-Bama Old S.A.L.T.S., Inc. (collectively, "Plaintiffs") allege that they are the owners and operators of the Flora-Bama Lounge, Package and Oyster Bar and two other "Flora-Bama"-branded establishments, all located beachside along the Florida-Alabama coast.  Plaintiffs purport to own trademark rights in the word "Flora-Bama" and allege that *MTV Floribama Shore* infringes those rights under both federal and

Florida state law.

This is not the first time Plaintiffs have raised such allegations.  Shortly before *MTV Floribama Shore* premiered in 2017, Plaintiffs sent Viacom a letter asserting the same claims Plaintiffs now pursue here.  Viacom promptly responded to that letter and explained why Plaintiffs' contentions were without merit.  Plaintiffs did not file suit, and *MTV Floribama Shore* premiered and became an instant hit.  Now, almost two years later and after two successful seasons of the series, Plaintiffs have elected to pursue their allegations in court.

Plaintiffs' claims all lack merit, and should be dismissed with prejudice as a matter of law, for the same reasons Viacom articulated in its 2017 letter to Plaintiffs.  The First Amendment protects the use of a trademark in or associated with an expressive work like *MTV Floribama Shore* from claims arising under the Lanham Act.  Indeed, the Eleventh Circuit and numerous other courts have held that the First Amendment protects the constitutional freedom of expression guaranteed to the creators of expressive works.  It is beyond dispute that *MTV Floribama Shore* is an expressive work, as courts routinely conclude that television series are expressive works entitled to First Amendment protections.

The facts alleged in the Complaint demonstrate that neither of the two paths that would permit Plaintiffs to overcome Defendants' First Amendment rights and pursue their Lanham Act claims is open here.  A Lanham Act claim against the creators of an expressive work requires proof that the alleged trademark use has *no*

artistic relevance to the subject of the work *whatsoever*. If there is some modicum of artistic relevance, a plaintiff must then prove that the use explicitly misleads consumers as to the source or content of the work.

The facts alleged in the Complaint establish that Plaintiffs cannot meet either burden, and, as a result, their Lanham Act claims should be dismissed with prejudice. The word "Floribama" is artistically relevant to *MTV Floribama Shore* because it refers to both the cultural and geographic setting for the series along the Florida-Alabama Gulf coastline. Indeed, the Complaint concedes both that Defendants intended to create a "southern-based" beach series and that *MTV Floribama Shore* was filmed along the Gulf Coast shoreline.

It is also clear from the allegations in the Complaint that Defendants' alleged uses of the "Flora-Bama" trademark do not explicitly mislead consumers as to the source or content of *MTV Floribama Shore*. The use of a trademark alone is insufficient as a matter of law to show that the use explicitly misleads. Indeed, the Ninth Circuit recently held that even when the *entire* title of a television series allegedly infringed on a trademark, that title was not explicitly misleading. Here, of course, *MTV Floribama Shore*'s title also includes the words "*MTV*" and "*Shore*," both of which distinguish Defendants' series from Plaintiffs' venues/restaurants and expressly tie the series to the network that airs it (MTV) and to MTV's longstanding creative franchise of which it is a part (*Shore*). Moreover, "Floribama" is spelled differently than Plaintiffs' alleged trademark in "Flora-Bama," and Plaintiffs

3

concede that "Floribama" has only been used in connection with *MTV Floribama Shore*. Nowhere do Plaintiffs allege that Defendants' trademark uses seek to overtly suggest affiliation with or endorsement by Plaintiffs' establishments. Thus, because the First Amendment protects *MTV Floribama Shore* as an expressive work and the facts alleged in the Complaint are insufficient to warrant overriding those First Amendment protections in favor of the Lanham Act, Plaintiffs fail to state a claim for federal trademark infringement.

For the same reasons, Plaintiffs also fail to state any claim arising under Florida's statutory or common law trademark or unfair competition regimes. Those claims incorporate the same legal standards that apply to the Lanham Act and thus should be interpreted narrowly, as the Lanham Act is, to avoid coming into conflict with Defendants' First Amendment rights. Finally, Plaintiffs' claim for unjust enrichment also fails as a matter of law. An equitable claim for unjust enrichment cannot be pled in the alternative when it relies on the same predicate facts as legal claims that fail as a matter of law. Here, the Complaint alleges that Defendants were enriched *because* they infringed Plaintiffs' alleged trademark rights. Without any trademark infringement on which to rely, Plaintiffs' unjust enrichment claim necessarily fails.

For all these reasons, and as explained more thoroughly below, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Around 2016, Defendants began developing a "southern based" reality-television show that eventually became *MTV Floribama Shore*.  Compl. ¶ 54; Decl. of Susan J. Kohlmann, Ex. 1 ("2017 Viacom Letter").[1]  This show was to be part of Viacom's successful "*Shore*" franchise, which began in 2009 with *Jersey Shore* (relaunched in 2018 as *Jersey Shore Family Vacation*[2]) and now includes *Acapulco Shore*, *Gandia Shore*, *Geordie Shore*, *Super Shore*, and *Warsaw Shore*.  2017 Viacom Letter at 2.  Like *Jersey Shore* before it, *MTV Floribama Shore* follows the lives of eight young adults spending a carefree summer in a beach town—this time along the Gulf Coast of Florida and Alabama rather than the Atlantic Ocean beaches of New Jersey.  *Id.*

*MTV Floribama Shore* was set to premiere at the end of November 2017.  Mere weeks before that premiere, Plaintiffs—which operate the Flora-Bama Lounge, Package and Oyster Bar, in addition to two restaurants and a water-sports venue—sent a letter to Viacom, asserting that the show infringed Plaintiffs' alleged

---

[1] Viacom's response to Plaintiffs' demand letter is incorporated by reference in the Complaint.  *See Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018).  The response is referenced in the Complaint, *see* Compl. ¶ 62, central to Plaintiffs' claims because it relates to Defendants' knowledge of Plaintiffs' alleged trademarks, and of undisputed authenticity.

