UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MGFB PROPERTIES, INC. et al.,

                *Plaintiffs,*

v..                                    Case No.: 5:19-cv-00257-RH/MJF

VIACOM INC. et al.,

                *Defendants.*

## *AMENDED* JOINT RULE 26 REPORT[1]

**1.**     **The following persons participated in a telephone Rule 26(f) conference on September 12, 2019,** *October 25, 2019 and October 29, 2019* **and have continued to collaborate via email and Telephone:**

For Plaintiffs: Joshua R. Harris of Levin, Papantonio, Thomas, Mitchell, Rafferty, and Proctor, P.A. and Fred H. Perkins of Morrison Cohen LLP.

For Defendants:  Susan J. Kohlmann of Jenner & Block LLP and Robert W. Pass of Carlton Fields, P.A.

*As a result of further meet and confer discussions among counsel, the parties have now agreed on a proposed revised discovery and trial schedule as follows:*

---

[1] *Amendments to the original Joint Rule 26 Report are italicized herein for the Court's convenience.*

#9019315 v1 \027230 \0001

1

| *Event* | *Parties' Proposed Dates* |
|---|---|
| *Deadline for all fact discovery* | *February 28, 2020* |
| *Deadline for disclosure of parties' affirmative expert reports* | *March 31, 2020* |
| *Deadline for disclosure of parties' rebuttal expert reports* | *April 30, 2020* |
| *Deadline for all expert discovery* | *May 29, 2020* |
| *Proposed Trial Date* | *September 30, 2020* |

*See p. 15 herein for more information regarding the proposed schedule.*

**2.     Initial Disclosures.**

The Parties exchanged their Rule 26(a)(1) initial disclosures on September 26, 2019.

**3.     Nature and Basis of All Claims and Defenses and Principal Factual and Legal Issues in Dispute.**

   a.     **Plaintiffs' Summary of their Claims:**

Beginning in 1964, Plaintiffs and their predecessors-in-interest have exclusively used their currently federally registered "FLORA-BAMA" trademarks in connection with a wide array of goods and services, including but not limited to, entertainment (e.g., televised/filmed entertainment events and live musical

performances/events), marketing, media content and creation, food, beverages, merchandising, and promotion of these goods and services. Over the next 55 years, as a direct result of Plaintiffs' activities and associated use of their trademark, the "FLORA-BAMA" trademark acquired substantial goodwill, fame, a respected reputation and strong secondary meaning associated with Plaintiffs and their entertainment services.  The "FLORA-BAMA" federal trademark registration for most of these goods and services (U.S. Patent and Trademark Office registration no. 4,272,440) issued on January 8, 2013 and has now become incontestable.

At least as early as 2011, Defendants became aware of the positive reputation and strong goodwill associated with Plaintiffs and the "FLORA-BAMA" trademark. While Plaintiffs permitted certain representatives of Defendants to conduct a few casting calls at their venue, when Defendants sought permission to film a reality television show at Plaintiffs' entertainment venue and related properties, Plaintiffs refused to grant permission. At no point did Plaintiffs agree to Defendants' use of the "FLORA-BAMA" trademark or any confusingly similar mark for the name of any reality television show. Nonetheless, Defendants created and produced a reality television show entitled "Floribama Shore" that first aired on Defendants' MTV network in late November 2017. This television series directly and intentionally exploits the goodwill garnered by Plaintiffs and their "FLORA-BAMA" trademark, infringes Plaintiffs' federally registered and Florida registered trademarks, dilutes

the strength and fame of Plaintiffs' Florida registered trademark and unfairly and deceptively competes with Plaintiffs, all for the benefit and profit of Defendants.

These willful acts by Defendants have caused not only a likelihood of confusion but substantial actual confusion between Plaintiffs and their "FLORA-BAMA" trademark and Defendants' and their mark and reality show, "Floribama Shore." Defendants and their affiliates have even gone so far as to use the "FLORA-BAMA" trademark as such in their promotion and advertising of their show in a further effort to reap the benefit of the notoriety and goodwill of Plaintiffs' trademark and entertainment venues. Plaintiffs have suffered substantial damages and irreparable harm and will continue to suffer damages and irreparable harm if Defendants are allowed to continue their infringing and illegal activities.

