UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO. 5:19-CV-00257-RH-MJF

MGFB PROPERTIES, INC., FLORA-
BAMA MANAGEMENT, LLC, and
FLORA-BAMA OLD S.A.L.T.S., INC.,

       Plaintiffs,

vs.

VIACOMCBS        INC.,        495
PRODUCTIONS HOLDINGS LLC, and
495 PRODUCTIONS SERVICES LLC,

       Defendants.

_____

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**



## **UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................... 1

STATEMENT OF FACTS ...................................................................... 1

    A.   Plaintiffs' Business Operations ............................................. 1

    B.   Defendants' Businesses ........................................................ 3

    C.   Origins Of This Lawsuit ....................................................... 4

    D.   Procedural History ............................................................... 4

LEGAL STANDARD ............................................................................. 5

ARGUMENT ......................................................................................... 5

    I.   The First Amendment Bars All Of Plaintiffs' Claims .................. 6

        A.   The *Rogers* Test Precludes Plaintiffs' Trademark
            Infringement And Unfair Competition Claims. ................... 6

        B.   The First Amendment Is Also Fatal To Plaintiffs'
            Dilution Claim. .................................................................. 16

        C.   Plaintiffs' Unjust Enrichment Claim Also Fails. .............. 17

    II.   Plaintiffs Cannot Prove The Elements Of Their Claims. ............ 18

        A.   There Is No Likelihood Of Confusion. .............................. 18

        B.   Plaintiffs' Mark Is Not Famous In Florida ........................ 31

        C.   Defendants Were Not Unjustly Enriched ........................... 33

    III.   495 Productions Is Not Directly Liable. ..................................... 33

CONCLUSION ..................................................................................... 34

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advance Magazine Publishers, Inc. v. Chic USA, Inc.*,
    2021 WL 664138 (M.D. Fla. Feb. 2, 2021) ......................................................16

*Apollo Theater Found., Inc. v. W. Int'l Syndication*,
    2005 WL 1041141 (S.D.N.Y. May 5, 2005) ....................................................14

*Armstrong Cork Co. v. World Carpets, Inc.*,
    597 F.2d 496 (5th Cir. 1979) ..........................................................................30

*Betty's Found. for Elimination of Alzheimer's Disease v. Trinity*
    *Christian Center of Santa Ana, Inc.*,
    No. 20-cv-2146, Dkt. 29 (C.D. Cal. Apr. 7, 2021) .............................................8

*Bolger v. Youngs Drug Products Corp.*,
    463 U.S. 60 (1983) ..........................................................................................17

*Brady v. Grendene USA, Inc.*,
    2014 WL 5783771 (S.D. Cal. Nov. 6, 2014) ...................................................19

*Brice Building Co. v. Lee*,
    2010 WL 11640032 (N.D. Fla. Apr. 13, 2010) ................................................17

*Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep,*
    *Dodge, LLC*,
    605 F.3d 931 (11th Cir. 2010) ........................................................................13

*Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*,
    269 F.3d 270 (3d Cir. 2001) ............................................................................24

*Claybrooks v. Am. Broad. Cos.*,
    898 F. Supp. 2d 986 (M.D. Tenn. 2012) ............................................................7

*Conagra, Inc. v. Singleton*,
    743 F.2d 1508 (11th Cir. 1984) ......................................................................13

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
    508 F.3d 641 (11th Cir. 2007) ..................................................................20, 23

iii

*Decorative Ctr. of Hous., L.P. v. Direct Response Publ'ns, Inc.*,
    264 F. Supp. 2d 535 (S.D. Tex. 2003) .................................................................29

*Dickinson v. Ryan Seacrest Enterprises Inc.*,
    839 F. App'x 110 (9th Cir. 2020) .....................................................................7

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
    983 F.3d 443 (9th Cir. 2020) ...........................................................................12

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ..........................................................................9

*Ellis v. England*,
    432 F.3d 1321 (11th Cir. 2005) ........................................................................5

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ.*,
    830 F.3d 1242 (11th Cir. 2016) ..............................................................*passim*

*Freedom Sav. & Loan Ass'n v. Way*,
    757 F.2d 1176 (11th Cir. 1985) ......................................................................29

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
    921 F.3d 1343 (11th Cir. 2019) ......................................................................28

*Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*,
    2018 WL 7825183 (S.D. Fla. June 13, 2018) ..................................................26

*HBP, Inc. v. Am. Marine Holdings, Inc.*,
    290 F. Supp. 2d 1320 (M.D. Fla. 2003) ..........................................................21

*Hodgdon Powder Co. v. Alliant Techsystems, Inc.*,
    512 F. Supp. 2d 1178 (D. Kan. 2007) .............................................................29

*Holding Co. of the Vills., Inc. v. Little John's Movers & Storage, Inc.*,
    2017 WL 6319549 (M.D. Fla. Dec. 11, 2017) ................................................31

*Implant Innovations, Inc. v. Debbie LLC*,
    2007 WL 9701902 (S.D. Fla. May 2, 2007),
    *adopted* 2007 WL 9701982 (S.D. Fla. June 21, 2007)......................................29

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982)........................................................................................34

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

*Jackson v. Netflix, Inc.*,
   --- F. Supp. 3d ----, 2020 WL 8028615 (C.D. Cal. Dec. 9, 2020)..................7, 17

*Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*,
   920 F.3d 704 (11th Cir. 2019) .............................................................................5

*Legacy Entm't Grp., LLC v. Endemol USA Inc.*,
   2015 WL 12838795 (M.D. Fla. Oct. 1, 2015) .............................................13, 14

*Luigino's, Inc. v. Stouffer Corp.*,
   170 F.3d 827 (8th Cir. 1999) .............................................................................23

*Marco's Franchising, LLC v. Marco's Italian Exp., Inc.*,
   2007 WL 2028845 (M.D. Fla. July 9, 2007) .....................................................13

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ...................................................................7, 8, 17

*Michael Caruso & Co. v. Estefan Enters., Inc.*,
   994 F. Supp. 1454 (S.D. Fla.),
   *aff'd* 166 F.3d 353 (11th Cir. 1998)...................................................................32

*Mini Maid Services Co. v. Maid Brigade Systems, Inc.*,
   967 F.2d 1516 (11th Cir. 1992) .........................................................................34

*Moore v. Weinstein Co.*,
   2010 WL 8913520 (M.D. Tenn. May 12, 2010) ...............................................14

*Moore v. Weinstein Co.*,
   2012 WL 1884758 (M.D. Tenn. May 23, 2012) ...............................................15

*Morgan Creek Prods. v. Capital Cities/ABC, Inc.*,
   1991 WL 352619 (C.D. Cal. Oct. 28, 1991) .....................................................14

*MPS Ent., LLC v. Abercrombie & Fitch Stores, Inc.*,
   2013 WL 3288039 (S.D. Fla. June 28, 2013).....................................................31

*Pellegrino v. Epic Games, Inc.*,
   451 F. Supp. 3d 373 (E.D. Pa. 2020).................................................................33

*Phelan Holdings, Inc. v. Rare Hosp. Mgmt., Inc.*,
   2017 WL 1135266 (M.D. Fla. Mar. 27, 2017) ..................................................18

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

*Pilot Corp. of Am. v. Fisher-Price, Inc.*,
  501 F. Supp. 2d 292 (D. Conn. 2007)...................................................23

*Provide Com., Inc. v. Preferred Com., Inc.*,
  2008 WL 926777 (S.D. Fla. Apr. 4, 2008)...................................31, 32

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ..............................................6, 8, 13, 15

*Romantics v. Activision Pub., Inc.*,
  574 F. Supp. 2d 758 (E.D. Mich. 2008) ...........................................18

