UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**MGFB PROPERTIES, INC.,
FLORA-BAMA MANAGEMENT,
LLC, and
FLORA-BAMA OLD S.A.L.T.S.,
INC.,**

        Plaintiffs,

           *v.*

**VIACOMCBS INC.**, *et al.*,

        Defendants.

Case No. 5:19-cv-257-RH/MJF

## PLAINTIFFS' MOTION TO SET ASIDE THE JUDGMENT
## UNDER RULE 60(b)

The Supreme Court's decision in *Jack Daniel's Properties, Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023) marked a major change in the interplay between plaintiffs' federal trademark claims and defendants' First Amendment protections. Had the *Jack Daniel's* decision been issued prior to this Court's granting summary judgment to the Defendants in this action, the Court would have very likely denied summary judgment to Defendants and permitted this case to proceed to trial. Plaintiffs now ask the Court to set aside the judgment and reopen this case.

The Supreme Court ruled in *Jack Daniel's* as follows:

> We hold only that [the threshold First Amendment test derived
> from *Rogers v. Grimaldi*] is not appropriate when the accused

1

> infringer has used a trademark to designate the source of its own
> goods—in other words, has used a trademark as a trademark.
> That kind of use falls within the heartland of trademark law, and
> does not receive special First Amendment protection.

599 U.S. at 145.

The record is replete with evidence that Defendants used the "Floribama Shore" mark as a trademark to designate Defendants, and MTV, as the source of the "MTV Floribama Shore" TV show. Therefore, under *Jack Daniel's*, Defendants are no longer entitled to seek First Amendment protection against Plaintiffs' trademark infringement claims.

When it granted summary judgment to the Defendants, this Court made clear that the decision was based on applying the *Rogers v. Grimaldi* test. The Court held: Plaintiffs' "showing would be sufficient to withstand summary judgment, were it not for the necessity to balance the showing against First Amendment interests." (ECF No. 188, Order at 19.)

But the *Rogers* test no longer controls when the defendant's infringing use is done as a source identifier for goods or services—which is the case here.

Fed. R. Civ. P. 60 permits a court, in extraordinary circumstances, to set aside past judgments. The Supreme Court's change in the law is such a circumstance. Whether analyzed under Rule 60(b)(5) or 60(b)(6), there are good grounds for this

Court to vacate the judgment in this matter. Plaintiffs ask the Court to do so, and set this case back on the path to trial.

## I.   The Supreme Court's decision was a major change in the governing law.

The Supreme Court's decision in *Jack Daniel's* marked a significant change in the law, substantially narrowing the circumstances when a defendant could invoke a First Amendment defense based on *Rogers* to avoid being otherwise liable for trademark infringement under the Lanham Act. Indeed, as one commentator recently observed, "[b]ecause titles [of defendants' works accused of infringement] could serve as source identifiers, *Jack Daniel's* calls into question the scope of their protection—if any—under *Rogers*" and noted that "titles have not been receiving protection [under *Rogers*] after *Jack Daniel's*." Ex. 1, C. Tucker, *Creative Expression vs. the Lanham Act: Six Months of Cases after Jack Daniel's,* The Intellectual Property Strategist ( Jan. 19, 2024), available at https://www.law.com/2024/01/19/creative-expression-vs-the-lanham-act-six-months-of-cases-after-jack-daniels/.

The *Jack Daniel's* case involved the well-known Tennessee distiller Jack Daniel's as plaintiff against the defendant, VIP Products, which made and sold a line of dog toys called "Silly Squeakers." 599 U.S. at 148–49. The toys were made to look like, and parody, several adult beverages, including Jack Daniel's. Jack Daniel's objected VIP Product's use of an allegedly infringing trademark, "Bad

3

Spaniels," on a dog toy resembling a Jack Daniel's bottle. VIP Products refused to

stop selling the dog toy, but brought a declaratory judgment action claiming non-

infringement. Jack Daniel's counterclaimed under the Lanham Act for trademark

infringement. *Id*. at 150–51.

