

Page Printed From:
https://www.law.com/2024/01/19/creative-expression-vs-the-lanham-act-six-months-of-cases-after-jack-daniels/



NOT FOR REPRINT

### ANALYSIS

# Creative Expression vs. the Lanham Act: Six Months of Cases After Jack Daniel's

Last Term, the U.S. Supreme Court decided *Jack Daniel's v. VIP Products* — a case involving interaction between the Lanham Act and the First Amendment. This article traces the lower courts' reactions and applications to that decision.

January 19, 2024 at 01:53 PM

Trademarks

By Conor Tucker | January 19, 2024 at 01:53 PM



## What You Need to Know

- At the core of the *Jack Daniel's* case lay the potential for a shift in U.S. Trademark law.
- For over 30 years, lower courts had applied the *Rogers* test to balance First Amendment interests against Lanham Act rights.
- Six months on, we can begin to see some trends in the cases applying *Jack Daniel's* — and the results suggest that the decision may have a surprising reach.

Last Term, the U.S. Supreme Court decided *Jack Daniel's v. VIP Products* — a case involving interaction between the Lanham Act and the First Amendment. This article traces the lower courts' reactions to and applications of that decision.

## The *Jack Daniel's* Decision

At the core of the *Jack Daniel's* case last Term lay the potential for a shift in U.S. Trademark law. For over 30 years, lower courts had applied a test — called the *Rogers* test — to balance First Amendment interests against Lanham Act rights. In the name of free expression, the *Rogers* test exempted from the Lanham Act artistically relevant uses of trademarks in expressive works so long as the use was not expressly misleading. The test was first announced by the Second Circuit, but every other federal circuit court of appeals to address the issue adopted the test in some form. The result was to screen out — often at the initial stages of a case — certain Lanham Act claims against "expressive" works. But the Supreme Court had never addressed the issue. And Jack Daniel's (in a dispute over the purported parody dog toy "Bad Spaniels") asked the Court to abrogate *Rogers*. As I pointed out last May, after argument, the justices' questioning suggested that *Rogers* was unlikely to survive unscathed. See, "The First Amendment and the Lanham Act At the Supreme Court."

But the Court avoided ruling on *Rogers* expressly. In what it described as a "narrow" ruling, the Court side-stepped the issue "[w]ithout deciding whether *Rogers* has merit in other contexts." *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 153 (2023). Instead, it held that *Rogers* does not apply at all "when an alleged infringer uses a trademark in the way the Lanham Act most cares about: as a designation of source for the infringer's own

goods." *Ibid*. According to the Court, *Rogers* "has always been a cabined doctrine" (*id*. at 156) — meaningfully "confined" by the lower courts to cases "in which a trademark is used not to designate a work's source, but solely to perform some other expressive function" (*id*. at 154). The gating question — for the purpose of *Rogers* — was not necessarily whether the defendant made expressive use of the mark, but whether the defendant's use was as a mark. Because VIP Products admitted (in its pleadings) to using the accused trade dress as a mark, *Rogers* did not apply.

The decision was unanimous with concurring opinions filed by Justices Sotomayor and Gorsuch. Writing for herself and Justice Alito, Justice Sotomayor highlighted her concerns with trademark surveys. *Id*. at 164. And Gorsuch, joined by Justices Thomas and Barrett, wrote that "it is not entirely clear where the *Rogers* test comes from" and thus "lower courts should be attuned" to the fact that the validity of *Rogers* "remains for resolution another day." *Id*. at 165.

## The Broad Impact of the Court's 'Narrow' Ruling

Six months on, we can begin to see some trends in the cases applying *Jack Daniel's* — and the results suggest that the decision may have a surprising reach.