[2] Jordana Ossad, "Back by Popular Demand: *Jersey Shore* Is Returning to MTV," MTV News, Nov. 27, 2017, http://www.mtv.com/news/3049355/jersey-shore-family-vacation-return-mtv/.

trademarks.  Compl. ¶¶ 61, 66; *see generally* 2017 Viacom Letter.  Viacom promptly responded to this letter, detailing the many reasons why Plaintiffs' claims were meritless, including the obvious and significant differences between Plaintiffs' alleged trademarks and *MTV Floribama Shore*, the fact that the parties operate in different markets, and the fact that Defendants' purported use of Plaintiffs' alleged trademarks is shielded by the First Amendment.  Compl. ¶ 62; 2017 Viacom Letter.

*MTV Floribama Shore* premiered on November 27, 2017 as scheduled and went on to a successful first season, which was followed by a similarly successful second season, and will be continued in a recently announced third season.  Compl. ¶¶ 66–69.  In spite of their initial hostile stance toward *MTV Floribama Shore*, Plaintiffs do not allege, nor could they, that they raised any complaints about the series to Defendants, or communicated with Defendants in any way, following the premiere of the first season of *MTV Floribama Shore*.  Yet, after nearly two years of silence, and two successful seasons of *MTV Floribama Shore*, Plaintiffs filed suit against Defendants over *MTV Floribama Shore* on August 6, 2019, alleging claims of federal trademark infringement and unfair competition under the Lanham Act, as well as state law claims for violation of Florida's Registration and Protection of Trademarks Act and Florida's Deceptive and Unfair Trade Practices Act, and for common law trademark infringement, unfair competition, and unjust enrichment.  Compl. ¶¶ 87–139.  All of Plaintiffs' claims are precluded by the protections of the First Amendment, and consequently fail to state a claim for relief.  As a result, this

action should be dismissed with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Trademark and related state law claims, in particular, are subject to dismissal when the only plausible inference that can be drawn from the facts alleged in the complaint is that the First Amendment shields the defendant's alleged conduct from liability. *See, e.g.*, *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming order granting motion to dismiss on First Amendment grounds); *Valencia v. Universal City Studios LLC*, 2014 WL 7240526, at *8 (N.D. Ga. Dec. 18, 2014) (dismissing, on First Amendment grounds, claim under Georgia Uniform Deceptive Trade Practices Act); *Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*, 2013 WL 1944888, at *4 (E.D. Mich. May 9, 2013) (holding that First Amendment analysis "is an appropriate one to apply in the early stages of litigation" and granting motion to dismiss Lanham Act claim on First Amendment grounds).

## ARGUMENT

All eight of Plaintiffs' claims should be dismissed with prejudice. Counts I and II, which allege violations of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, fail as

a matter of law because the First Amendment precludes Lanham Act claims where the trademark is used in an expressive work. Counts III, IV, V, VI, and VII fail because they all allege Florida state law claims with legal standards identical to the Lanham Act. Finally, Count VIII, which alleges unjust enrichment, must be dismissed because it is duplicative of and relies on the same predicate facts as Plaintiffs' seven other claims.

## I.   THE FIRST AMENDMENT PRECLUDES APPLICATION OF THE LANHAM ACT.

Counts I and II of the Complaint allege that Defendants' purported uses of Plaintiffs' "Flora-Bama" trademark in and associated with *MTV Floribama Shore* violate the Lanham Act in a manner likely to cause confusion regarding the source of the goods and services at issue. *See* Compl. ¶¶ 87–101. However, court after court has recognized that when the allegedly infringing use is part of or associated with an expressive work, the Lanham Act must be read narrowly to avoid impinging on speech protected by the First Amendment. *See, e.g.*, *Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1277–78 (11th Cir. 2012); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002); *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).[3]  That principle compels dismissal of Plaintiffs' two federal

---

[3] The Fifth and Sixth Circuits have also recognized the need to limit the Lanham Act to avoid conflicting with the First Amendment. *See Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003); *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658 (5th Cir. 2000).

causes of action.

Rogers was the first case to recognize that the creators of expressive works have a greater First Amendment interest in their freedom of expression than do creators of other commercial products. *See* 875 F.2d at 998. Applying the Lanham Act broadly to expressive works would threaten that First Amendment interest by restricting the range of expression permitted in those works. The Second Circuit in *Rogers* therefore held that the Lanham Act does *not* apply to the titles of expressive works "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 999. The Eleventh Circuit has expressly adopted the *Rogers* test, and district courts in Florida have long applied it. *See Univ. of Ala.*, 683 F.3d at 1278; *Club Mediterranee, S.A. v. Fox Searchlight Pictures, Inc.*, 2004 WL 5589591, at *1–3 (S.D. Fla. Feb. 17, 2004).