One or more of the Plaintiffs assert the following claims: (i) federal trademark infringement under Sec. 32 of the Lanham Act; (ii) federal unfair competition under Sec. 43(a) of the Lanham Act; (iii) Florida statutory trademark infringement under Fla. Stat. § 495.131; (iv) deceptive and unfair trade practices under Fla. Stat. § 501.204; (v) dilution of Florida registered trademark under Fla. Stat. § 495.151; (vi) common law trademark infringement; (vii) common law unfair competition; and (viii) unjust enrichment.

For various reasons, Defendants' claimed defenses have no merit. For example, even if Defendants' television show were entitled to any First Amendment

protection – which Plaintiffs do not concede – such protection does not preclude a trademark infringement claim as a matter of law, particularly where there is abundant evidence of actual confusion and a substantial likelihood of confusion. Among other things, considering that Defendants' television show was filmed in Panama City (over 125 miles from the Florida Alabama border) and is now set to be filmed in St. Petersburg (over 500 miles from the Florida Alabama border), the contention that the "Floribama Shore" mark was chosen to describe a geographic setting on such border does not appear credible, particularly in light of Defendants' indisputable knowledge of Plaintiffs and their "FLORA-BAMA" mark years in advance of the show's launch.  Moreover, Defendants' laches and related defenses are also without merit. Plaintiffs sent a cease and desist letter to Defendants in late October 2017 and engaged in communications thereafter with Defendants in which Plaintiffs made their objection to Defendants' continuing use of "Floribama" clear. Plaintiffs' commencement of this action approximately 20 months after Defendants' television show first aired is not a ground to bar the complaint.

      **b.**     **Defendants' Summary of their Defenses:**

All of Plaintiffs' claims are without merit.  Defendants created, produced, and distributed the television series at issue—which is titled *MTV Floribama Shore*—as a domestic continuation of MTV's popular "*Shore*" franchise, which began with *Jersey Shore* and has included multiple other series set in various locations around

the world.  *MTV Floribama Shore* is an expressive work protected by the First Amendment's guarantee of freedom of expression.  As its title suggests, *MTV Floribama Shore* is thematically similar to MTV's other "*Shore*" series, but takes place in the cultural and geographic setting of the Gulf Coast along the Florida-Alabama border.

*MTV Floribama Shore* premiered in 2017.  Before that premiere, Plaintiffs sent Defendant Viacom Inc. ("Viacom") a letter raising the same issues they allege in their Complaint.  Viacom responded to that letter, and Plaintiffs did not file suit at that time.  Now, nearly two years later and after two successful seasons of *MTV Floribama Shore* have aired (and with a third season announced), Plaintiffs initiated this lawsuit.  Plaintiffs did not communicate with Defendants at all following the parties' communications that occurred before *MTV Floribama Shore* premiered and before Plaintiffs filed the Complaint.

Accordingly, Defendants' principal defenses are (a) that the First Amendment precludes application of federal, state, and common law trademark and trade practices law; (b) that consumers are not likely to be (nor were they) confused with regard to the source of *MTV Floribama Shore*; (c) that there is no reasonable likelihood of confusion in the marketplace; (d) that Defendants have not engaged in any unfair practices; (e) that Defendants acted in good faith; (f) that Plaintiffs suffered no injury; (g) that Plaintiffs suffered no damages; (h) that Plaintiffs lack

standing to bring all of their claims; and (i) that because Plaintiffs waited for nearly two years to pursue their claims, those claims are equitably barred by the doctrines of laches, waiver, and acquiescence. Defendants reserve their rights to raise any and all additional defenses on which they may rely at the appropriate time in this litigation.