*Samson Distributing, Inc. v. Kreger*,
  2007 WL 2254498 (M.D. Fla. Aug. 3, 2007)....................................16

*Simon & Schuster v. Dove Audio*,
  970 F. Supp. 279 (S.D.N.Y. 1997) ...................................................14

*Smith v. Wal-Mart Stores, Inc.*,
  537 F. Supp. 2d 1302 (N.D. Ga. 2008)..............................................17

*Sorensen v. WD-40 Co.*,
  792 F.3d 712 (7th Cir. 2015) .............................................................23

*Superior Consulting Servs., Inc. v. Shaklee Corp.*,
  2019 WL 913374 (M.D. Fla. Feb. 25, 2019).....................................31

*Tana v. Dantanna's*,
  611 F.3d 767 (11th Cir. 2010) ..........................................................27

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
  295 F.3d 623 (6th Cir. 2002) ............................................................24

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*,
  749 F. Supp. 1243 (S.D.N.Y. 1990) ..................................................14

*Twentieth Century Fox Television v. Empire Distribution, Inc.*,
  875 F.3d 1192 (9th Cir. 2017) ..................................................7, 8, 13

*Uber Promotions, Inc. v. Uber Techs., Inc.*,
  162 F. Supp. 3d 1253 (N.D. Fla. 2016) .............................................30

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

*Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ........................................................6, 9, 11, 12

*VIP Products LLC v. Jack Daniel's Properties, Inc.*,
   953 F.3d 1170 (9th Cir. 2020) ....................................................................... 8

*W.W.W. Pharm. Co. v. Gillette Co.*,
   984 F.2d 567 (2d Cir. 1993) ........................................................................24

*Water Pik, Inc. v. Med-Systems, Inc.*,
   726 F.3d 1136 (10th Cir. 2013) ...................................................................23

*Wreal LLC v. Amazon.com, Inc.*,
   2015 WL 12550932 (S.D. Fla. Feb. 3, 2015),
   *adopted* 2015 WL 12550912 (S.D. Fla. Aug. 31, 2015),
   *aff'd* 840 F.3d 1244 (11th Cir. 2016) .........................................................30

*Wreal, LLC v. Amazon.com, Inc.*,
   2019 WL 3890320 (S.D. Fla. July 26, 2019) .........................................18, 19, 23

*Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*,
   898 F.3d 1279 (11th Cir. 2018) ...............................................................20, 27

**Statutes**

15 U.S.C. § 1125(c)(3)(C) .............................................................................16

Fla. Stat. § 495.151(1).................................................................................31

Fla. Stat. § 495.151(3)(b).............................................................................16

**Other Authorities**

2 McCarthy on Trademarks & Unfair Competition (5th ed. 2021).......20, 21, 23, 28

Fed. R. Civ. P. 56(a).....................................................................................5

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

## INTRODUCTION

Plaintiffs MGFB Properties, Inc., Flora-Bama Management, LLC, and Flora-Bama Old S.A.L.T.S., Inc. (collectively, "Plaintiffs") operate the Flora-Bama Lounge, Package, and Oyster Bar (the "Flora-Bama Lounge") and other related establishments (collectively, the "Flora-Bama Establishments"). Defendants 495 Productions Holdings LLC and 495 Productions Services LLC (together, "495 Productions") and ViacomCBS Inc. ("ViacomCBS," or, together with 495 Productions, "Defendants") collectively develop, produce, and distribute *MTV Floribama Shore* (the "Series"), a reality television series. Plaintiffs sued alleging trademark infringement and related claims. However, the First Amendment precludes all of Plaintiffs' claims as a matter of law. Further, Plaintiffs cannot prove the elements of those claims. Thus, Defendants are entitled to summary judgment.

## STATEMENT OF FACTS

### A. Plaintiffs' Business Operations

The Flora-Bama Lounge was founded in 1964 as a "small bar and package store" adjacent to the beach in Perdido Key, Florida. Decl. of Susan Kohlmann ("Decl."), Ex. 1. From its founding, the Flora-Bama Lounge has straddled the Florida-Alabama state line. *Id.*

Today, the Flora-Bama Lounge is a bar, restaurant, and live event venue that hosts concerts and other events such as a fish-tossing competition and chili cook-

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

off. *Id.* Plaintiffs market the Flora-Bama Lounge by promoting its physical location in both Florida and Alabama. Decl., Exs. 2, 3.

In 2013, Plaintiffs obtained a federal trademark registration in "FLORA-BAMA" (the "Mark"). Dkt. 1-5, Ex. A. That registration covers, among other things, bar and restaurant services, transportation services, and "entertainment" services such as "live musical performances," "competitions for fish throwing," and "cooking contests." *Id.* In 2019, Plaintiffs obtained a Florida state trademark registration covering similar services. Dkt. 1-5, Ex. D.

Plaintiffs have sought to enforce the Mark aggressively. They have sent cease-and-desist letters to at least 60 businesses across the region, sometimes at a rate of more than 30 letters per year. Decl., Ex. 4 at 27:1-10, Ex. 5. Many of the recipients operate businesses nothing like the Flora-Bama Establishments. For example, Plaintiffs sent letters to a geographic surveying company, an estate sales firm, and a dog rescue charity. Decl., Ex. 5 at MGFB00043798, SC-00401, MGFB00043881. This strategy is driven by Plaintiffs' co-owner, John McInnis, who testified that he believes even a nonprofit that provides completely different services from the Flora-Bama Lounge needs Plaintiffs' permission to use the word "Flora-Bama" because Plaintiffs "own the name, period." Decl., Ex. 6 at 69:11-17.

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

**B. Defendants' Businesses**

Defendants' principal businesses are to develop, produce, and distribute television and film entertainment.  ViacomCBS is a global media and entertainment company that operates numerous television brands, including MTV, VH1, Nickelodeon, and Comedy Central.  495 Productions is a television production studio that has produced series for ViacomCBS and others.

One such series was *Jersey Shore*, a hit that profiled a group of fun-loving 20-somethings who lived together in a beach house in Seaside Heights, New Jersey. Decl., Ex. 7 at 132:3-24, 160:3-7; Ex. 8 at 27:5-14.  *Jersey Shore* created a valuable franchise for MTV, spawning multiple iterations in locations around the world.  *Id.* Critical to the success of *Jersey Shore* was the specific "subculture" of its cast members.  *Id.*

In 2016, ViacomCBS began to develop a seventh *Shore* series, focused on Southern beach culture, in particular the "young Southern folks" who go to "shore houses" or "spend summers" on the Gulf Coast shoreline extending from the Florida Panhandle into Alabama.  Decl., Ex. 9 at 63:14-64:1.  ViacomCBS did market research on the region and, in conjunction with 495 Productions, cast the series and eventually filmed the first season in Panama City Beach, Florida.  Decl., Ex. 7 at 95:17-20; Ex. 10 at 100:1-11; Ex. 11 at 143:24-144:10.  ViacomCBS executives made the creative decision to name the series *MTV Floribama Shore*, using the word

**<u>UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL</u>**

"Floribama" to describe the subculture that defined the series and the geographic region exemplified by that subculture. Decl., Ex. 8 at 42:18-43:23; Ex. 9 at 55:21-56:19.

### C. Origins Of This Lawsuit

Less than a month before the scheduled premiere on November 27, 2017, Plaintiffs sent ViacomCBS a cease-and-desist letter, alleging that the title of the Series infringed Plaintiffs' rights in the Mark. Decl., Ex. 12. ViacomCBS promptly responded and explained its defenses. Decl., Ex. 13. The Series premiered as scheduled.