VIP Products moved for summary judgment and raised a First Amendment

Defense under *Rogers*:

> VIP argued that Jack Daniel's infringement claim failed under a
> threshold test derived from the First Amendment to protect
> "expressive works"—like (VIP said) the Bad Spaniels toy. When
> those works are involved, VIP contended, the so-called *Rogers* test
> requires dismissal of an infringement claim at the outset unless
> the complainant can show one of two things: that the challenged
> use of a mark "has no artistic relevance to the underlying work"
> or that it "explicitly misleads as to the source or the content of
> the work." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (C.A.2 1989)
> (NEWMAN, J.). Because Jack Daniel's could make neither
> showing, VIP argued, the likelihood-of-confusion issue became
> irrelevant.

599 U.S. at 151.

The Court considered as its "first and more substantial question" whether Jack

Daniel's "had to satisfy the *Rogers* threshold test before the case could proceed to

the Lanham Act's likelihood-of-confusion inquiry." *Id*. at 152–53. While the parties

addressed that issue in the "broadest possible way, either attacking or defending

*Rogers* in all its possible applications," the Court held "[w]ithout deciding whether

*Rogers* has merit in other contexts . . . that [*Rogers*] does not [have merit] when an

alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own goods." *Id*. at 153. While noting that VIP Products had used the marks to parody or make fun of Jack Daniel's, the Court held that because VIP Products also used the Bad Spaniels mark as a trademark to designate the source of its product, "the infringement claim here rises or falls on likelihood of confusion" and the *Rogers*-based First Amendment defense "does not apply" despite the expressive aspects of the VIP's product. *Id*.

The Supreme Court noted with approval those decisions in which courts have applied the *Rogers* test where "a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Id*. at 154:

- Thus, the Ninth Circuit applied the *Rogers* test in the "Barbie Girl" song case, *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), because "the band's use of the Barbie name was not as a source identifier: The use did not speak to the song's origin." 599 U.S. at 154 (punctuation omitted).

- The Eleventh Circuit dismissed the Alabama football uniform painting case after the artist used the trademarked uniforms "solely to 'memorialize' a notable event." *Id*. (citing *Univ. of Ala. Bd. Of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1279 (11th Cir. 2012)).

- And a New York court dismissed a claim regarding a character's use of the "Louis Vuitton" trademark in the movie *The Hangover: Part II*, because "the film was not using the Louis Vuitton mark as its 'own identifying trademark.'" 599 U.S. at 154 (citing *Louis Vuitton Malletier S. A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012)).

The Supreme Court went on to note that "[t]he same courts, though, routinely conduct likelihood-of-confusion analysis, without mentioning Rogers, when trademarks are used as trademarks—i.e., to designate source." 599 U.S. at 155 (emphasis added). So in cases where the defendant was committing trademark infringement by adopting its own mark and using it "at least in part for source identification" as a trademark, the *Rogers* test did not apply. *Id.* (discussing *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812–13 (2d Cir. 1999) (use of a parody logo by a mechanic was "trademark use," because it "promotes his repair and parts business") and *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 412 (S.D.N.Y 2002) (use of a parodic dog toy named Tommy Holedigger was used at least in part as source identification) (emphasis added)).

Further, the Supreme Court explained that whatever else *Rogers*' merit may be—an issue on which it took no position—"it has always been a cabined doctrine" that should have "applied only to cases involving 'non-trademark uses'" and "not insulated from ordinary trademark scrutiny the use of trademarks as trademarks 'to identify or brand a defendant's goods or services.'" *Id.* at 155–56. Indeed, the Court noted that "few cases would even get to the likelihood-of-confusion inquiry if all expressive content triggered the *Rogers* filter, [thereby erroneously making] the *Rogers* exception . . . the general rule, in conflict with courts' longstanding view of trademark law." *Id.* at 158.

6

Accordingly, the Court held that "*Rogers* does not apply when the challenged use of a mark is as a mark." *Id*. at 163. In those situations, "[w]hen a mark is used as a mark (except, potentially, in rare situations), the likelihood-of-confusion inquiry does enough work to account for the interest in free expression." *Id*. at 159. When defendants engage in those uses, "the First Amendment does not demand a threshold inquiry like the *Rogers* test." *Id*.

## II. This Court's summary judgment order turned on the *Rogers*-based First Amendment defense that no longer applies.

This new pronouncement by the Supreme Court is significant because it calls into serious question the rationale on which this Court relied to grant summary judgment for the Defendants. The intervening change in the law resulting from the *Jack Daniel's* decision and its progeny is sufficient to require vacatur of this Court's judgment dismissing the complaint.