Take the Second Circuit's decision in *Vans, Inc. v. MSCHF Prod. Studio, Inc.* — F.4th —, 2023 WL 8385065 (2d Cir. Dec. 5, 2023). That case addressed an art collective's near exact copying, and then wavy distortion, of Vans' "Old Skool" sneaker trade dress. Discussing whether *Rogers* applies, the Second Circuit said that the expressive quality — and the artistic or parodic intent — of the accused use no longer determines whether *Rogers* applies. "[E]ven if a defendant uses a mark to parody the trademark holder's product, *Rogers* does not apply if the mark is used 'at least in part' for 'source identification.'" Because the collective's (intentional) use of the Vans trade dress — in a similar manner on similar products sold to similar consumers — served at least in part as source identification, *Rogers* did not apply.

The Second Circuit appears, here, to place significant emphasis on the Supreme Court's articulation of *Rogers* as applying only when a mark is used "solely to perform some" "expressive function" — and not applying if defendant's use performs any source identifying function. But that raises a conceptual problem. At the core of every trademark infringement case is an allegation that the defendant has used a designation in such a way that consumers are confused as to the source, sponsorship, or affiliation of the goods or services. In other words, all trademark infringement cases allege that the accused use can (and does) "designate a work's source." Taken too literally, this reading threatens to sideline *Rogers* entirely (which the Supreme Court certainly did not do).

Lower courts — like the Second Circuit — have rejected *Rogers* where the defendant's use could potentially be source-identifying. In *HomeVestors of Am., Inc. v. Warner Bros. Discovery*, No. CV 22-1583-RGA, 2023 WL 6880341 (D. Del. Oct. 18, 2023), the issue is whether HGTV's use of the title "Ugliest House in America" infringed plaintiff's family of UGLY-inclusive trademarks in connection with houses. Judge Andrews denied the motion to dismiss because "neither party could articulate a test or method for determining, at the motion to dismiss stage or otherwise, whether an allegedly infringing mark is being used in a source-identifying way." Even though the alleged infringing use was a title — and presumably at the core of *Rogers* prior to *Jack Daniel's* — its source-identifying potential got the case past the pleadings. In *MGA Entertainment Inc v. Harris*, No. CV2011548JVSAGRX, 2023 WL 6194387 (C.D. Cal. Sept. 15, 2023), Judge Selna granted a motion for a new trial. There, the *Rogers* jury instructions were erroneous in light of *Jack Daniel's* because the dolls at issue were alleged to embody the asserted trade dress — and thus "used in a source identifying way."

Courts that have applied *Rogers* to dismiss a suit after *Jack Daniels* have done so for incidental, non-titular uses in video programs. In *JTH Tax LLC v. AMC Networks, Inc.*, No. 22 CIV 6526 (PGG), 2023 WL 6215299 (S.D.N.Y. Sept. 25, 2023), the plaintiff alleged that appearance of a fictional "Sweet Liberty Tax Service" (using a Statue of Liberty motif) in episodes of Better Call Saul infringed its trademark in LIBERTY TAX SERVICE (which also used a red, white and blue color scheme with the Statue of Liberty). *Rogers* did not apply there because the accused designation was used, if at all, "in furtherance of the Show's plot" and not "to identify the source of *Better Call Saul* or any of Defendant's

products." Similarly, in *Hara v. Netflix, Inc.*, No. 2:23-CV-03456-RGK, 2023 WL 6812769 (C.D. Cal. Aug. 23, 2020), the court applied *Rogers* where "the alleged infringement does not identify Plaintiff as the source of the Series."

Interestingly, titles have not been receiving protection after *Jack Daniel's*. *HomeVestors* (discussed above) denied a motion to dismiss because a title could potentially be source-identifying. Similarly, in *Davis v. Amazon*, No. 2:21-cv-02090-JVS, 2023 WL 8113299 (C.D. Cal. Nov. 2, 2023) Judge Selna wrote that the "[w]hile a source-identifying film title may have an expressive aspect, it may no longer seek shelter under *Rogers* from the Lanham Act likelihood-of-confusion test following *Jack Daniel's*." Although the court went on to find no likelihood of confusion, it articulated the "question of whether to bypass *Rogers*" as "whether a mark serves as a 'source identifier', or in other words, whether a 'mark is used as a mark' regardless of any expressive function it may also serve." Because titles could serve as source identifiers, *Jack Daniel's* calls into question the scope of their protection — if any — under *Rogers*.