Courts have applied *Rogers* to all claims arising under the Lanham Act, regardless of how those claims are alleged. *See, e.g.*, *Univ. of Ala.*, 683 F.3d at 1270 (applying *Rogers* test to federal common law trademark infringement claim arising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)); *Twentieth Century Fox v. Empire Distribution, Inc.*, 875 F.3d 1192, 1195 (9th Cir. 2017) (applying *Rogers* test to unfair competition claim arising under § 43(a) of the Lanham Act); *Mattel, Inc.*, 296 F.3d at 902, 908 (applying *Rogers* to registered trademark infringement claim arising under § 32 of the Lanham Act, 15 U.S.C. § 1114). Thus, uses of trademarks

9

in or associated with expressive works do not violate any provision of the Lanham Act unless they have no artistic relevance to the underlying work or, if they have some artistic relevance, they explicitly mislead as to the source or content of the works. *See Univ. of Ala.*, 683 F.3d at 1278.

The *Rogers* test is fatal to both of Plaintiffs' Lanham Act claims. *First*, the test applies to all the trademark uses alleged in the Complaint, including those outside of the title or body of the *MTV Floribama Shore* television series. *Second*, applying the *Rogers* test compels dismissal of Plaintiffs' federal trademark claims, as Defendants' purported uses of Plaintiffs' trademark are artistically relevant to the *MTV Floribama Shore* series and do not explicitly mislead as to the source or content of that series.

## A. The *Rogers* Test Applies To Defendants' Alleged Uses.

The Complaint alleges that Defendants used Plaintiffs' trademark in three distinct ways: (1) in the title of the *MTV Floribama Shore* series, *see* Compl. ¶ 66; (2) in a theme song introduced in the second season of the series, *see id.* ¶ 68; and (3) in a variety of marketing, promotional, and advertising materials used to promote the series, *see id.* ¶¶ 70–71, 78. The *Rogers* test applies to, and precludes Plaintiff's claims relating to, all three types of alleged use.

There can be no dispute that *MTV Floribama Shore* is an expressive work and that its title is protected by the First Amendment. A television show is "clearly an expressive work." *Empire Distribution*, 875 F.3d at 1196 (applying *Rogers* to Fox's

10

*Empire* television series).  The same is true of a reality television series.  *See Claybrooks v. Am. Broad. Cos.*, 898 F. Supp. 2d 986, 999–1000 (M.D. Tenn. 2012) (holding *The Bachelor* is entitled to First Amendment protection and dismissing federal cause of action that would infringe on First Amendment rights); *cf. Brown v. Showtime Networks, Inc.*, ___ F. Supp. 3d ____, 2019 WL 3798044, at *11 (S.D.N.Y. 2019) (holding that documentary was an expressive work entitled to First Amendment protection).  Thus, the First Amendment protects *MTV Floribama Shore* as an expressive work.[4]

It is similarly beyond dispute that the series' theme song is an expressive work to which the First Amendment applies.  Songs are expressive works as a general matter.  *See Mattel, Inc.*, 296 F.3d at 902 (applying *Rogers* to the song "Barbie Girl").  The same is true when a song is associated with a television series.  *See Empire Distribution*, 875 F.3d at 1196 (applying *Rogers* to songs associated with

---

[4] The few cases declining to apply the *Rogers* test to the title of a television series are all plainly inapposite.  First, one court declined to apply *Rogers* to *The Biggest Loser: Glory Days*, but that was because the plaintiff also used the phrase "Glory Days" as the title of a competing television series.  *See Legacy Entm't Group, LLC v. Endemol USA Inc.*, 2015 WL 12838795 (M.D. Fla. Oct. 1, 2015).  The court based its decision on a footnote in *Rogers* indicating that the *Rogers* test would not apply when two competing titles in the same market are confusingly similar.  *See id.* at *5. Here, Plaintiffs do not allege, nor could they, that they use their alleged trademark in a television series title.  Second, another court recently declined to apply *Rogers* at all, despite recognizing the need to balance First Amendment interests with the Lanham Act.  *See Stouffer v. Nat'l Geographic Partners, LLC*, ___ F. Supp. 3d ____, 2019 WL 3935180 (D. Colo. Aug. 20, 2019).  That case does not apply here, as the Eleventh Circuit has expressly adopted *Rogers*.  *See Univ. of Ala.*, 683 F.3d at 1278.

*Empire* series).

Finally, the *Rogers* test also applies to materials used to market, promote, and advertise an expressive work.  The Ninth Circuit held exactly that with regard to Fox's use of the "Empire" trademark to promote its *Empire* series through "appearances by cast members in other media, radio play, online advertising, live events, and the sale or licensing of consumer goods." *Id.*  Applying *Rogers* to such promotional materials required "only a minor logical extension" of *Rogers*, as the protections afforded to expressive works in that case and others "could be destabilized if the titles of expressive works were protected but could not be used to promote those works." *Id.* at 1196–97.[5]

The Ninth Circuit's analysis in *Empire Distribution* applies with equal force here.  Plaintiffs allege that Defendants used their trademark in commercials for *MTV Floribama Shore*, in marketing materials to promote the series on MTV's website, in various advertising materials across different forms of media, in online search

---

[5] *University of Alabama* is not to the contrary.  There, the Eleventh Circuit upheld the district court's conclusion that the defendant's paintings incorporating the University of Alabama's logo were expressive works. The Eleventh Circuit expressly declined to endorse the merits of the district court's analysis concerning other commercial products (such as T-shirts, mugs and calendars) that reproduced images of those paintings, finding that the defendant waived that argument on appeal.  *See* 683 F.3d at 1280.  Notably, nothing in the district court's opinion suggests that court considered those commercial products to be promoting the expressive paintings.  To the contrary, the court considered only whether those products were "fine art" in their own right.  677 F. Supp. 2d 1238, 1250 n.22 (N.D. Ala. 2009).

terms and hashtags, and in other materials posted online.  *See* Compl. ¶¶ 70–71, 78.