    **c.**     **Principal Factual and Legal Issues in Dispute:**

        **Issues regarding Claims**

    i.     Whether or not Defendants have infringed Plaintiffs' federally-registered "FLORA-BAMA" trademarks under Sec. 32 of the Lanham Act;

    ii.     If Defendants have committed trademark infringement, was such trademark infringement committed willfully;

    iii.     Whether or not there is a likelihood of confusion between Plaintiffs' mark and *MTV Floribama Shore,* "Floribama Shore" and/or "Floribama";

    iv.     Whether or not Defendants' use of *MTV Floribama Shore* "Floribama Shore" and/or "Floribama" and related activities constitutes federal unfair competition under Sec. 43(a) of the Lanham Act;

    v.     Whether or not Defendants have committed statutory trademark infringement under Fla. Stat. § 495.131;

    vi.     Whether or not Defendants have engaged in deceptive and unfair trade practices under Fla. Stat. § 501.204;

    vii.    Whether or not Defendants have violated the trademark dilution protections of Florida registered trademark under Fla. Stat. § 495.151;

    viii.    Whether or not Defendants have engaged in common law trademark infringement;

    ix.    Whether or not Defendants have engaged in common law unfair competition;

    x.    Whether or not Defendants have engaged in unjust enrichment;

**Issues regarding Defenses**

    xi.    Whether or not each Plaintiff in this action has standing to pursue all the claims alleged;

    xii.    Whether or not the First Amendment prevents the Lanham Act and Florida's related statutory and common law doctrines of trademark infringement and unfair competition from applying to Defendants' alleged conduct;

    xiii.    Whether or not Plaintiffs' causes of action are barred by the doctrines of laches, waiver, or acquiescence;

    xiv.    Whether or not Plaintiffs suffered any injury;

    xv.    Whether or not Defendants acted in good faith;

**Issues regarding Damages**

    xvi.    Whether or not Plaintiffs suffered any damages;

xvii.    If Defendants have engaged in any tortious conduct under the Lanham Act, Florida law or common law, to what extent and of what nature of damages are Plaintiffs entitled to, including but not limited to treble damages under 15 U.S.C. § 1117;

xviii.    If Defendants have engaged in any tortious conduct under the Lanham Act, Florida law or common law, to what extent and of what nature of injunctive relief are Plaintiffs entitled to; and

xix.    Whether or not this is an "exceptional case" for which the Court may award reasonable attorney fees to the prevailing party under the Lanham Act.

4.    **Willingness to Consent to Magistrate Judge Jurisdiction.**

The parties have conferred regarding this issue.

5.    **Possibility for Prompt Settlement or Resolution of the Case.**

The parties have conferred and agreed that while there is currently no possibility for a prompt resolution of this action, it may be fruitful for the parties to explore mediation at or near the end of all discovery.

6.    **Discovery Plan.**

a.    **Subjects on Which Discovery will be Needed:**

Plaintiffs anticipate taking discovery on the following non-exhaustive list of topics: (i) Defendants' selection and adoption of the "Floribama" and "Floribama Shore" marks; (ii) Defendants' knowledge of the "FLORA-BAMA" trademark prior

to their "Floribama Shore" television show; (iii) the demographics of the viewers of the "Floribama Shore" television show and consumers of related "Floribama Shore" goods and services; (iv) the number of viewers of the "Floribama Shore" television show in different media; (v) agreements between or among the Defendants concerning the "Floribama Shore" television show; (vi) the marketing and promotion of the "Floribama Shore" television show; (vii) Defendants' usage of the "Floribama Shore" mark; (viii) communications between Defendants and Plaintiffs; (ix) instances of actual confusion between Plaintiffs and the "FLORA-BAMA" mark and Defendants and the "Floribama Shore" television show and mark; (x) Defendants' market research concerning the "Floribama Shore" television show and mark; (xi) Defendants' channels of trade for the "Floribama Shore" television show and goods or services bearing the "Floribama Shore" mark; (xii) the sophistication or lack thereof of Defendants' viewers and consumers of the "Floribama Shore" television show and goods or services bearing the "Floribama Shore" mark; (xiii) complaints or negative criticisms of the "Floribama Shore" television show; (xiv) financial information concerning Defendants' revenues, profits, earnings, expenses, advertising, etc. from the "Floribama Shore" television show and goods or services bearing the "Floribama Shore" mark; (xv) documents concerning the choice of the location where the "Floribama Shore" television show was filmed; (xvi) the willfulness of Defendants' allegedly tortious conduct: and (xvii) relevant

communications concerning the foregoing issues. Plaintiffs have commenced discovery by serving requests for production of various specified relevant documents on Defendants regarding the above-listed topics.