### D. Procedural History

Nearly two years later—after a second season of the Series was broadcast and a third was scheduled to air—Plaintiffs filed this lawsuit. Dkt. 1 ("Compl."). Defendants moved to dismiss, arguing that the First Amendment bars Plaintiffs' claims. Dkt. 28 ("MTD"). While the Court denied Defendants' motion, it cautioned that its analysis may be different "when the actual facts are known." Dkt. 33 ("MTD Order") at 3. Now, the parties have completed extensive discovery, including producing tens of thousands of documents, completing 21 fact depositions, and serving nine expert reports from seven different experts, all of whom have been

4

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

deposed.[1]   That robust record reveals that Defendants are entitled to summary judgment.

## LEGAL STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts "view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).  However, a party's "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## ARGUMENT

Defendants are entitled to summary judgment on all eight of Plaintiffs' claims. Six allege trademark infringement or unfair competition under the Lanham Act or Florida law.[2]   The parties agree "that because Florida trademark infringement and

---

[1] For the Court's convenience, Defendants are providing electronic versions of all expert reports cited herein, including exhibits, via flash drive, in addition to filing them on the docket.

[2] Counts I and II allege trademark infringement and unfair competition under the Lanham Act.  *See* Compl. ¶¶ 87-94, 95-101.  Counts III and IV allege statutory trademark infringement and unfair trade practices under Florida law.  *See id.* ¶¶ 102-08, 109-12.  Counts VI and VII allege common law trademark infringement and unfair competition under Florida law.  *See id.* ¶¶ 123-29, 130-34.

5

<u>**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**</u>

unfair competition law is the same as federal law, a court can use federal law analysis to evaluate the merits of the Florida claim[s]." Dkt. 31 ("MTD Opp.") at 33 (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007)). Plaintiffs' two remaining claims allege trademark dilution and unjust enrichment under Florida law. *See* Compl. ¶¶ 113-22 (Count V), 135-39 (Count VIII).

The First Amendment entitles Defendants to summary judgment. Further, even without the First Amendment, Plaintiffs cannot prove the elements of their claims.

## I.    THE FIRST AMENDMENT BARS ALL OF PLAINTIFFS' CLAIMS.

### A. The *Rogers* Test Precludes Plaintiffs' Trademark Infringement And Unfair Competition Claims.

In *Rogers v. Grimaldi*, the Second Circuit recognized that the creators of "works of artistic expression" have First Amendment rights that would be threatened by applying the Lanham Act broadly. 875 F.2d 994, 997-98 (2d Cir. 1989). To balance a plaintiff's Lanham Act rights against the First Amendment rights of the creator of an expressive work, *Rogers* held that the Lanham Act does *not* apply to the title of an expressive work except in limited circumstances. *See id.* at 999. The Eleventh Circuit has had "no hesitation" in adopting *Rogers*' balancing test. *Univ. of Ala. Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012).

6

That test is fatal to Plaintiffs' trademark infringement and unfair competition claims. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902, 908 (9th Cir. 2002) (applying *Rogers* to trademark infringement claim); *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1195 (9th Cir. 2017) (applying *Rogers* to unfair competition claim).

    1. *Defendants Collectively Use "Floribama" Only In Connection With* MTV Floribama Shore.

Defendants collectively use "Floribama" in three ways: (1) in the title and content of the Series; (2) in a theme song introduced in the second season of the Series; and (3) in various marketing, promotional, and advertising materials to promote the Series.

It is beyond dispute that each category is expressive.[3]  *MTV Floribama Shore* is a television series and therefore "clearly an expressive work." *Empire Distribution*, 875 F.3d at 1196 (applying *Rogers* to *Empire* television series).  The same is true of a reality series. *See Dickinson v. Ryan Seacrest Enterprises Inc.*, 839 F. App'x 110 (9th Cir. 2020) (applying *Rogers* to *Shahs of Sunset*); *Jackson v. Netflix, Inc.*, --- F. Supp. 3d ----, 2020 WL 8028615, at *3 (C.D. Cal. Dec. 9, 2020) (applying *Rogers* to *Tiger King*); *cf. Claybrooks v. Am. Broad. Cos.*, 898 F. Supp.

--------

[3] In their motion to dismiss, Defendants explained the basis for concluding that each of these categories is protected by the First Amendment. *See* MTD at 10-13. Plaintiffs did not dispute any of those assertions.

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

2d 986, 999-1000 (M.D. Tenn. 2012) (holding *The Bachelor* is entitled to First Amendment protection).

The Series theme song is also clearly expressive. *Rogers* recognized "songs" as "indisputably" expressive. 875 F.2d at 997; *see also Mattel*, 296 F.3d at 902 (applying *Rogers* to the song "Barbie Girl"). The same analysis applies to songs associated with a television series. *See Empire Distribution*, 875 F.3d at 1196 (applying *Rogers* to songs associated with *Empire*).

Finally, the marketing, promotional, and advertising materials are expressive because they were used to promote the Series. The protections afforded to an expressive work are extended to promotional materials related to that work. *See id.* at 1196-97 (concluding that the *Rogers* doctrine "could be destabilized if the titles of expressive works were protected but could not be used to promote those works").[4]

   2. *None Of The Exceptions to* Rogers *Applies.*

*Rogers* held that the First Amendment precludes application of the Lanham Act to expressive works except in narrow circumstances. A plaintiff has the burden of proving those circumstances. *See VIP Products LLC v. Jack Daniel's Properties,*

---

[4] Beginning in September 2020, ViacomCBS also made a limited amount of Series consumer products available, generating just $99 in revenue. Decl., Ex. 14. *Rogers* also protects this material. *See Empire Distribution*, 875 F.3d at 1196-97 (applying *Rogers* to "the sale or licensing of consumer goods" related to an expressive work); *Betty's Found. for Elimination of Alzheimer's Disease v. Trinity Christian Center of Santa Ana, Inc.*, No. 20-cv-2146, Dkt. 29 at 5 (C.D. Cal. Apr. 7, 2021) (applying *Rogers* to "merchandise sales" related to a television series).

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

*Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020).  The undisputed facts demonstrate that Plaintiffs cannot meet that burden.

        a. Plaintiffs Cannot Demonstrate That Either Established *Rogers* Exception Applies.

The *Rogers* test permits Lanham Act claims against the creator of an expressive work only when the work's use of a mark "has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, [when] the title explicitly misleads as to the source or the content of the work." *Univ. of Ala.*, 683 F.3d at 1278.

To be artistically relevant, the relationship between the use of a mark and an expressive work "merely must be above zero." *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).  In other words, a plaintiff can prevail under this prong of the *Rogers* test only by proving that the use of the mark has "no" artistic relevance to the work "whatsoever." *Univ. of Ala.*, 683 F.3d at 1278 (quoting *E.S.S. Entm't*, 547 F.3d at 1099).

Plaintiffs cannot meet their burden to prove that "Floribama" has no artistic relevance whatsoever to the Series.  Plaintiffs took robust discovery on this issue, obtaining thousands of documents reflecting how Defendants collectively created the Series and selected its title.  Plaintiffs also deposed all three key executives at ViacomCBS responsible for naming the Series.  That evidence tells a clear and

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

consistent story: "Floribama" describes the "subculture" profiled on the Series and the geographic region exemplified by that subculture.

The Series began as part of an effort to expand MTV's established *Shore* franchise, which began with *Jersey Shore*. *See supra*, at 3-4. Part of *Jersey Shore*'s success was that it profiled a specific "subculture" of people. MTV's head of unscripted television described that subculture as people who "are Jersey" and share common interests like "going to the Jersey Shore," a "dedication to their Italian culture," and "a love of clubbing." Decl., Ex. 9 at 56:16-57:11. Critically, while that subculture was represented along the New Jersey coast, it also extended beyond that specific location. Indeed, MTV's president testified that *Jersey Shore*'s subculture was a "profile of an individual that extends beyond" the "particular location" of the series. Decl., Ex. 8 at 61:12-62:8.