### A. Defendants used "Floribama Shore" and "MTV Floribama Shore" as trademarks and source identifiers.

Plaintiffs hold a valid, registered and incontestable trademark for "Flora-Bama," which they have used in connection with their Flora-Bama branded entertainment establishments and related goods and services for decades. (MSJ Order at 1, 2, 16.) Defendants adopted "MTV Floribama Shore" and its more common usage of "Floribama Shore" as the title of their TV show that they developed, produced and distributed. *Id*. at 2, 4–5.

7

Under the *Jack Daniel's* decision and its progeny, there can be little dispute that *MTV Floribama Shore* and *Floribama Shore* are not only the titles of an expressive work, but have both been used by Defendants *as a mark*—the scenario that the Supreme Court and other courts have now made clear is no longer governed by *Rogers*, but rather the traditional likelihood of confusion factors.

The record reveals Defendants' use of their TV show titles as a trademark. Plaintiffs point to several related reasons and pieces of evidence:

**1.** The Court found that "most potential viewers in the national audience surely understand the title *MTV Floribama Shore* to denote another show in the *Jersey Shore* line." (MSJ Order at 20.) That connection to the *Jersey Shore* franchise signifies Defendants' use of their title as a trademark to denote and identify the Defendants as the source of both *Jersey Shore* and *Floribama Shore* TV shows.

According to Viacom's 30(b)(6) representative and executive producer of the MTV Floribama Shore TV show, Jackie French: "The whole point of Floribama Shore [show] was to imitate [the] Jersey Shore [show]." (Ex. 2, MSJ Opp. Ex. 4 at 132:4–6.)[1]

**2.** *Jersey Shore*, from which the *Floribama Shore* show is derived, is itself a registered trademark by Viacom used to denote the source of a TV show. (Ex. 3,

---

[1] For convenience, only those pages from Plaintiffs' summary judgment opposition papers that are cited here are attached here.

USPTO Registrations Nos. 4224371, '372 (registrations cover "entertainment services in the nature of continuing program series . . . provided through cable television")).

    **3.**   Defendants intentionally included "MTV" in "MTV Floribama Shore" as a trademark to denote and identify MTV (a Viacom network) as the source of the TV show. *MTV* is a registered trademark both in standard characters (MTV) and as a design mark  ▬▬. (Ex. 4, USPTO Reg. No. 1955606 for "television and entertainment services," Nos. 4150599 & 3939707, for "entertainment content featuring . . . television programs" and "television broadcasting services".)

    **4.**   The 30(b)(6) representative for the two 495 Defendants admitted under oath that they consider "MTV Floribama Shore to be a trademark." (Ex. 5, MSJ Opp. Ex. 55, Tappon Dep. 70:5–10.)

    **5.**   In the closing credits of every episode of *MTV Floribama Shore*, Defendants explicitly represent that "MTV," "MTV Floribama Shore" and all related titles and logos are trademarks of Viacom. Indeed, Viacom's 30(b)(6) representative admitted that it considers "Floribama" and "Floribama Shore" to be "related titles" to "MTV Floribama Shore." (Ex. 2, French Dep. 34:24–37:3.)

    **6.**   Defendants used "Floribama Shore" as a term in social media to promote the TV show—as a source identifier or trademark for the show. (Ex. 2, French Dep. 41:3–42:5, 91:7-13.)

**7.**   Defendants admitted that they would object to a television show with a name similar to *MTV Floribama Shore*, because in their view, it could cause confusion among TV viewers as to the source of the show and whether it was affiliated with Defendants and their show:

- Tappon testified that if NBC put out a TV show called "NBC Floribama Shore," Viacom or 495 would object because another TV show with a similar name would be confusingly similar to Defendants' "MTV Floribama Shore." (Ex. 5, Tappon Dep. 71:22–72:9.)

- French testified that if there were a music TV show with the name "Floribama" in the title, she would question whether that show should be aired because people might think there's some connection between that show and MTV Floribama Shore. (Ex. 6, MSJ Opp. Ex. 1, French Dep. 74:13–75:14.)