The irony, of course, is that *Rogers* was, itself, about the use of Ginger Roger's name in the title of a movie. The implication of this trend in the district courts is that cases applying the *Rogers* doctrine to protect titles of television shows and books may have been undermined. *See*, *Twentieth Century Fox Television v. Empire Distrib. Inc.*, 875 F.3d 1192 (9th Cir. 2017) (*Rogers* protects title of television series); *Dr. Seuss Enters. L.P. v. ComicMix LLC*, 983 F.3d 443 (9th Cir. 2020) (*Rogers* protects book title).

Although the Court's "source-identification" line seems clean in theory, it appears there will be significant ambiguity in practice. Early cases suggest surprising results, with courts suggesting that titles may not necessarily qualify for *Rogers* and that product-design trade dress claims may have difficulty invoking *Rogers* at all. But the scope of cases subject to protection under the First Amendment is not clear and may only become more uncertain as more courts weigh in.

## Paths Not (Yet) Taken

There are two aspects of *Jack Daniel's* that have not turned up in the cases (yet), but which practitioners should keep an eye on.

First, *Jack Daniel's* expressly contemplates that "a trademark's expressive message — particularly a parodic one, as VIP asserts — may properly figure in assessing the likelihood of confusion." 599 U.S. at 161. So, even where *Rogers* does not apply, the Court seems to contemplate that the First Amendment may be a factor in the likelihood-of-confusion analysis. But at present, the regional tests do not explicitly take that into account. *See*, *e.g.*, *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961); *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). They may soon, although the Second Circuit apparently declined to add a "expressive message" or "parodic use" factor into its analysis in the *Vans* case.

Second, Sotomayor's concurrence may begin to impact the admissibility of surveys.

Justice Sotomayor warns that "courts should treat the results of surveys with particular caution … [and] should also carefully assess the methodology and representativeness of surveys." 599 U.S. at 163. Interestingly, her warning coincides with amendments to Federal Rule of Evidence 702, which purport to raise the bar for admission of expert testimony. Courts have long treated methodological defects in trademark surveys as "technical deficiencies [that] affect the survey's weight" "and not its admissibility." *E.g.*, *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833 (11th Cir. 1983); *E&J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280 (9th Cir. 1992); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2017) ("methodological flaws in a confusion survey typically affect only the survey's weight and not its admissibility"). Sotomayor's caution invites closer scrutiny of survey methodology. And the Committee Notes for amended Rule 702 (effective December 1, 2023) reflect the view that treating "application of the expert's methodology" as "questions of weight, and not admissibility" is "incorrect." Together, Sotomayor's caution and the amendment of Rule 702 could have a significant impact on admissibility of trademark surveys.

## Conclusion

Six months on, the "narrow" *Jack Daniel's* decision appears anything but. Many circuits vacated and remanded pending cases involving *Rogers* to be addressed by the district courts in the first instance. As those cases wend their way through the courts, expect the uncertainty in the scope of *Rogers* to continue.

*****

Conor Tucker is a litigator in the Century City, CA office of Wilson Sonsini Goodrich & Rosati and a member of the firm's appellate practice. He has experience litigating on a wide range of issues including due process rights, trademark, trade secret, trade dress, copyright, contract, and patents. He can be reached at ctucker@wsgr.com. *Disclosure statement: My colleagues at Wilson Sonsini and I represented multiple alcoholic-beverage industry organizations as amici in Jack Daniel's v. VIP Products. The opinions expressed herein do not necessarily reflect those of any of the firm's clients, or of my firm, on this case or any other matters discussed herein.*

*This article appeared in The Intellectual Property Strategist, an ALM/Law Journal Newsletters publication that provides a practical source of both business and litigation tactics in the fast-changing area of intellectual property law, including litigating IP rights, patent damages, venue and infringement issues, inter partes review, trademarks on social media – and more.*

NOT FOR REPRINT

Copyright © 2024 ALM Global, LLC. All Rights Reserved.