As the Complaint concedes, those uses marketed, promoted, and advertised *MTV*

*Floribama Shore.  See id.* ¶ 70.[6]  The *Rogers* test therefore applies.[7]

### B. The First Amendment Bars Plaintiffs' Federal Claims.

As described above, since *MTV Floribama Shore* is indisputably an

expressive work, Plaintiffs must allege facts showing that either (1) Defendants' uses

---

[6] *Empire Distribution* left open the possibility that *Rogers* might not apply to "a pretextual expressive work meant only to disguise a business profiting from another's trademark."  875 F.3d at 1197.  However, the Complaint does not allege that Defendants used "Flora-Bama" pretextually.  To the contrary, as noted above, the Complaint concedes that any use of Plaintiffs' mark was in promotional materials to promote *MTV Floribama Shore.*

[7] Additionally, court after court has made clear that the *Rogers* test applies regardless of the mark's level of recognition.  *See, e.g.*, *Empire Distribution*, 875 F.3d at 1197–98 (rejecting that "the *Rogers* test includes a threshold requirement that a mark have attained a meaning beyond its source-identifying function"); *E.S.S. Entm't 2000 Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (applying the *Rogers* test notwithstanding plaintiff's argument that its strip club was "not a cultural icon"); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 947 F. Supp. 2d 922, 933 (N.D. Ind. 2013) (rejecting attempt to limit *Rogers* test to "culturally relevant trade symbols" because doing so would mean that "a small, relatively unknown trademark owner, claiming rights in a mark that few people have ever heard of, would enjoy monopoly power over the use of certain words in expressive works—power that the First Amendment plainly denies to the owners of famous, household-word trademarks"), *aff'd*, 763 F.3d 696 (7th Cir. 2014); *Stewart Surfboards, Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *2 (C.D. Cal. May 11, 2011) (noting that Ninth Circuit determined that "the *Rogers* test applies even where a trademark has not become part of our everyday vocabulary").  In any event, Plaintiffs allege that their mark is famous and is "widely and favorably known."  *See, e.g.,* Compl. ¶¶ 50, 51.  Since Plaintiffs' allegations are accepted as true on a motion to dismiss, *see Iqbal*, 556 U.S. at 678, Plaintiffs' claims are thus concededly subject to the *Rogers* test.

of "Floribama" have no artistic relevance whatsoever to *MTV Floribama Shore*, or (2) the uses of "Floribama" explicitly mislead consumers as to *MTV Floribama Shore*'s source or content. *Rogers*, 875 F.2d at 999. It is clear from the Complaint that Plaintiffs cannot allege either. As such, the First Amendment precludes application of the Lanham Act to Plaintiffs' allegations.

1. *The Alleged Uses Of "Floribama" Are Artistically Relevant To* MTV Floribama Shore.

The first prong of the *Rogers* test—whether the alleged use of the mark has any "artistic relevance to the underlying work whatsoever," *see Rogers*, 875 F.2d at 999—separates uses having "some artistic relation" to the underlying work from "arbitrary" uses. *Empire Distribution*, 875 F.3d at 1198. This bar is purposefully set low. *Id.* Indeed, "the level of relevance merely must be above zero." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008); *see also Valencia*, 2014 WL 7240526, at *8 (holding that title was artistically relevant and granting motion to dismiss under *Rogers*). This yes-or-no inquiry has the benefit of ensuring that courts do not have to evaluate the artistic importance of the use to the underlying work. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1243 (9th Cir. 2013).

Uses of trademarks in expressive works are routinely found to meet this low bar for artistic relevance. For example, in *University of Alabama*, the Eleventh Circuit held that use of the University of Alabama's football uniforms in the

14

defendant's paintings, prints, and calendars was artistically relevant "because the uniforms' colors and designs are needed for a realistic portrayal of famous scenes from Alabama football history." *Univ. of Ala.*, 683 F.3d at 1278–79. Similarly, in *Valencia*, the Northern District of Georgia found that use of the title *Honey* was artistically relevant because it was the protagonist's first name. *See* 2014 WL 7240526, at *8.

In *Empire Distribution*, the Ninth Circuit addressed a situation even more analogous to the facts here. In that case, the Ninth Circuit evaluated urban record-label Empire Distribution's Lanham Act claims against Twentieth Century Fox based on Fox's use of the title *Empire* for a television series set in New York City about a dynastic hip-hop label called "Empire Enterprises." 875 F.3d at 1195, 1198. The Ninth Circuit determined that the low bar of artistic relevance was met because the title "support[ed] the themes and geographic setting of the work," regardless of whether it incorporated Empire Distribution's mark. *Id.* at 1199.