Defendants anticipate taking discovery on the following non-exhaustive list of topics: (a) Plaintiffs' development, use, and registration of their alleged trademarks, including but not limited to Plaintiffs' use of its alleged trademarks in interstate commerce; (b) Plaintiffs' efforts, if any, to police and enforce its alleged trademarks; (c) Plaintiffs' plans—if any such plans exist—to use their alleged trademarks in a television program or series; (d) Plaintiffs' clientele; (e) Plaintiffs' financial conditions, including the profitability of Plaintiffs' various establishments over time; (f) agreements—if any exist—between Plaintiffs and third parties regarding uses of Plaintiffs' alleged trademarks; (g) Plaintiffs' evidence of consumer confusion, if any exists; (h) Plaintiffs' decision-making process regarding whether and when to pursue the claims they allege; (i) Plaintiffs' contact with Defendants, including but not limited to communications regarding the use of Plaintiffs' establishments in television series and as a location for casting calls; and (j) Plaintiffs' alleged damages.

b.     **Disclosure of electronically stored information.**

The parties anticipate that they will be producing relevant electronically stored information. Currently, the parties do not anticipate the need to seek

disclosure of electronically stored information that is not reasonably available. However, the parties reserve their rights to seek such disclosure on a showing of good cause should relevant data reasonably requested by the parties not be reasonably available in the ordinary course of such party's business.

### i.      Format for production of electronically stored information.

The parties will be entering into a separate written protocol for the production of electronically stored information that will address, among other things, the format, media and procedures for production of such information.

### ii.     Reasonable measures to preserve data.

The parties have undertaken reasonable measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business.

### iii.    Procedures to address inadvertent production of privileged information.

The parties have agreed to address the inadvertent production of privileged information in a stipulation and order regarding the production of confidential information, which the parties' counsel anticipate will be submitted for the Court's approval shortly.

### iv.     Other issues regarding electronically stored information.

At this time the parties do not anticipate other issues or problems regarding the production of electronically stored information, but reserve their rights should any currently unforeseen issues or problems arise.

### c. Dates for commencing and completing discovery and for expert disclosures.

During the parties' Rule 26 conference*s*, counsel discussed the need for both sides to engage multiple expert witnesses on different topics.  *The parties agree that due to the complexities of this case and the need to bifurcate discovery into fact and expert stages, the parties require additional time to complete relevant fact and expert discovery.*

Plaintiffs anticipate engaging at least one, if not several, damage experts to opine on different types of recoverable damages, including but not limited to disgorgement of Defendants' profits, cost for corrective advertising, payment of licensing royalties/fees and/or other appropriate actual damages, all of which are permitted under the Lanham Act for trademark infringement and unfair competition claims.  In addition, Plaintiffs anticipate engaging at least one trademark survey expert to conduct one or more consumer market surveys to assist the Court in determining whether there is a likelihood of confusion between Plaintiffs' "FLORA-BAMA" trademark and Defendants' "Floribama" trademark.

*Similarly, Defendants anticipate that they will engage at least one damages expert and at least one expert to conduct a consumer market survey.*

For the experts to prepare and finalize their expert reports and Rule 26(a)(2) expert disclosures, they require a fully developed factual record based on the document production of the parties and the deposition discovery of various fact witnesses. Accordingly, the parties agree that there should be a separate expert discovery period of 90 days, which must necessarily follow the completion of all fact discovery.

In addition, the parties agree that there should be a simultaneous exchange of affirmative expert reports after fact discovery is concluded and then 30 days later a simultaneous exchange of rebuttal expert reports. Following the exchange of all affirmative and rebuttal expert reports, the parties agree there should be a 30 day period to depose experts who have made expert disclosures.