For its new series, ViacomCBS decided to feature a subculture of "young Southern folks" who go to "shore houses" or "spend summers" on the Gulf Coast shoreline extending from Florida into Alabama. Decl., Ex. 9 at 63:14-64:1. To name the Series, executives at ViacomCBS chose "Floribama" because it "defines the subculture," namely "folks who are living on the Alabama through to the Florida Gulf Shore southerners." *Id.* at 63:5-12; *see* Decl., Ex. 8 at 61:12-62:8 ("Floribama" offers "a very distinct sense of what part of the country and subculture that is"). Indeed, the relationship between "Floribama" and the subculture of the Series is

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

obvious: "Flori" refers to Florida (*i.e.*, beach culture), and "bama" refers to Alabama (*i.e.*, Southern culture).  Other potential titles did not describe the Series' subculture and its connection to the *Shore* franchise as clearly.[5]

Because this evidence is consistent and unrebutted, Plaintiffs cannot meet their burden to prove that the word "Floribama" has "no" artistic relevance "whatsoever" to the Series.  *Univ. of Ala.*, 683 F.3d at 1278.

Moreover, Plaintiffs cannot meet their burden to show that the Series title "explicitly misleads as to the source or the content of the work." *Id.*  Use of a mark alone does not qualify as explicitly misleading.  *See id.* at 1278-79.  Rather, the Eleventh Circuit looks to whether the defendant ever "marketed an unlicensed item as endorsed or sponsored" by the plaintiff, or "otherwise explicitly stated" that the expressive work was affiliated with the plaintiff.  *Id.* at 1279 (holding that expressive works incorporating the plaintiff's trademark were not explicitly misleading in the absence of such statements).  That standard expressly accounts for the risk that some

---

[5] A name like "Florida Shore" would have been too vague, as Florida has "multiple subcultures." Decl., Ex. 8 at 61:12-62:8. A name like "Gulf Shore" would not have differentiated the "style" and "tone" of the Series from other MTV programming. Decl., Ex. 15. In particular, ViacomCBS executives concluded that "Gulf Shore" sounded too much like another MTV series airing at the time called *Siesta Key*. *See id. Siesta Key* was "a very different show than what the *Shore* brand is." Decl., Ex. 9 at 156:11-22. The executives thought "Floribama" "screams louder" than "Gulf Shore" and thus invokes the subculture of the Series and the *Shore* franchise more directly. Decl., Ex. 15.

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

consumers might "draw the incorrect inference" about the source of the defendant's work, which is "'so outweighed by the interest in artistic expression as to preclude' any violation of the Lanham Act." *Id.* (quoting *Rogers*, 875 F.2d at 1001).

There is no evidence in the record that Defendants ever marketed the Series as being endorsed or sponsored by Plaintiffs or stated that the series was affiliated with Plaintiffs. To the contrary, ViacomCBS chose a title for the Series that includes its own house mark (MTV) and one of its most iconic franchises (*Shore*). Further, Defendants have never drawn any explicit connection between the Series and Plaintiffs in any marketing, advertising, or promotional materials, and the Series has never featured, discussed, or even mentioned any of the Flora-Bama Establishments. Applying the standard used by the Eleventh Circuit in *University of Alabama*, those facts preclude finding that Defendants explicitly misled the public as to the source or content of *MTV Floribama Shore*. *See id.* at 1278.[6]

---

[6] To determine whether the use of a mark in an expressive work is explicitly misleading, the Ninth Circuit has also considered "(1) the degree to which the junior user uses the mark in the same way as the senior user and (2) the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself." *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020). Even if the Court were to consider those factors, Defendants would still prevail. Plaintiffs use the Mark predominantly in association with their restaurant, bar, live music, and water sport establishments. *See infra*, at 24-25. They concede that they have never produced a television series. *See id.* Moreover, it is beyond dispute that *MTV Floribama Shore* includes expressive content far beyond its use of the word "Floribama." In *Dr. Seuss*, that alone was sufficient to find the expressive work at issue was not explicitly misleading. *See* 983 F.3d at 463 (applying *Rogers*

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

     b. None Of Plaintiffs' Claims Relate To Any Allegedly
       Confusingly Similar Title.

In opposing Defendants' motion to dismiss, Plaintiffs cited dicta from a footnote in *Rogers* arguably suggesting the case may not apply to claims alleging "misleading titles that are confusingly similar to other titles." 875 F.2d at 999 n.5. Plaintiffs claimed that this footnote created an exception to the *Rogers* test that applies because their Mark "appears in the titles of numerous artistic works either produced or licensed by Plaintiffs." MTD Opp. at 11. However, the *Rogers* footnote does not save Plaintiffs' claims.

That footnote does not create a substantive limit on *Rogers*'s scope. The Ninth Circuit has expressly declined to apply it because it "has the potential to duplicate either the likelihood-of-confusion test or the second prong of *Rogers*." *Empire Distribution*, 875 F.3d at 1197. Accordingly, the Ninth Circuit concluded that this *Rogers* footnote was either "ill-advised or unnecessary." *Id.*[7]

---

when both parties used mark in an "illustrated book" but defendant "added expressive content to the work beyond the mark itself").

[7] While one Florida district court decision concluded that Eleventh Circuit case law does not apply the *Rogers* test to claims "based on confusingly similar titles," the analysis in that case is flawed. *Legacy Entm't Grp., LLC v. Endemol USA Inc.*, 2015 WL 12838795, at *6 (M.D. Fla. Oct. 1, 2015). *Legacy* cited just three other cases, none of which dealt with a Lanham Act claim involving any expressive work, let alone multiple competing expressive works. *See Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931 (11th Cir. 2010) (competing car dealership advertisements); *Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir. 1984) (competing business names); *Marco's Franchising, LLC v. Marco's Italian Exp., Inc.*, 2007 WL 2028845 (M.D. Fla. July 9, 2007) (competing

13
**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

In any event, there is no "confusingly similar titles" claim in this case. This limitation applies only when a plaintiff alleges that a defendant's expressive work creates confusion with regard to *another expressive work* owned by the plaintiff. Indeed, in every case on this issue invoked by Plaintiffs in opposing Defendants' motion to dismiss, *Rogers* did not apply because the plaintiff alleged confusion between *competing expressive works*, not between an expressive work and a plaintiff's other alleged rights under the Lanham Act.[8]

That very distinction was critical in one of the cases relied upon by Plaintiffs: *Moore v. Weinstein Co.*, 2010 WL 8913520 (M.D. Tenn. May 12, 2010) (denying motion to dismiss). According to Plaintiffs, *Moore* demonstrates that *Rogers*

---

restaurant names). Unsurprisingly, none of these cases mention *Rogers* or the First Amendment. They stand only for the proposition that in the *absence* of any First Amendment interest associated with the alleged use of a mark, the traditional likelihood-of-confusion test applies. Because *Legacy* offered no other reason supporting its analysis, its conclusion lacks support and should be disregarded. Indeed, no other court has cited *Legacy* for this proposition.