- French also testified that if Netflix put out a show without MTV's authorization entitled "Florbama Shore," Viacom would likely object because "there might be confusion as to whether Netflix's show would be associated . . . with Viacom's TV show Floribama Shore." (Ex. 2, French Dep. 42:12–43:14.)

Obviously, if Defendants were using "MTV Floribama Shore" solely in an *non-trademark* expressive manner and not at least *in part* to designate Viacom, MTV, and 495 as the source of the show, there would have been no reason to: (a) use the "MTV" registered trademark in the title; (b) put consumers on notice that "MTV Floribama Shore" and all related titles "are trademarks of Viacom"; (c) spend time and effort promoting the "Floribama Shore" brand online; (d) be

concerned that confusion might result from another TV show titled something like "Florbama Shore."

The fact is, the Defendants *did* use "Florabama Shore" as a source identifier, and therefore, under the new *Jack Daniel's* case, they no longer are entitled to a *Rogers v. Grimaldi*-based First Amendment defense.

**B. Under *Jack Daniel's* and its progeny, the *Rogers*-based First Amendment defense is inapplicable and traditional likelihood of confusion factors govern.**

As noted, the Supreme Court made clear that a defendant's use of a mark as a trademark means that the *Rogers*-based First Amendment defense is inapplicable. 599 U.S. at 159. Indeed, the Court has made clear that just because the "use of a mark has other expressive content—*i.e.*., because it conveys some message on top of source," like the "Floribama Shore" mark, the *Rogers* test still does not apply. *Id.* at 157. This is where the Supreme Court "most dramatically part[s] ways with the Ninth Circuit, which thought that because Bad Spaniels 'communicates a humorous message,' it is automatically entitled to *Rogers'* protection. On that view, *Rogers* might take over much of the world." *Id.* at 158 (citation omitted).

Indeed, the Supreme Court explicitly rejected the applicability of *Rogers* to the name of a band—analogous to the title of a TV show—that " 'that not only identifies the band but expresses a view about social issues.' " *Id.* (quoting *Matal v. Tam*, 582 U.S. 218, 245 (2017) (band named "The Slants")). Similarly, even though

VIP was engaged in parodic expression making fun of the Jack Daniel's mark through its Bad Spaniels dog toy, such expression "does not justify use of the *Rogers* test," even if the expression may "properly figure in assessing likelihood of confusion" under the "standard trademark analysis." *Id*. at 161.

New decisions applying *Jack Daniel's*—including from both the Second and Ninth Circuits—have made held that even where defendant's use may involve certain expression, if the accused mark and/or title of creative work is also being used at least in part as a trademark, then a *Rogers*-based First Amendment defense is inapplicable, and the traditional likelihood of confusion factors apply.

For example, in *Vans, Inc. v. MCSHF Prod. Studio, Inc.,* 88 F.4th 125 (2d Cir. 2023), the defendant, an art collective, created and sold an "exceedingly wavy" version of plaintiff Vans's "Old Skool" shoe. *Id*. at 128. The defendant argued that its knockoff shoe was a parody that mocked and commented on the "consumerism inherent in sneakerhead culture." *Id*. But, applying *Jack Daniel's*, the Second Circuit (which had originally issued *Rogers*) held that, "even if an alleged infringer used another's trademarks for an expressive purpose, special First Amendment protections did not apply if the trademarks were used for source identification." *Id*. Accordingly, "no special First Amendment protections apply," and the district court was right to enter a preliminary injunction that was based on the traditional likelihood of confusion factors alone. *Id*. at 128, 133–34.

While *Vans* did not involve use of the allegedly infringing mark as the title of an expressive work—like Defendants' TV show title—several other post-*Jack Daniel's* cases have addressed that scenario and found each of the titles of expressive works *were* used marks and therefore, the *Rogers*-based First Amendment defense had no applicability. *E.g., Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024); *Activision Publ'g, Inc. v. Warzone.com LLC*, Ex. 7 (unreported, full discussion below); *HomeVestors of Am., Inc. v. Warner Bros. Discovery*, No. CV 22-1583-RGA, 2023 WL 6880341, at \*5 (D. Del. Oct. 18, 2023), *report and recommendation adopted*, 2023 WL 8826729 (D. Del. Dec. 21, 2023).