The same analysis applies here. "Floribama" is a direct reference to the show's cultural and geographic setting along the shores of the Florida-Alabama Gulf Coast. Indeed, as Plaintiffs allege, Defendants intended to create a "southern-based reality TV show," the first season of which "followed eight young adults partying in Panama City Beach, Florida," the second season of which was also set in Panama City Beach, and the third season of which will be set in St. Petersburg, Florida,

another city along the Gulf Coast.  Compl. ¶¶ 54, 66, 68, 69.[8]  As with *Empire Distribution*, the purported use of Plaintiffs' alleged mark thus "support[s] the theme and geographic setting of the work."  *Empire Distribution*, 875 F.3d at 1199.[9]

_____

[8] The fact that the third season of *MTV Floribama Shore* will be filmed in a different location than the first two seasons does not affect the analysis.  In *Valencia*, the court held that the use of a trademark in the title of a sequel film called *Honey 2* was artistically relevant to that work because the film drew inspiration from its predecessor, even though the predecessor's "Honey" character was not featured in the sequel.  *See* 2014 WL 7240526, at *8.

[9] By contrast, courts only decline to find trademark uses artistically relevant to expressive works when those uses have no relevancy whatsoever to the works in question.  For example, in *Parks v. LaFace Records*, the Sixth Circuit reversed a grant of summary judgment in connection with OutKast's use of Rosa Parks' name in the title of its song "Rosa Parks."  *See* 329 F.3d 437, 452–59 (6th Cir. 2003).  The Sixth Circuit was motivated by the fact that the Lanham Act "permits celebrities to vindicate property rights in their identities against allegedly misleading commercial use by others."  *Id.* at 445.  This concern is obviously not present here.  Moreover, in Parks, the only possible relevance of "Rosa Parks" was a single reference in the chorus of the song to "move to the back of the bus," which OutKast explicitly testified was not a reference to Parks but rather a direction to "other MCs" to "take a back seat" to OutKast.  *Id.* at 452–53.  Thus, the court left it to the jury to determine whether the low bar for any artistic relevance could be met in the face of such explicit testimony.  In subsequent cases, courts have distinguished Parks when it is clear from the allegations in a complaint that the defendant's use of a mark is artistically relevant.  *See, e.g.*, *Brown*, 724 F.3d at 1243–44 (affirming grant of motion to dismiss and distinguishing *Parks*); *Hidden City Phila. v. ABC, Inc.*, 2019 WL 1003637, at *4 (E.D. Pa. Mar. 1, 2019) (granting motion to dismiss and distinguishing *Parks*).  As shown above, the facts alleged in Plaintiffs' Complaint here establish at least some artistic relevance between Defendants' alleged uses of "Floribama" and *MTV Floribama Shore*, namely the series' theme and geographic setting.  Finally, while the court in *Parks* recognized the singular relationship between Rosa Parks's name and her status as a symbol of the civil rights movement, *see* 329 F.3d at 442, the terms "Flora-Bama"/"Floribama" have a meaning distinct from Plaintiffs' establishments.  Both Plaintiffs and Defendants use them simply as a geographic portmanteau, such as "Tex-Mex" or "Eurasia," which Plaintiffs should not be permitted to monopolize.

Moreover, the artistic relevance inquiry refers to the relationship between the use of the mark and the expressive work, not whether the defendant uses the mark expressly to reference the plaintiff.  Indeed, courts routinely hold that the use of a trademark is artistically relevant even where, as here, the use does *not* reference the plaintiff's mark.  *See, e.g.*, *Empire Distribution*, 875 F.3d at 1198 (rejecting such a referential requirement because it "does not appear in the text of the *Rogers* test, and such a requirement would be inconsistent with the purpose of the first prong of *Rogers*"); *E.S.S. Entm't*, 547 F.3d at 1100 (finding that defendant's use was sufficiently artistically relevant to underlying game even though game was not "about" plaintiff's strip club); *Rebellion Devs. Ltd. v. Stardock Entm't, Inc.*, 2013 WL 1944888, at *3 (E.D. Mich. May 9, 2013) ("[M]any courts applied *Rogers* where the defendants' usage made no reference to the plaintiffs.").[10]

Based on the facts alleged in the Complaint, the uses of "Floribama" clearly meet the very low bar for artistic relevance to the underlying television series.

2. *The Alleged Uses Of "Floribama" Do Not Explicitly Mislead As To* MTV Floribama Shore*'s Source Or Content.*

The second prong of the *Rogers* test prohibits application of the Lanham Act

---

[10] While one district court in the Ninth Circuit has concluded otherwise, *see Rebelution, LLC v. Perez*, 732 F. Supp. 2d 883, 889 (N.D. Cal. 2010), as discussed above, the Ninth Circuit in *Empire Distribution* rejected this theory, *Empire Distribution*, 875 F.3d at 1198, and courts nationwide regularly disagree with that opinion and have gone so far as to call it an "outlier." *See, e.g.*, *Fortres Grand Corp.*, 947 F. Supp. 2d at 933 n.2.

to artistically relevant uses of a mark "unless the title explicitly misleads as to the source or content of the work." *Empire Distribution*, 875 F.3d at 1199.  Use of a mark by itself generally does not qualify as an explicitly misleading use. *See Univ. of Ala.*, 683 F.3d at 1278–79; *Empire Distribution*, 875 F.3d at 1199; *see also E.S.S. Entm't*, 547 F.3d at 1100 ("[T]he mere use of a trademark alone cannot suffice to make such use explicitly misleading.").  For example, in *University of Alabama*, the Eleventh Circuit determined that an artist's use of University of Alabama's uniforms in his paintings did not constitute an explicitly misleading use because there was "[n]o evidence that [the artist] ever marketed an unlicensed item as 'endorsed' or 'sponsored' by the University, or otherwise explicitly stated that such items were affiliated with the University." 683 F.3d at 1279.  Similarly, in *Empire Distribution*, the Ninth Circuit held that the title "Empire" was not explicitly misleading because the *Empire* show did not contain any "overt claims or explicit references to Empire Distribution."  875 F.3d at 1199.