Under the Court's Initial Scheduling Order (Dkt. 16), all discovery was contemplated to be concluded by December 26, 2019. *The parties* propose that the fact discovery period should be concluded *February 28, 2020*, which is only *60 days* later than the current schedule for all discovery. *The parties believe that this additional 60 day period is necessary to complete all fact discovery, given the breadth of discovery that the parties anticipate as outlined above in Section 6(a), the*

*likely extensive document collection efforts, and the resultant significant document productions and numerous fact depositions.*

*The parties* then propose that expert discovery should be concluded by *May 29*, 2020, with affirmative expert reports to be exchanged on *March* 31, 2020 and rebuttal expert reports to be exchanged on *April 30*, 2020. *The parties* believe this schedule would provide the necessary adequate time to conduct all reasonably required fact and expert discovery.

For the Court's convenience, *the parties'* proposed discovery and expert disclosure dates are set out below:

| Event | Plaintiffs' Proposed Dates |
|---|---|
| Deadline for all fact discovery | *February 28*, 2020 |
| Deadline for disclosure of parties' affirmative expert reports | *March 31*, 2020 |
| Deadline for disclosure of parties' rebuttal expert reports | *April 30*, 2020 |
| Deadline for all expert discovery | *May 29*, 2020 |

### d. Other Discovery Considerations.

The parties do not believe there is any need to modify the requirements under Federal Rules of Civil Procedure for maximum number of interrogatories, requests

for admission, or depositions. Nor do the parties believe any modification is necessary of the hourly limits on the length of depositions.

7. **Timetable for Joinder of Other Parties, Amendments to the Pleadings and Filing of Motions and Responses.**

The parties propose the timetable for joinder of other parties or amendments to the pleading should be December 6, 2019.

8. **Timing of Potential Summary Judgment Motions.**

Consistent with the Court's Initial Scheduling Order, the parties agree that all motions for summary judgment shall be filed no later than 30 days after the close of all discovery.

9. **Trial.**

Given the need for a separate expert discovery period following the conclusion of all fact discovery, *the parties* propose a trial date of *September 30, 2020*. This is approximately *13½* months from the date of filing the complaint. The additional time is required due to the complexity of this matter, the need for two phases of expert disclosure followed by expert depositions and sufficient time following the filing and opposition of summary judgment motions to prepare for trial. *The parties* believe that a *four* month period following the conclusion of all discovery is necessary to address summary judgment motions, make the necessary

pre-trial disclosures and prepare for trial. *The parties* estimate that trial will take approximately eight to ten trial days.

10.  **Manual for Complex Litigation**

While this matter will likely involve numerous expert witnesses on both sides, the parties do not believe that this case should be made subject to the Manual for Complex Litigation.

Dated: *October 30*, 2019

By: *s/ Joshua R. Harris*
Joshua R. Harris (Fla. Bar No124124)
Levin, Papantonio, Thomas, Mitchell, Rafferty, and Proctor, P.A.,
316 S. Baylen St., Suite 600
Pensacola, Florida 32502-0502
Telephone: (850) 435-7018
Facsimile: (850) 436-6018
Email: JHarris@levinlaw.com

-and-

By: *s/ Fred H. Perkins*
Fred H. Perkins (NY Bar #1978337)
*Admitted Pro Hac Vice*
Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
Telephone: (212) 735-8647
Facsimile: (212) 522-3147
Email: fhperkins@morrisoncohen.com
*Attorneys for Plaintiffs*

By: *s/ Susan J. Kohlmann*
Susan J. Kohlmann (Pro Hac Vice)
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699
Email: skohlmann@jenner.com

-and-

By: *s/ Robert W. Pass*
Robert W. Pass (FL Bar #183169)
CARLTON FIELDS, P.A.
215 South Monroe Street, Suite 500
Tallahassee, FL 32301
Tel: (850) 224-1585
Fax: (850) 222-0398
Email: rpass@carltonfields.com
*Attorneys for Defendants*