[8] *See Legacy*, 2015 WL 12838795 (alleging that television series was confusingly similar to television series); *Moore v. Weinstein Co.*, 2010 WL 8913520 (M.D. Tenn. May 12, 2010) (alleging that film was confusingly similar to album and documentary); *Apollo Theater Found., Inc. v. W. Int'l Syndication*, 2005 WL 1041141 (S.D.N.Y. May 5, 2005) (alleging that television series was confusingly similar to television series); *Simon & Schuster v. Dove Audio*, 970 F. Supp. 279 (S.D.N.Y. 1997) (alleging that book and audiobook were confusingly similar to book); *Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, 1991 WL 352619 (C.D. Cal. Oct. 28, 1991) (alleging television series was confusingly similar to film); *Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 749 F. Supp. 1243 (S.D.N.Y. 1990) (alleging film was confusingly similar to film).

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

becomes irrelevant whenever a plaintiff claims rights in expressive works that are allegedly infringed by another expressive work. *See* MTD Opp. at 9-10. However, when *Moore* reached summary judgment, the court distinguished between the plaintiff's claims based on competing expressive works and those based on alleged confusion between an expressive work and other trademark rights. *See Moore*, 2012 WL 1884758, at *34-35 (M.D. Tenn. May 23, 2012). The court applied *Rogers* to the plaintiff's non-expressive work claims and granted summary judgment to defendants. *See id.*

Here, none of Plaintiffs' claims—and none of Plaintiffs' purported evidence of actual confusion—relate to alleged confusion between the Series and another expressive work. Additionally, none of Plaintiffs' marketing and advertising evidence demonstrates that they ever sought to promote an expressive work. Further, Plaintiffs' survey expert did not test for any confusion between the Series and another expressive work. In sum, there is no record evidence of any likelihood of confusion between the Series and another expressive work.[9] Rather, Plaintiffs'

---

[9] Separate and apart from the fact that there are no "confusingly similar title" claims at issue here, Plaintiffs lack standing to pursue any such claims. Such claims can be brought only by "the holder of the rights to that title." *Rogers*, 875 F.2d at 998. Plaintiffs do not own any rights in the title to any expressive work incorporating their Mark. For example, while Plaintiffs claim to have orally "licensed" their Mark to the musician Kenny Chesney for his song "Flora-Bama" and televised concert titled "Kenny Chesney: Live From the Flora-Bama," there is no evidence establishing that they acquired any rights in the song or the broadcast in exchange for their "license." Decl., Ex. 16 at 191:19-192:1 (claiming only that Plaintiffs

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

evidence relates to alleged confusion between the Series and the Flora-Bama Establishments. *See generally infra*, at 28-30.

**B. The First Amendment Is Also Fatal To Plaintiffs' Dilution Claim.**

Plaintiffs allege a trademark dilution claim pursuant to Florida Statute § 495.151. *See* Compl. ¶¶ 113-22. That statute has "essentially the same" scope of application as the Lanham Act's dilution provision. *Advance Magazine Publishers, Inc. v. Chic USA, Inc.*, 2021 WL 664138, at *4 (M.D. Fla. Feb. 2, 2021). Critically, both Florida's and the Lanham Act's dilution provisions identically exempt "noncommercial" uses of a mark. Fla. Stat. § 495.151(3)(b); 15 U.S.C. § 1125(c)(3)(C).[10]

---

"trusted" Mr. Chesney to use the Mark). Further, while Plaintiffs claim they "own the rights" to a documentary titled *The Last American Roadhouse: The Documentary of the Flora-Bama*, that testimony is contradicted by the contract between Plaintiffs and the company that made the documentary, in which Plaintiffs purchased only "footage," "inventory," and "usage rights" related to the film. *Compare* Decl., Ex. 6 at 158:3-14, *with* Decl., Ex. 17. In any event, regardless of standing, no record evidence demonstrates any confusion (or even claims of confusion) between the Series and any of these works.

[10] In opposing Defendants' motion to dismiss, Plaintiffs misleadingly quoted an authority claiming that Florida's dilution statute "involves a different inquiry" than Lanham Act dilution claims. MTD Opp. at 33 (quoting *Ocean Bio-Chem, Inc. v. Turner Network TV, Inc.*, 741 F. Supp. 1546, 1561 (S.D. Fla. 1990)). That authority is from 1990, when Florida's dilution statute did not parallel the Lanham Act and did not expressly exempt "noncommercial" uses. Authorities have since recognized that "the Florida Legislature amended Florida Statute section 495.151, and effective as of January 1, 2007, it now tracks the Federal Trademark Dilution Act, 15 U.S.C. § 1125." *Samson Distributing, Inc. v. Kreger*, 2007 WL 2254498, at *2 (M.D. Fla. Aug. 3, 2007).

16

Because of this restriction, dilution claims apply "only to purely commercial speech." *Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1339 (N.D. Ga. 2008). Such speech "does no more than propose a commercial transaction." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66 (1983). Thus, when a defendant uses a mark in an expressive work entitled to First Amendment protection, any dilution claim based on that work or its promotion is barred. *See Mattel*, 296 F.3d at 906; *Jackson*, --- F. Supp. 3d ----, 2020 WL 8028615, at *3 n.3 (dismissing dilution claim based on content and promotion of *Tiger King*).

As explained above, any alleged use of Plaintiffs' Mark associated with the Series is entitled to First Amendment protection. *See supra*, at 7-8. Accordingly, that use was "noncommercial." *See Jackson*, --- F. Supp. 3d ----, 2020 WL 8028615, at *3 n.3.

### C. Plaintiffs' Unjust Enrichment Claim Also Fails.

The elements of unjust enrichment under Florida law are: "(1) the plaintiff conferred a benefit upon the defendant, (2) the defendant voluntarily accepted the benefit, and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it." *Brice Building Co. v. Lee*, 2010 WL 11640032, at *2 (N.D. Fla. Apr. 13, 2010). However, because the First Amendment permits the use of "Floribama" in connection with the Series, Plaintiffs conferred no benefit on Defendants, much less a benefit inequitably retained. *See*

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

*Romantics v. Activision Pub., Inc.*, 574 F. Supp. 2d 758, 771 (E.D. Mich. 2008) (applying *Rogers* and granting summary judgment to defendants on unjust enrichment claim).

## II.   PLAINTIFFS CANNOT PROVE THE ELEMENTS OF THEIR CLAIMS.

Even without the First Amendment, Defendants are still entitled to summary judgment because no reasonable juror could find in Plaintiffs' favor on any claim.

### A. There Is No Likelihood Of Confusion.

To prove trademark infringement or unfair competition, Plaintiffs must prove, among other things, that the Series was "likely to cause consumer confusion" with their Mark. *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ.*, 830 F.3d 1242, 1255 (11th Cir. 2016) [hereinafter, "*FIU*"]. Typical trademark claims involve allegations of "forward confusion," which occurs when consumers believe the junior user's products (here, the Series) come from the senior user (here, Plaintiffs). In such a case, the plaintiff "contends that the defendant adopted a confusingly similar mark in order to free-ride on the plaintiff's goodwill and reputation." *Phelan Holdings, Inc. v. Rare Hosp. Mgmt., Inc.*, 2017 WL 1135266, at *3 (M.D. Fla. Mar. 27, 2017). By contrast, "reverse confusion" occurs when consumers believe the senior user's products come from the junior user. In a reverse confusion case, "the junior user does not seek to profit from the good will associated with the senior user's mark." *Wreal, LLC v. Amazon.com, Inc.*, 2019 WL 3890320, at *9 (S.D. Fla. July 26, 2019).

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

Rather, the junior user "saturates the market" with its trademark, overwhelming a senior user. *Id.*

Plaintiffs' claims are unambiguously premised on a forward confusion theory. The Complaint alleges that Plaintiffs' mark is "famous" and "iconic," Compl. ¶ 3; *see also id.* ¶¶ 29-37, 50-52, not only nationwide but throughout the world, *id.* ¶¶ 49, 51. The Complaint further alleges that the Series title was a "deliberate attempt to redirect viewers seeking information" about Plaintiffs, "thereby misappropriating and wrongfully reaping the benefits of the valuable goodwill and reputation of Flora-Bama." *Id.* ¶ 73; *see also id.* ¶ 89.