In *Punchbowl Inc. v. AJ Press, LLC*, the plaintiff used the "Punchbowl" trademark as the brand name for its technology company that developed online invitations and greeting cards, whereas defendant used "Punchbowl News" as the title of its news publication focusing on American government and politics. (In Washington D.C., "Punchbowl" is the Secret Service nickname for the Capitol.) *Punchbowl Inc.*, 60 F.4th at 1025–26. Thus, like Defendants here, the *Punchbowl* defendant used the mark at issue to tie the theme of its expressive work to a "geographic location." *Id.* at 1026. The Ninth Circuit initially affirmed summary judgment based on the *Rogers* test because the defendant's publication "constituted protected expression and was not explicitly misleading as to its source." *Id.* at 1026.

However, the Ninth Circuit stayed its own mandate in light of *Jack Daniel's* and then ultimately withdrew its opinion and issued a new decision, which rejected any applicability of a *Rogers*-based First Amendment defense, vacated the lower's court's dismissal, and remanded for application of the traditional likelihood of confusion factors. *Id.* at 1029–32. The Ninth Circuit further held that: (a) *Jack Daniel's* "altered the law that governed" when it made it prior ruling; (b) regardless of its expressive content, defendant used "Punchbowl" as a trademark to identify its news products; (c) it was irrelevant that defendant did not use "Punchbowl" as parody or refer to plaintiff; and (d) media defendants do not warrant a different standard. *Id.* at 1031–32.

In *Activision Publ'g, Inc. v. Warzone.com LLC*, the plaintiff sued for declaratory relief that its use of "Warzone" and "Call of Duty Warzone" as the titles of a video game did not infringe Defendant's video game title "Warzone." *Activision Publ'g, Inc. v. Warzone.com LLC*, 621 F. Supp. 3d 1090 (C.D. Cal. 2022). Defendant counterclaimed for trademark infringement. *Id.* Initially, the district court dismissed Defendant's infringement counterclaims due to a *Rogers*-based First Amendment defense. *Id.* Following the *Jack Daniel's* decision, however, the Ninth Circuit remanded the matter back to trial court for further proceedings consistent with *Jack Daniel's*. No. 22-55831, 2023 WL 7118756 (9th Cir. Oct. 25, 2023).

Just a few weeks ago, the district court applied *Jack Daniel's* and denied the motion to dismiss, ruling that the "*Rogers* test does not apply because Plaintiff is using 'WARZONE' to designate itself as the source of its game . . . —in other words, Plaintiff is using 'WARZONE' as a trademark." Ex. 7, *Activision*, No. 2:21-cv-03073 at 6-8 (C.D. Cal. Apr. 11, 2024).[2]

In *HomeVestors of Am., Inc. v. Warner Bros. Discovery*, dueling TV show titles both contained the term "Ugliest House." 2023 WL 8826729, at *1. The court rejected defendant's argument that use of a mark in a title of a TV show or for an expressive work is somehow "inherently not source identifying" and therefore still subject to the *Rogers* test. *Id.* The court also rejected the argument that just because defendant's use of its TV show title may have had an expressive element, *Jack Daniel's* made clear that "a mark might serve multiple functions (i.e., both expressive and source-identifying uses) at the same time" and as a result, should not warrant the *Rogers* test. *See also Davis v. Amazon.com, Inc.*, No. 2:21-cv-02090-JVS, 2023 WL 8113299, *5 (C.D. Cal. Nov. 2, 2023) ("While a source-identifying film title may have an expressive aspect, it may no longer seek shelter under *Rogers* from the Lanham Act likelihood-of-confusion test following *Jack Daniel's*"; dismissing the case based solely on the traditional likelihood of confusion factors); *MGA Entertainment Inc. v. Harris*, No. CV20-11548, 2023 WL 6194387 (C.D. Cal.

---

[2] The decision is not yet on Westlaw.

Sept. 15, 2023) (where the court, following *Jack Daniel's*, vacated the judgment based on a *Rogers*-based First Amendment defense and granted a new trial where defendant's use of the mark had expressive elements but also constituted use as a mark).