The exact same result follows here.  Indeed, the purported use of Plaintiffs' alleged marks here is much more attenuated than the uses in *University of Alabama* or *Empire Distribution*.  The word "Floribama" is sandwiched between two other words, "MTV" and "Shore," both of which (1) serve to conceptually distance *MTV Floribama Shore* from Plaintiffs' establishments and (2) alert consumers that the source of the series is MTV and that it is affiliated with Viacom's "*Shore*" franchise of shows. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652

n.10 (11th Cir. 2007) (recognizing that use of house mark in close proximity to allegedly infringing mark reduces likelihood that consumers will be confused as to source of products).  "Floribama" also is spelled differently from Plaintiffs' alleged marks and is only used in connection with *MTV Floribama Shore*.  Defendants' use is thus even less likely to be misleading than the uses in *University of Alabama*, where exact replicas of the University of Alabama's uniforms appeared in the paintings, and *Empire Distribution*, where the entire title consisted of the allegedly infringing use.  Finally, as was the case with *University of Alabama* and *Empire Distribution* where the uses at issue were found not to be explicitly misleading, Plaintiffs nowhere allege that *MTV Floribama Shore* makes any references to Plaintiffs' businesses or overt claims of affiliation with or endorsements by Plaintiffs.[11]

The Ninth Circuit's decision in *Gordon v. Drape Creative, Inc.*, 909 F.3d 257 (9th Cir. 2018) does not compel a different result.  In that case, the Ninth Circuit

---

[11] Moreover, *Empire Distribution* rejected an attempt to conflate the "explicitly misleading" inquiry relevant to the *Rogers* test with the likelihood-of-confusion inquiry relevant to the elements of a trademark infringement claim.  *See* 875 F.3d at 1199.  Those inquiries are separate and distinct.  Thus, when a plaintiff alleges infringement by virtue of the use of a mark in an expressive work, that plaintiff must show *both* that the use is explicitly misleading (to overcome the defendant's First Amendment rights) and that it is likely to confuse (to prove the elements of an infringement claim).  *See id.*  While the Complaint vaguely alleges instances of actual confusion between Plaintiffs' establishments and *MTV Floribama Shore* with no factual allegations in support, *see* Compl. ¶¶ 76–77, Plaintiffs notably do *not* allege that Defendants' use of "Floribama" is explicitly misleading.

evaluated a trademark-infringement claim from the creator of an infamous YouTube video featuring a honey badger based on defendants' use of catchphrases from the video. *Id.* at 260. The defendants' use essentially consisted of copying the plaintiff's catchphrases wholesale and pasting them into greeting cards with minimal (at best) additional artistic expression, notwithstanding the fact that the plaintiff also had made similar use of his own catchphrase in greeting cards. *Id.* at 271. The Ninth Circuit determined that there were factual issues concerning whether defendants' use was explicitly misleading. *Id.* In reaching this determination, the Ninth Circuit observed that "the use of a mark alone may explicitly mislead consumers about a product's source if consumers would ordinarily identify the source by the mark itself" and put forward two additional considerations for the "explicitly misleading" inquiry: (1) "the degree to which the junior user uses the mark in the same way as the senior user" and (2) "the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Id.* at 270.

It is important to note that the Eleventh Circuit has not adopted this gloss on the "explicitly misleading" inquiry. Instead, and as described above, the Eleventh Circuit considers whether the junior user has made any explicit statements of endorsement, sponsorship, or affiliation by or with the senior user. *Univ. of Ala.*, 683 F.3d at 1279. However, even if this Court were to apply the Ninth Circuit's additions to the *Rogers* test, Defendants' use of "Floribama" in connection with *MTV Floribama Shore* still would satisfy even this heightened version of the *Rogers* test's

20

second prong.

*First*, it is clear from the Complaint that Defendants' use of "Floribama" occurred "in a different context" and "in an entirely different market" from Plaintiffs' use. *Gordon*, 909 F.3d at 270. While both parties in *Gordon* used the plaintiff's catchphrases in greeting cards, here, Plaintiffs allege that they operate business establishments, such as restaurants, music venues, and marinas, *see* Compl. ¶¶ 29, 33–36, 38–40, while Defendants developed and produce a television series, *id.* ¶ 66. The Parties thus operate in different spheres. It is not as if Defendants named their series to refer to an unrelated television show or opened a lounge that features water sports and church services called "The Floribama" down the street from Plaintiffs' establishments. *See Gordon*, 909 F.3d at 270 ("[H]ad the junior user . . . used the mark in the same way as the senior user—had Twentieth Century Fox titled its new show *Law & Order: Special Hip-Hop Unit*—such identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns." (internal footnote omitted)). In fact, the Parties' totally disparate uses are all the more evident from Plaintiffs' trademark registrations.[12] Defendants thus

---

[12] Though Plaintiffs strain to fabricate a similarity in the Parties' respective markets by asserting in their Complaint that they use their mark "FLORA-BAMA" in connection with filmed or televised productions, including "entertainment services (e.g., televised/filmed entertainment events and live musical performances/events)" and "video productions and audio recording," Compl. ¶ 20, these services appear nowhere in Plaintiffs' trademark registrations. *See* Compl., Exs. A–D. Though Plaintiff MGFB Properties, Inc.'s Florida state trademark registration vaguely alludes to "entertainment . . . services," this registration did not issue until a year and

do not use "Floribama" in the same way that Plaintiffs use their alleged marks.