Plaintiffs' designated corporate representative testified repeatedly in the last fact deposition, at the close of fact discovery, that Plaintiffs believe their Mark is famous nationwide and worldwide, and that Plaintiffs' claims are based on Defendants' purported free-riding on Plaintiffs' success. Decl., Ex. 16 at 66:22-23, 82:3-10, 122:6-20, 129:8-11, 132:25-133:3, 137:3-8, 138:3-5, 139:12-140:5. Only after fact discovery closed did Plaintiffs disclose a survey expert who ostensibly tested for both forward and reverse confusion in the same "unique" survey. The Court should limit Plaintiffs to the *forward* confusion theory actually alleged in their Complaint and described in their witnesses' testimony. *See Brady v. Grendene USA, Inc.*, 2014 WL 5783771, at *5 (S.D. Cal. Nov. 6, 2014) (rejecting reverse confusion

theory where complaint alleged that defendant intended to trade on plaintiffs' reputation and goodwill).

To assess whether a likelihood of confusion exists, courts consider seven factors: (1) the strength of the plaintiff's mark; (2) the similarity of the parties' marks; (3) the similarity of the parties' goods and services; (4) the similarity of the parties' trade channels and customers; (5) the similarity of the parties' advertising media; (6) the defendant's intent; and (7) the existence and extent of actual confusion. *FIU*, 830 F.3d at 1255. The factors must be applied "holistically," but the first and seventh factors are the most important. *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1289 (11th Cir. 2018). Plaintiffs must prove that confusion is "'likely,' not merely 'possible.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 651 (11th Cir. 2007).

All seven factors favor Defendants.

### 1. *Plaintiffs' Mark Is Weak.*

The first factor considers both the "conceptual strength" and the "commercial strength" of the plaintiff's mark. *FIU*, 830 F.3d at 1258; *see* 2 McCarthy on Trademarks & Unfair Competition § 11:80 (5th ed. 2021) [hereinafter "McCarthy"].

The "conceptual strength" of a mark depends on its classification as generic, descriptive, suggestive, or arbitrary, in ascending order of strength. *FIU*, 830 F.3d at 1256-57. Generic terms are not entitled to trademark protection at all, *Custom*

<u>**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**</u>

*Mfg.*, 508 F.3d at 648 n.8, making descriptive marks the weakest class of protectable mark. Plaintiffs' mark is descriptive, because it is a geographic term describing the Flora-Bama Lounge's location on the Florida-Alabama border. *See HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1329-32 (M.D. Fla. 2003) (holding that strength factor weighed against plaintiff in case involving geographically descriptive mark); McCarthy § 14:1 ("Geographically descriptive terms are placed in the same category as terms that are descriptive of some quality or feature of goods.").

Plaintiffs' Mark is also used extensively by third parties in the region. *See FIU*, 830 F.3d at 1257 (noting that "the extent of third-party use of a mark is an essential factor in determining a mark's strength"). Alabama's Secretary of State website lists 30 businesses other than Plaintiffs' incorporating the term "Flora-Bama" (or a variation). Decl., Ex. 18. Florida's Secretary of State website lists 24 more. Decl., Ex. 19.

Further, there is no record evidence demonstrating that Plaintiffs' Mark has achieved significant commercial strength. Plaintiffs conducted no survey to measure consumer awareness of their Mark. Instead, both Plaintiffs' and Defendants' experts testified that Plaintiffs' Mark is highly unlikely to be known by more than 1-2% of the national population. Decl., Ex. 20 at 276:19-277:1; Ex. 21 at 47:14-24. Lastly, Plaintiffs' annual marketing budget of nearly $300,000 is far below the Eleventh

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

Circuit's standard to demonstrate commercial strength. *FIU*, 830 F.3d at 1259 (holding annual marketing budget of $15 million insufficient).

### 2. *The Marks Are Dissimilar.*

To assess the "similarity of marks," courts "consider the overall impression created by the marks, and do not simply compare isolated features." *FIU*, 830 F.3d at 1260. A key consideration is "the manner in which the marks are used" in the marketplace. *Id.*

A side-by-side comparison of Plaintiffs' Mark and the Series title as they are used in the marketplace shows that there is little similarity:



First, the two Marks create entirely different overall impressions. Plaintiffs' Mark is presented in undulating lettering with a Western-style font, whereas the Series title appears in sans-serif font inside a tilted rectangle, with the MTV logo at the top and "Shore" below. ViacomCBS' design is modeled on the logo for *Jersey Shore*, indicating that the Series is part of the same franchise:

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**



Second, two of the three words in the Series title—"MTV" and "Shore"—do not appear in Plaintiffs' Mark. The inclusion of a "well-known trademark" (like MTV) appearing "along with an allegedly infringing mark is a strong indication that there is no likelihood of confusion." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 727 (7th Cir. 2015); *see also Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1157 (10th Cir. 2013); *Custom Mfg.*, 508 F.3d at 652 n.10; *Wreal*, 2019 WL 3890320, at \*14. Similarly, "Shore" links the Series to the "Shore" franchise.

Third, the only similarity between Plaintiffs' Mark and the Series title is the term "Floribama." When the only common element of the marks is a descriptive term, the marks are considered dissimilar, because consumers are less likely to perceive the common element as identifying the source of goods or services. *See, e.g., Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 830 (8th Cir. 1999) (affirming summary judgment to defendant where common element was descriptive); *Pilot Corp. of Am. v. Fisher-Price, Inc.*, 501 F. Supp. 2d 292, 304-05 (D. Conn. 2007) (similar); McCarthy § 23:48 ("If the common element in the conflicting marks is

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

suggestive or descriptive of the goods or services, this lessens the likelihood of confusion.").

    *3.  The Marks Are Used In Connection With Dissimilar Services.*

"The third factor asks whether the parties' services are the kind that the public attributes to a single source." *FIU*, 830 F.3d at 1261.  Here, the answer is no. Plaintiffs operate restaurants, a bar, a marina, and a liquor store, sometimes organizing sporting events on the beach and hosting live music at the bar; Defendants collectively produce and distribute a reality television series.  These services are nothing alike, and there is no evidence that consumers are likely to perceive them as coming from the same source.

Plaintiffs claim that all parties are in the "entertainment" business, but such categorical labels carry no weight.  *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 633 (6th Cir. 2002) (goods not similar even though both existed in "broad industry of medical applications of thermology and infrared identification of heat"); *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 288 (3d Cir. 2001); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573-74 (2d Cir. 1993) (products not similar even though they "may both be generally defined as personal

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

care products"). It is undisputed that Plaintiffs' "entertainment" services have never included a television series.[11]

### 4. The Parties' Trade Channels And Customers Are Dissimilar.

"The fourth factor takes into consideration where, how, and to whom the parties' products are sold." *FIU*, 830 F.3d at 1261. Here, there is no overlap in the parties' trade channels. Plaintiffs provide their services in physical establishments all in close proximity to the Florida-Alabama border, whereas the Series is available on cable television and through various streaming and download-to-own platforms.