Defendants here should take no comfort in the Eleventh Circuit's ruling in this case, affirming summary judgment, because the Eleventh Circuit specifically held that its decision was based on the *Rogers* test, and that justified affirmance. *MGFB Properties, Inc. v. Viacom Inc.,* 54 F. 4th 670 (11th Cir. 2022). The Eleventh Circuit's decision is no longer good law.

Also, it is noteworthy that the Eleventh Circuit observed that "Defendants added 'MTV' [to the Floribama title] to tie the series to the network and 'Shore' to tie the series to the *Shore* franchise." *Id.* at 675. This is a finding that the "MTV Floribama Shore" title is associated with the source—MTV, a trademarked name—and the *Jersey Shore* franchise. Under *Jack Daniel's*, that takes "Floribama Shore" out of *Rogers* land.

### C. Applying *Jack Daniel's* and its progeny here, the *Rogers*-based First Amendment defense has no applicability and under traditional likelihood of confusion factors, the Court has already ruled summary judgment should be denied.

Based on *Jack Daniel's* and its progeny described above, the law is now clear that—no matter whatever expressive elements may be present in "MTV Floribama Shore—that mark was also clearly used as a trademark to denote and identify the

Defendants as the source of the TV show. As a result, Defendants' *Rogers*-based First Amendment defense is inapplicable as a matter of law to this case and Plaintiffs deserve a trial on their claims.

When granting summary judgment, the Court found that, as to the *Rogers*-based First Amendment defense, "[t]he issue is close and not squarely controlled by prior decisions." (ECF No. 188, MSJ Order at 2.) The Court held that "[t]he plaintiffs' showing" on a likelihood of confusion between the two marks, "while not strong, would be sufficient to withstand summary judgment in an ordinary case"—a case where *Rogers* was not potentially at issue. *Id.* at 6. But the Court felt that the presence of Defendants' artistic expression "in the mix" was sufficient to tip the balance in favor of summary judgment. *Id.* at 6.

Again, the Court specifically ruled "the showing [by plaintiffs] would be sufficient to withstand summary judgment, were it not for the necessity to balance the showing against First Amendment interests." *Id.* at 19. That necessity is no longer present.

In its opinion, the Court recounted a summary of *Rogers*, finding that the case "establishes a two-part test. In cases governed by the test, the senior user can prevail only if the junior use (1) has no artistic relevance to the underlying work or (2) explicitly misleads as to the source or content of the work." *Id.* at 7. The Court

discussed several examples of how the *Rogers* test has been elaborated on and developed by other courts. *Id.* at 7–15.

While the Court considered the seven-factor "likelihood of confusion" test set out in *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ.*, 830 F.3d 1242, 1255 (11th Cir. 2016), again, the Court made clear that Plaintiffs' factual "showing would be sufficient to withstand summary judgment, *were it not for the necessity to balance the showing against First Amendment interests*." *Id.* at 19 (emphasis added). The Court reiterated that honoring the "balance mandated by *Rogers*, *Cliffs Notes*, and, of controlling importance here, *University of Alabama* compels the conclusion that the defendants' use of *Floribama Shore* in the title of their show and attendant marketing materials does not infringe the plaintiffs' mark." *Id.* at 20–21.

However, now that the Supreme Court has held in *Jack Daniel's* that "[w]hen a mark is used as a mark . . . the likelihood-of-confusion inquiry does enough work to account for the interest in free expression" and "the First Amendment does not demand a threshold inquiry like the *Rogers* test," 599 U.S. at 159, the "close issue" this Court found is no longer close.

The law is changed. Had the Supreme Court's holding been enunciated prior to this Court's decision, this Court's analysis would have likely have come out very differently. Summary judgment would very likely have been denied.

For that reason, Plaintiffs ask the Court to set aside the judgment and reopen the action. At the very least, this Court should consider re-hearing Defendants' summary judgment motion in light of *Jack Daniel's* and subsequent decisions applying it.

## III. Justice requires setting aside the judgment and reopening this action, and the Court has the power to do so.

Plaintiffs seek relief from the judgment under Rule 60(b), subparts (5) and (6).

Decisions under Rule 60(b) are fact- and law-intensive, and a District Court enjoys broad discretion to grant or deny them. *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) ("the district judge, who is in the best position to discern and assess all the facts, is vested with a large measure of discretion in deciding whether to grant a Rule 60(b) motion"). Consequently, appeals of Rule 60(b) decisions are reviewed for abuse of that discretion. *Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003).