*Second*, *MTV Floribama Shore* consists of artistic expression that extends far beyond Defendants' purported use of Plaintiffs' alleged marks.  Indeed, two entire seasons of *MTV Floribama Shore* consisting of a total of 34 episodes have aired to date.  Compl. ¶¶ 66, 68.  The presence of the word "Floribama" is thus just a modicum of the content that makes up *MTV Floribama Shore*.  This is in contrast to the facts at issue in *Gordon*, where the catchphrases were "used without any other text" in some of the defendants' greeting cards.  909 F.3d at 271.  The Ninth Circuit relied on that fact to distinguish the case from others in which the use of the mark in the title of a larger expressive work (such as a television series) made it clear that the purported use of the mark was merely one facet of the defendant's larger expression.  *Id.* (citing, among other cases, *Empire Distribution*); *see also Caiz v. Roberts*, 382 F. Supp. 3d 942, 951 (C.D. Cal. 2019) (distinguishing *Gordon* where defendant's alleged use of mark was minimal in context of other artistic expression in work).  Indeed, the Ninth Circuit went so far as to observe that "[i]n cases involving the use of a mark in the title of an expressive work . . . the mark *obviously*

_____

a half *after MTV Floribama Shore* premiered and mere weeks before Plaintiffs filed their Complaint.  Compl., Ex. D.  While Plaintiffs assert that, in 2017, they were "coordinating" with a producer to air their own television series, Compl. ¶ 59, such use would not be within the scope of their trademark registrations and they allege no facts supporting this bare-bones allegation regarding an unfulfilled business venture more than two years old.  Nor does the Complaint allege that Plaintiffs would have used their "Flora-Bama" mark in the theoretical series.

served as only one 'element of the [work] and the [junior user's] artistic expression.'"  *Gordon*, 909 F.3d at 271 (quoting *Rogers*, 875 F.2d at 1001) (emphasis added).  Defendants' artistic expression in *MTV Floribama Shore* thus far exceeds the purported use of Plaintiffs' alleged mark.

Under *Rogers*' second prong, therefore, it is clear that Defendants' use of "Floribama" in *MTV Floribama Shore* and related content is not explicitly misleading as to source or content.

***

Since Plaintiffs have not sufficiently alleged (and cannot sufficiently allege) that Defendants' use of "Floribama" has no artistic relevance whatsoever to *MTV Floribama Shore* or is explicitly misleading as to the source or content of *MTV Floribama Shore*, their Lanham Act claims must be dismissed with prejudice.  *See, e.g.*, *Miccosukee Tribe of Indians of Fla. v. Jewel*, 996 F. Supp. 2d 1268, 1275 (S.D. Fla. 2013) (dismissing complaint with prejudice where claims failed as a matter of law, rendering amendment futile).

## II.   PLAINTIFFS FAIL TO STATE ANY CLAIM UNDER FLORIDA STATE LAW.

Plaintiffs also allege that Defendants are liable under Florida state law for (1) statutory trademark infringement, (2) statutory dilution, (3) statutory unfair practices, (4) common law trademark infringement, (5) common law unfair practices, and (6) unjust enrichment.  Plaintiffs' state law claims should be dismissed

with prejudice on the same grounds as their Lanham Act claims.

**A. Because Plaintiffs Fail To State A Claim Under The Lanham Act, They Also Fail To State A Claim Under Florida Statutory Or Common Law.**

Plaintiffs' five legal claims under Florida statutory and common law all fail because the legal standards for those claims are identical to that of the Lanham Act. Thus, because Plaintiffs' federal claims are barred by application of the First Amendment, Plaintiffs' related state law claims—Counts III, IV, V, VI, and VII— must be dismissed as well.

Generally, "the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003); *see also Medieval Times U.S.A., Inc. v. Pirate's Dinner Adventure, Inc.*, 2013 WL 12155442, at *5 (M.D. Fla. Feb. 14, 2013) (recognizing that legal standards applicable to Lanham Act claims and Florida trademark and unfair competition claims are identical). The same is generally true of state trademark and unfair competition claims nationwide. As such, courts routinely apply the *Rogers* test to state law claims. *See Valencia*, 2014 WL 7240526, at *8 (applying *University of Alabama* and *Rogers* to Georgia state unfair competition statute); *see also E.S.S. Entm't*, 547 F.3d at 1101 (applying *Rogers* to California state law claims); *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992) (applying *Rogers* to New York state law claims).