The parties' customer bases also differ. Plaintiffs' is local and the Series' is national. *Compare* Decl, Ex. 22 (Plaintiffs' Facebook data showing a predominantly local following) *with* Decl., Ex. 23 at VIA00017395 (ViacomCBS' Nielsen data showing predominantly national audience). Further, 54% of Plaintiffs' Facebook followers are over 45, Decl., Ex. 22; Ex. 24 at 113:18-115:2, whereas (in 2020) only 7.7% of the Series' Facebook audience was, Decl., Ex. 7 at 285:16-286:20; Ex. 25 at 2. Plaintiffs' survey confirmed that very few people who are familiar with the Flora-Bama Establishments have watched the Series (only 13%), and even fewer have watched more than once or twice (only 6%). Decl., Ex. 26 at 44.

---

[11] The only serious discussions Plaintiffs ever had about creating a television show involved CMT (another network owned by ViacomCBS), and ended a year before the Series began to air. Decl., Ex. 6 at 267:7-24. There is no evidence that Plaintiffs made any attempt to create a television series since that time.

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

### 5. *The Parties Use Different Advertising Media.*

This factor considers the parties' advertising media and "the audiences they reach." *FIU*, 830 F.3d at 1262. There is no overlap. Plaintiffs do not spend any of their marketing budget on national outlets. Decl., Ex. 24 at 160:16-161:8. Instead, they advertise primarily in local print publications for seasonal tourists, on local radio stations, and, since 2018, on one local television channel. Decl., Ex. 27 at 5-7; Ex. 28 at 1, 7, 29-30; Ex. 29 at 124:12-20. There is no evidence that ViacomCBS ever advertised the Series in any publication or on any channel used by Plaintiffs. Decl., Ex. 30 at 6-8.

While both Plaintiffs and ViacomCBS use Google Ads and social media advertising, the "mere common use of the internet and social media" is not probative of confusion. *Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*, 2018 WL 7825183, at *14 (S.D. Fla. June 13, 2018). Instead, Plaintiffs must show that the parties' advertisements on those platforms likely reached similar audiences. *See FIU*, 830 F.3d at 1263. Here, Plaintiffs and ViacomCBS purchase entirely different "keywords" on Google Ads and therefore reach entirely different audiences. Plaintiffs' keywords target locals searching for bars and restaurants: many contain the word "bar" or "restaurant," and many contain the words "near me" or the names of towns near the Flora-Bama Establishments. Decl., Ex. 24 at 189:3-191:11; Ex. 31 at 1-3 (Column B). By contrast, ViacomCBS' keywords are targeted at reality

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

television fans: they include the Series title and cast member names, among others. Decl., Ex. 32 at 2.

### 6.   *There Is No Evidence Of Bad Faith.*

The sixth factor asks whether Defendants copied Plaintiffs' Mark "with intent to confuse consumers." *Yellowfin Yachts*, 898 F.3d at 1293. No reasonable jury could so find here. The record contains uniform, unrebutted testimony that ViacomCBS executives chose a Series title that would tie into the "Shore" franchise and represent the subculture presented. *See supra*, at 10-11. Nothing in the content of, or marketing materials for, the Series references Plaintiffs or suggests the Series is affiliated with them. *See supra*, at 12.

Further, Plaintiffs have identified no credible motive for Defendants to trade on their goodwill. ViacomCBS' strategy in promoting the Series was to leverage two existing brands—"MTV" and the "*Shore*" franchise. ViacomCBS had no reason to seek to leverage any goodwill associated with Plaintiffs. *See Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010) (no improper motive shown where plaintiff's mark had no secondary meaning in defendant's market and where parties did not compete).

### 7.   *There Is No Evidence Of Actual Confusion.*

"If consumers have been exposed to two allegedly similar trademarks in the marketplace for an adequate period of time and no actual confusion is detected either

27
<u>**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**</u>

by survey or in actual reported instances of confusion, that can be [a] powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019). That is the case here: despite the Flora-Bama Establishments and the Series having coexisted for over three years, there is no evidence of actual confusion.

First, the survey conducted by Defendants' expert, Dr. Itamar Simonson, showed *0% confusion*, conclusively demonstrating the lack of actual confusion. Decl., Ex. 33 ¶ 15. That survey used standard survey procedures, including the widely utilized "Eveready" format, which has been accepted in dozens of court decisions. *See* McCarthy § 32:174.

By contrast, Plaintiffs' expert, David Franklyn, conducted a confusion survey that violates basic principles of survey design. As explained in the accompanying motion to exclude Franklyn's testimony, his survey is inadmissible. Even if not excluded, it is entitled to only minimal weight. Franklyn used an unprecedented survey format that purported to test for both forward and reverse confusion simultaneously, but in fact did not accurately test for either. Instead, the format artificially maximized confusion by making the metric of confusion the number of answers that mentioned Plaintiffs, while at the same time excluding respondents who were not aware of Plaintiffs (a methodology courts have recognized as "biased," *see*

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

*Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 512 F. Supp. 2d 1178, 1182 (D. Kan. 2007)), and "priming" the remaining respondents to mention Plaintiffs by asking them about the Flora-Bama Lounge in an initial screening question. Franklyn's survey also lacked other fundamental indicia of reliability: The stimulus for the control group was entirely unlike the stimulus used in the test group, and the coding of responses was subjective.

Moreover, there is no other evidence of actual confusion sufficient to create a triable issue of fact. Courts have rejected every type of purported evidence of actual confusion that Plaintiffs have produced:

| Plaintiffs' Purported Evidence | Prior Judicial Findings |
|---|---|
| Plaintiffs' employees claim they were asked about the relationship between Plaintiffs and the Series. Decl., Ex. 34 at 10-13. | Because no employee has submitted testimony about this, these anecdotes constitute inadmissible hearsay. *See Decorative Ctr. of Hous., L.P. v. Direct Response Publ'ns, Inc.*, 264 F. Supp. 2d 535, 554-55 (S.D. Tex. 2003). |
| Plaintiffs received email and text messages from friends and acquaintances. *E.g.,* Decl., Exs. 35, 36. | The Eleventh Circuit has disregarded evidence of inquiries by friends of a plaintiff. *See Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176, 1185 (11th Cir. 1985); *see also Implant Innovations, Inc. v. Debbie LLC,* 2007 WL 9701902, at *10 (S.D. Fla. May 2, 2007) (noting that inquiries about the relationship between a mark owner and a defendant "are arguably premised upon a *lack* of confusion"), *adopted,* |

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

| | |
|---|---|
| | 2007 WL 9701982 (S.D. Fla. June 21, 2007). |
| Social media posts misspelled the Series as "florabama" or "florabama shore." *E.g.*, Decl., Exs. 37, 38. | "Misspellings are not evidence of actual confusion." *Wreal LLC v. Amazon.com, Inc.*, 2015 WL 12550932, at *14 (S.D. Fla. Feb. 3, 2015), *adopted*, 2015 WL 12550912 (S.D. Fla. Aug. 31, 2015), *aff'd*, 840 F.3d 1244 (11th Cir. 2016). |
| Social media posts mentioned Plaintiffs and the Series together. *E.g.*, Decl., Exs. 39, 40. | Without testimony from the posters, it is impossible to tell whether they were "actually confused, merely speculating, or attempting to be humorous." *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 505-06 (5th Cir. 1979); *see also Wreal*, 2015 WL 12550932, at *14 (rejecting tweet as evidence of actual confusion where author did not testify). |
| Plaintiffs received misdirected emails (and one misdirected letter) intended for Defendants. *E.g.*, Decl., Exs. 41, 42, 43. | Misdirected communications are not evidence of actual confusion. *See Uber Promotions, Inc. v. Uber Techs., Inc.*, 162 F. Supp. 3d 1253, 1271-72 (N.D. Fla. 2016). |

Importantly, the social media and misdirected email evidence came from people who may not even be part of either party's customer base. "[C]onfusion of individuals casually acquainted with a business is worthy of little weight." *FIU*, 830 F.3d at 1264. There is no evidence that the authors of these materials have anything more than a casual acquaintance with either Plaintiffs or the Series.