### A.   Rule 60(b)(5)

Under Rule 60(b)(5), "[t]he court may relieve a party or its legal representative from a final judgment . . . [if] applying it prospectively is no longer equitable." To qualify for the relief provided by Rule 60(b)(5), the moving party must show "a significant change of circumstances [which] warrants revision of the decree." *Flexiteek Ams., Inc. v. Plasteak, Inc.*, No. 08-60996-CIV, 2012 WL 5364263, at *5 (S.D. Fla. Sep. 10, 2012) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367

(1992)); *Life Techs., Inc. v. Promega Corp.*, 189 F.R.D. 334, 336 (D. Md. 1999) (the rule "gives the Court equitable power to relieve a party from a judgment when, in light of changed circumstances, it is no longer equitable that the judgment should have prospective application").

The "equitable leg of subsection (b)(5) . . . allows relief from judgments and orders only to the extent that their application would be 'prospective.'" *Id.* at *6.

"[O]n an adequate showing the courts will provide relief if it no longer is equitable that the judgment be enforced," including because of "a change in the decisional law." § 2863 Judgment Satisfied or No Longer Equitable, 11 Fed. Prac. & Proc. Civ. § 2863, & n.31 (3d ed.) "Indeed, in a five-to-four decision, the Supreme Court suggested that . . . the courts should apply Rule 60(b)(5) flexibly." *Id.* (citing *Horne v. Flores*, 557 U.S. 433 (2009)).

The ruling in the *Jack Daniel's* decision provides a significant change in circumstances and decisional law, such that continuing to apply the judgment prospectively—allowing Defendants to *continue* to violate Plaintiffs' trademark rights based on a no-longer-viable First Amendment defense—is no longer fair or equitable. Plaintiffs here had sought a permanent injunction to bar Defendants' continuing trademark infringement, which—if it had been granted—would still be in effect today. Reversal of the judgment under Rule 60(b)(5) is warranted.

**B.   Rule 60(b)(6)**

Plaintiffs also bring this motion under Rule 60(b)(6), the catch-all, which permits relief from a judgment for "any other reason that justifies relief."

While Plaintiffs acknowledge that (b)(6) relief requires "extraordinary circumstances," *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984), the Supreme Court has made clear that a change in controlling law could justify relief under Rule 60(b)(6). *Kemp v. United States,* 142 S. Ct. 1856, 1865 (2022) (Sotomayor, J., concurring) ("I join the Court's opinion with the understanding that nothing in it casts doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law") (citing *Buck v. Davis*, 580 U.S. 100, 126, 128 (2017). Other courts are in accord. E.g., *Venoco, Ltd. Liab. Co. v. Plains Pipeline, Ltd. P'ship,* No. 21-55193, 2022 WL 1090947, at *2 (9th Cir. Apr. 12, 2022) (a California Court of Appeals' decision "constituted a change of law for the purposes of Rule 60(b)(6)"); *Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2020) (A 'clear and authoritative' change in the law governing the judgment may present extraordinary circumstances" under Rule 60(b)(6)); *Flexiteek Ams., Inc.,* 2012 WL 5364263, at *7 ("A clear-cut change in the law is a necessary, but not sufficient, basis for granting relief" under Rule 60(b)(6)); *CMI Corp. v. Cedarapids, Inc.*, 149 F. Supp. 2d 1284, 1288 (W.D. Okla. 2001) (a change in case law was proper basis under Rule 60(b)(6)).

"The flexibility embedded in Rule 60(b)(6)'s timing requirement preserves its purpose as a 'grand reservoir of equitable power,' available as a vehicle for 'vacat[ing] judgments whenever such action is appropriate to accomplish justice.'" *Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020) (citing *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017)) (punctuation in original). *Bynoe* went on note that the "timeliness" of a Rule 60(b) motion is usually measured by the date of the judgment, except in cases where "a change in law is the basis for the motion." *Id*. Where that is the case, "valid grounds for reconsideration may arise long after a final judgment has been entered." *Id*.