Moreover, there can be no reasonable dispute that each of Plaintiffs' five Florida state law claims is individually tied to the federal standard of liability under the Lanham Act:

- Florida Statutory Trademark Claims: Counts III and V allege violations of Chapter 495 of the Florida Code for trademark infringement and dilution, respectively.  *See* Compl. ¶¶ 102–08 (Count III) & 113–22 (Count V).  However, Chapter 495 expressly provides that "[t]he intent of this chapter is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection."  Fla. Stat. § 495.181.  Accordingly, courts have analyzed Florida statutory trademark claims identically to their federal counterparts.  *See Heron Dev. Corp. v. Vacation Tours, Inc.*, 2017 WL 5957743, at *12 (S.D. Fla. Nov. 30, 2017) (infringement); *MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, 2013 WL 3288039, at *15 (S.D. Fla. June 28, 2013) (dilution).

- Florida Statutory Unfair Trade Practices Claim: Count IV alleges a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").  *See* Compl. ¶¶ 109–12.  The Eleventh Circuit has interpreted the FDUPTA to apply "the same" legal standards that govern unfair competition claims under the Lanham Act.  *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012).

- Common Law Trademark Infringement: Count VI alleges common law trademark infringement.  *See* Compl. ¶¶ 123–29.  Yet "[t]he Eleventh Circuit and Florida state courts apply the same standards to a trademark infringement claim under the Lanham Act as to one brought under the common law."  *MPS Entm't, LLC*, 2013 WL 3288039, at *4 n.10.

- Common Law Unfair Competition: Finally, Count VII alleges common law unfair competition.  *See* Compl. ¶¶ 130–34.  As with all the other claims described above, common law unfair competition claims are analyzed using the same standards as Lanham Act claims.  *See Nat. Answers, Inc. v. SmithKlineBeecham Corp.*, 529 F.3d 1325, 1332–33 (11th Cir. 2008).

Finally, Florida case law confirms that the *Rogers* test applies to these state

claims because they should comport with the First Amendment.  As a general matter, Florida courts interpret both statutory and common law claims to avoid constitutional conflict.  *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 810 (Fla. 2005) (invoking constitutional avoidance canon and interpreting Florida right-of-publicity statute so as to avoid conflict with First Amendment); *Nodar v. Galbreath*, 462 So. 2d 803, 808 (Fla. 1984) (discussing how common law defamation must comport with First Amendment and therefore requires actual malice when concerning a public figure).  These state law claims are no exception.

Thus, because Plaintiffs fail to state a claim under the Lanham Act, they also fail to state any Florida statutory or common law claim for trademark infringement or unfair competition.

### B. As Plaintiffs' Equitable Claim For Unjust Enrichment Relies On The Same Predicate Facts As Plaintiffs' Other Claims, It Should Also Be Dismissed With Prejudice.

Plaintiffs also fail to state an equitable claim for unjust enrichment.  *See* Compl. ¶¶ 135–39.  It is well established that an unjust enrichment claim that relies on the same predicate facts as a claimant's legal causes of action does not qualify as pleading in the alternative and must be dismissed.  *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).  Here, Plaintiffs' unjust enrichment theory is exactly the same as their other theories for relief: the Complaint alleges that Defendants unjustly enriched themselves *because* they infringed Plaintiffs'

alleged trademark rights.  *See* Compl. ¶¶ 136–37.  Thus, as the Complaint fails to state a claim for trademark infringement, it necessarily also fails to state a claim for unjust enrichment.

## CONCLUSION

For all the reasons stated above, the Complaint should be dismissed with prejudice.

Date:    October 4, 2019

By:    /s/ Susan J. Kohlmann
　　　Susan J. Kohlmann (*Pro Hac Vice*)
　　　JENNER & BLOCK LLP
　　　919 Third Avenue, 38th Floor
　　　New York, NY 10022
　　　Tel:  (212) 891-1600
　　　Fax: (212) 891-1699
　　　skohlmann@jenner.com

　　　Robert W. Pass (FL Bar #183169)
　　　CARLTON FIELDS, P.A.
　　　215 South Monroe Street, Suite 500
　　　Tallahassee, FL 32301
　　　Tel:  (850) 224-1585
　　　Fax: (850) 222-0398
　　　rpass@carltonfields.com

　　　*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1

Pursuant to N.D. Fla. Local Rule 7.1, I hereby certify that this Memorandum of Law is in compliance with the Court's word limit.  According to the word processing program used to prepare this memorandum, the total number of words in the memorandum, inclusive of headings, footnotes, and quotations, and exclusive of the case style, signature block, and any certificate of service is 7,344.

Date:   October 4, 2019          By:   /s/ Susan J. Kohlmann
                                              Susan J. Kohlmann (*Pro Hac Vice*)
                                              JENNER & BLOCK LLP
                                              919 Third Avenue, 38th Floor
                                              New York, NY 10022
                                              Tel:  (212) 891-1600
                                              Fax: (212) 891-1699
                                              skohlmann@jenner.com

## CERTIFICATE OF SERVICE

I certify that on October 4, 2019, I filed the foregoing using the CM/ECF system, which will send notification to all counsel of record.

Date:   October 4, 2019          By:   /s/ Susan J. Kohlmann
                                              Susan J. Kohlmann (*Pro Hac Vice*)
                                              JENNER & BLOCK LLP
                                              919 Third Avenue, 38th Floor
                                              New York, NY 10022
                                              Tel:  (212) 891-1600
                                              Fax: (212) 891-1699
                                              skohlmann@jenner.com