*    *    *

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

Based on a holistic consideration of the relevant factors, no reasonable juror could find a likelihood of confusion.

**B. Plaintiffs' Mark Is Not Famous In Florida.**

Defendants are also entitled to summary judgment on Plaintiffs' dilution claim because Plaintiffs cannot show that their mark is famous within Florida. Only the "owner of a mark that is famous in this state" has a cause of action for dilution. Fla. Stat. § 495.151(1). Fame is thus a prerequisite to a dilution claim. *MPS Ent., LLC v. Abercrombie & Fitch Stores, Inc.*, 2013 WL 3288039, at *15 (S.D. Fla. June 28, 2013).

The bar for fame is high. Dilution "is an extraordinary remedy reserved for only a small class of elite marks." *Provide Com., Inc. v. Preferred Com., Inc.*, 2008 WL 926777, at *4 (S.D. Fla. Apr. 4, 2008). Accordingly, plaintiffs alleging dilution claims must prove their mark "is practically a household name of the likes of such giants of branding as Exxon, Kodak, and Coca Cola." *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2019 WL 913374, at *6 (M.D. Fla. Feb. 25, 2019).

Plaintiffs must make this showing with regard to the state of Florida *as a whole*, not merely a portion of the state. *See Holding Co. of the Vills., Inc. v. Little John's Movers & Storage, Inc.*, 2017 WL 6319549, at *5 (M.D. Fla. Dec. 11, 2017) (dismissing dilution claim where company had worked in central Florida but did "not allege that it has any ties elsewhere in the state"). Further, "extensive third

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

party use" of a mark counsels against a finding that it is famous. *Michael Caruso & Co. v. Estefan Enters., Inc.*, 994 F. Supp. 1454, 1463 (S.D. Fla.), *aff'd* 166 F.3d 353 (11th Cir. 1998).

Plaintiffs cannot meet this standard. Plaintiffs use their mark in connection with the Flora-Bama Establishments, all of which are located in close proximity to one another near the beach by the Florida-Alabama state line. Compl. ¶¶ 38, 40. Unsurprisingly, Plaintiffs' advertising efforts are largely focused on that specific local area. *See supra*, at 26-27. Further, dozens of third parties have made use of marks identical or similar to Plaintiffs' within the state of Florida. *See supra*, at 21.

*None* of Plaintiffs' experts opined that Plaintiffs' mark is famous in Florida. Decl., Ex. 20 at 276:8-10, 303:22-305:4; Ex. 44 at 152:18-20; Ex. 45 at 75:2-13; Ex. 46 at 101:7-22. Indeed, one of Plaintiffs' marketing experts acknowledged that Plaintiffs' mark is "not a household brand, household name." Decl., Ex. 44 at 152:18-20.

Absent evidence of fame, Plaintiffs' dilution claim is barred. Indeed, courts have granted defendants summary judgment where there was far more to suggest fame than there is here. *See, e.g., Provide Com.*, 2008 WL 926777, at *5 (plaintiffs' "extensive national advertising efforts, its large customer base and its profits" were "simply not enough to meet the rigorous dilution standard" for fame).

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

**C. Defendants Were Not Unjustly Enriched.**

An unjust enrichment claim is not viable when premised on the unauthorized use of a trademark. Unjust enrichment requires the plaintiff to prove that it conferred a benefit on the defendant. *See supra*, at 17. However, no benefit is "conferred" when a defendant's use of a mark is unauthorized. *See Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 382 (E.D. Pa. 2020) (dismissing unjust enrichment claim at pleading stage). Here, Plaintiffs' unjust enrichment claim is premised exclusively on alleged "misuse" or "misappropriate[ion]" of the Mark. Compl. ¶ 136.

In addition, the flaws in Plaintiffs' other claims are also fatal to Plaintiffs' unjust enrichment claim. Unjust enrichment requires the plaintiff to prove inequity in the absence of relief. *See supra*, at 17. As explained above, Defendants have not misused or misappropriated Plaintiffs' Mark. Thus, there can be no inequity associated with any use of "Floribama."

**III.   495 PRODUCTIONS IS NOT DIRECTLY LIABLE.**

495 Productions is independently entitled to summary judgment. Plaintiffs pled their claims collectively as to all Defendants, without distinguishing between the roles played by ViacomCBS and 495 Productions. *See, e.g.*, Compl. ¶¶ 89, 97, 104, 111, 116, 126, 133, 137. Plaintiffs thus claim that all Defendants are directly liable for the infringement alleged.

<u>**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**</u>

Direct trademark liability is limited only to those "who actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982); *see also Mini Maid Services Co. v. Maid Brigade Systems, Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) (direct trademark liability limited to "those entities that actually perform the acts of infringement"). ViacomCBS—not 495 Productions—had "final say" on the Series title. Decl., Ex. 8 at 39:6-12; *see also* Decl., Ex. 7 at 51:10-52:3. The head of 495 Productions testified that she found out what the Series would be named only when ViacomCBS told her. Decl., Ex. 47 at 46:9-47:1. Thus, to the extent any infringement was possible, only ViacomCBS "actually mislabel[ed]" the Series. *Inwood Labs.*, 456 U.S. at 853.

## CONCLUSION

Defendants are entitled to summary judgment.

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

Date:   April 26, 2021          By:   /s/ Susan J. Kohlmann
                                      Susan J. Kohlmann (*Pro Hac Vice*)
                                      Alison I. Stein (*Pro Hac Vice*)
                                      Rémi J.D. Jaffré (*Pro Hac Vice*)
                                      Jacob L. Tracer (*Pro Hac Vice*)
                                      JENNER & BLOCK LLP
                                      919 Third Avenue, 38th Floor
                                      New York, NY 10022
                                      Tel:  (212) 891-1600
                                      Fax: (212) 891-1699
                                      skohlmann@jenner.com
                                      astein@jenner.com
                                      rjaffre@jenner.com
                                      jtracer@jenner.com

                                      Robert W. Pass (FL Bar #183169)
                                      CARLTON FIELDS, P.A.
                                      215 South Monroe Street, Suite 500
                                      Tallahassee, FL 32301
                                      Tel:  (850) 224-1585
                                      Fax: (850) 222-0398
                                      rpass@carltonfields.com

                                      *Counsel for Defendants*

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1</u>

Pursuant to N.D. Fla. Local Rule 7.1, I hereby certify that this Memorandum of Law is in compliance with the Court's word limit.   According to the word processing program used to prepare this memorandum, the total number of words in the memorandum, inclusive of headings, footnotes, and quotations, and exclusive of the case style, signature block, and any certificate of service is 7,990.

Date:   April 26, 2021                     By:     /s/ Susan J. Kohlmann
                                                         Susan J. Kohlmann (*Pro Hac Vice*)
                                                         JENNER & BLOCK LLP
                                                         919 Third Avenue, 38th Floor
                                                         New York, NY 10022
                                                         Tel:  (212) 891-1600
                                                         Fax: (212) 891-1699
                                                         skohlmann@jenner.com

**<u>UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL</u>**

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2021, I filed the foregoing provisionally under seal and served electronic copies to all counsel of record pursuant to an agreement among the parties.

Date:   April 26, 2021

By:   /s/ Susan J. Kohlmann
Susan J. Kohlmann (*Pro Hac Vice*)
JENNER & BLOCK LLP
919 Third Avenue, 38th Floor
New York, NY 10022
Tel:  (212) 891-1600
Fax: (212) 891-1699
skohlmann@jenner.com

**UNREDACTED VERSION FILED PROVISIONALLY UNDER SEAL**