Courts often consider six factors to determine whether Rule 60(b)(6) relief is appropriate, which list is "neither rigid nor exhaustive:" "(1) the nature of the change in the law; (2) the movant's diligence; (3) the parties' reliance interests in the case's finality; (4) the delay; (5) the relationship between the original judgment and the change in the law; and (6) comity." *Venoco,* 2022 WL 1090947, at *2.

*Nature of change in the law*—Here, the nature of the change in law caused by the *Jack Daniel's* decision was so significant that the Ninth Circuit described its impact as having "altered the law" "[t]o the point that our precedents [which] previously held that *Rogers* applies when an expressive mark is used as a mark—and that the only threshold for applying *Rogers* was an attempt to apply the Lanham Act

to something expressive—the Supreme Court has now made clear that this is
incorrect." *Punchbowl*, 90 F.4th at 1031.

Plainly, the law has changed, and the drumbeat of recent cases following *Jack
Daniel's* has underscored that. Neither the Eleventh Circuit nor any District Court
in the Circuit appear to have relied on *Jack Daniels* or interpreted this Circuit's
version of the *Rogers* test yet. This Court would be the first in the Circuit to do so.

*No detrimental reliance on finality*—Defendants have not created any new TV
shows using the "Floribama Shore" marks. Therefore, there can be no
determinantal reliance on the finality of this Court's judgment. In fact, it appears
the infringing show was canceled in August 2022. (IMDb database, *available at*
https://www.imdb.com/news/ni63737648/.)*See Venoco*, 2022 U.S. App. LEXIS
9851 at *4 ("abstract interest in finality" is not relevant, but evidence of "reliance
interests").

*Diligence/Delay*—Plaintiffs acted diligently with respect to pursuit of relief.
Not only did they appeal the judgment to the Eleventh Circuit, but in January 2024,
Plaintiffs put Defendants on notice of their intention to file this motion. Further,
given the cancellation of the TV show in August 2022—before the *Jack Daniel's*
decision was issued—any delay might Defendants claim in the filing of this motion
could not have materially prejudiced them. *E.g.*, *Daker v. Humphrey,* No. 5:12-cv-
00461-CAR-CHW, 2018 WL 11257870, at *1 (M.D. Ga. Aug. 31, 2018) ("no bright-

line limitation period governs motions made under Rule 60(b)(6)"); *Bynoe v. Baca*,
966 F.3d at 980 ("a timely 60(b)(6) motion does not need to be filed within one year
after the 'final judgment, order, or proceeding,'" but "only within a "reasonable
time" from when the Plaintiffs has valid grounds to assert a challenge).

Defendants can also assert no detriment based on gamesmanship or
harassment. Plaintiffs have not benefited from any delay in bringing this motion.

*Relationship between judgment and change in law*—Looking at the change in law,
there is a direct relationship between the *Jack Daniel's* decision and the Court's
ruling in which it did not—and obviously could not—consider the Supreme
Court's enunciation of the law that a *Rogers*-based First Amendment defense does
not apply when Defendants use a mark as a mark as they did here.

*Comity*—Finally, the principle of comity also weighs in favor of granting Rule
60(b)(6) relief for Plaintiffs. Interests in comity are obviously furthered by a
uniform interpretation and application of the interplay between the First
Amendment and trademark law, especially where this Court recognized that its
holding was "not squarely controlled by prior decisions." (MSJ Order at 2.)

Accordingly, whether analyzed under FRCP 60(b)(5) or 60(b)(6), there are
ample grounds for this Court to vacate its prior judgment, reopen this action, and
put this case back on a path toward trial. The interests of justice would be served by

doing so, and would not be served by continuing to maintain a judgment against the

Plaintiffs under precedent that is no longer the law of the land.

Respectfully submitted,

/s/ William F. Cash III

Dated: May 3, 2024              William F. Cash III (FBN 68443)
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR AND MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: 850-435-7059
bcash@levinlaw.com
*Counsel for the Plaintiffs*

## CERTIFICATE UNDER LOC. R. 7.1(B)

The parties conferred on the relief sought on January 25 and 26, 2024.

Defendants did not consent to the relief.

/s/ William F. Cash III

## CERTIFICATE UNDER LOC. R. 7.1(F)

The total word count of this entire motion is 5,815 words and therefore this

motion is within the word limit set by the Local Rules.

/s/ William F. Cash III