UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO. 5:19-CV-00257-RH-MJF

MGFB PROPERTIES, INC., FLORA-
BAMA MANAGEMENT, LLC, and
FLORA-BAMA OLD S.A.L.T.S., INC.,

      Plaintiffs,

vs.

VIACOMCBS INC., 495
PRODUCTIONS HOLDINGS LLC, and
495 PRODUCTIONS SERVICES LLC,

      Defendants.

_____

**DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION
TO SET ASIDE THE JUDGMENT UNDER RULE 60(b)**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

STATEMENT OF FACTS .......................................................................4

    A.    Procedural Background ..............................................4

    B.    The Supreme Court's Decision In *Jack Daniel's* And Plaintiffs' Motion To Reopen These Proceedings ............................7

LEGAL STANDARD.............................................................................8

ARGUMENT .......................................................................................9

I.     PLAINTIFFS' MOTION IS UNTIMELY. ..................................9

II.    THE JUDGMENT IS NOT PROSPECTIVE WITHIN THE MEANING OF RULE 60(B)(5)..............................................12

III.   PLAINTIFFS HAVE FAILED TO SHOW "EXTRAORDINARY CIRCUMSTANCES" AS REQUIRED TO OBTAIN RELIEF UNDER RULE 60(B)(6). ..................13

    A.    A Mere Change In Decisional Law Is Insufficient To Grant Relief Under Rule 60(b)(6). ..............................................14

    B.    Plaintiffs Have Not Otherwise Demonstrated "Extraordinary Circumstances."......................................15

IV.   JACK DANIEL'S DID NOT MATERIALLY CHANGE THE LAW APPLICABLE TO THIS CASE. ....................................18

    A.    *Jack Daniel's* Did Not Unsettle Existing Case Law Governing Titles Of Expressive Works...........................19

    B.    "Floribama" Here Is Used To Describe The Content Of The Series, Not As A Source Identifier..................................20

    C.    Plaintiffs' Arguments Are Unavailing. ...........................22

CONCLUSION..................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&I Int'l Trading Corp. v. Carrington Sales Co.*,
  2014 WL 1612305 (S.D.N.Y. Apr. 21, 2014) ....................................................11

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
  741 F.3d 1349 (11th Cir. 2014) .........................................................................15

*Arthur v. Thomas*,
  739 F.3d 611 (11th Cir. 2014) ......................................................................9, 14

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
  517 F.3d 1271 (11th Cir. 2008) ...........................................................................9

*Bynoe v. Baca*,
  966 F.3d 972 (9th Cir. 2020) .............................................................................18

*CMI Corp. v. Cedarapids, Inc.*,
  149 F. Supp. 2d 1284 (W.D. Okla. 2001).........................................................18

*Cook v. Birmingham News*,
  618 F.2d 1149 (5th Cir. 1980) ...........................................................................13

*Davis v. Amazon.com, Inc.*,
  No. 21-cv-2090, 2023 WL 8113299 (C.D. Cal. Nov. 2, 2023).........................25

*Days Inns Worldwide, Inc. v. Patel*,
  445 F.3d 899 (6th Cir. 2006) .............................................................................10

*Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*,
  143 S. Ct. 2634 (2023).........................................................................................7

*Down to Earth Organics, LLC v. Efron*,
  No. 22-cv-6218, 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) .......................22

*Ferrer v. Bayview Loan Servicing, LLC*,
  823 F. App'x 858 (11th Cir. 2020).....................................................................10

*Finnegan v. Comm'r of Internal Revenue*,
  926 F.3d 1261 (11th Cir. 2019) .........................................................................17

*Flexiteek Ams., Inc. v. PlasTEAK, Inc.*,
  2012 WL 5364263 (S.D. Fla. Sept. 10, 2012) .............................................13, 17

*Gibbs v. Maxwell House*,
  738 F.2d 1153 (11th Cir. 1984) ..................................................................12, 13

*Gomez v. Fed. Emergency Mgmt. Agency*,
  No. 21-cv-21712, 2022 WL 20580430 (S.D. Fla. Oct. 19, 2022)......................11

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005)......................................................................................14, 16

*Griffin v. Sec'y, Fla. Dep't of Corr.*,
  787 F.3d 1086 (11th Cir. 2015) .........................................................................12

*Griffin v. Swim-Tech Corp.*,
  722 F.2d 677 (11th Cir. 1984) .............................................................................9

*Hendry v. Cenergistic, Inc.*,
  2017 WL 7792560 (S.D. Fla. July 17, 2017) ....................................................11

*Homevestors of Am., Inc. v. Warner Bros. Discovery, Inc.*,
  No. 22-1583, 2023 WL 8826729 (D. Del. Dec. 21, 2023)................................25

*Jack Daniel's Properties, Inc. v. VIP Products LLC*,
  599 U.S. 140 (2023).................................................................................*passim*

*Kemp v. United States*,
  596 U.S. 528 (2022).........................................................................................14

*Life Techs. v. Promega Corp.*,
  189 F.R.D. 334 (D. Md. 1999) .........................................................................13

*Loc. 332, Allied Indus. Workers of Am., AFL-CIO v. Johnson Controls, Inc.*,
  969 F.2d 290 (7th Cir. 1992) ...........................................................................16

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) .....................................................................19, 20

*MGA Ent. Inc. v. Harris*,
  No. 20-11548, 2023 WL 6194387 (C.D. Cal. Sept. 15, 2023)....................24, 26

*MGFB Props., Inc. v. Viacom Inc.*,
   54 F.4th 670 (11th Cir. 2022) ...................................................................6, 21

*Punchbowl, Inc. v. AJ Press, LLC*,
   90 F.4th 1022 (9th Cir. 2024) .............................................................24

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) .......................................................*passim*

*Santiago-Lugo v. Warden*,
   392 F. App'x 675 (11th Cir. 2010) ...................................................14

*Stansell v. Revolutionary Armed Forces of Colombia*,
   771 F.3d 713 (11th Cir. 2014) ...........................................................11

*Tamayo v. Stephens*,
   740 F.3d 986 (5th Cir. 2014) ............................................................10

*United States v. Harrison*,
   809 F. App'x 635 (11th Cir. 2020) .....................................................9

*University of Alabama Board of Trustees v. New Life Art, Inc.*,
   683 F.3d 1266 (11th Cir. 2012) ...................................................4, 5, 6

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
   88 F.4th 125 (2d Cir. 2023) .......................................................16, 24

*Vasconcelo v. Miami Auto Max, Inc.*,
   No. 17-cv-21765, 2020 WL 1452494 (S.D. Fla. Mar. 25, 2020),
   *aff'd*, 851 F. App'x 979 (11th Cir. 2021) ...........................................9

*Venoco, LLC v. Plains Pipeline, L.P.*,
   No. 21-55193, 2022 WL 1090947 (9th Cir. Apr. 12, 2022)..............................18

*White v. N.H. Dep't of Emp. Sec'y*,
   455 U.S. 445 (1982)........................................................................26

*Williams v. Florida*,
   No. 20-14231, 2021 WL 3720065 (11th Cir. Aug. 23, 2021) ...........................10

*Yang v. James R. Worrell, Gen. Agent, Inc.*,
   512 F. App'x 997 (11th Cir. 2013)....................................................11

**Court Rules**

Fed. R. Civ. P. 59 ...........................................................................26

Fed. R. Civ. P. 60(b)(1)..........................................................9, 10, 11, 14

Fed. R. Civ. P. 60(b)(2).................................................................9

Fed. R. Civ. P. 60(b)(3).................................................................9

Fed. R. Civ. P. 60(b)(4)................................................................10

Fed. R. Civ. P. 60(b)(5).............................................................*passim*

Fed. R. Civ. P. 60(b)(6).............................................................*passim*

Fed. R. Civ. P. 60(c).....................................................................9

**Other Authorities**

Al Burt, "The Seven Little Floridas," in *Becalmed In The Mullet
    Latitudes: Al Burt's Florida* (1983).....................................................1

# INTRODUCTION

This Court entered judgment in favor of Defendants in this case two years and eight months ago.  A year and a half ago, the Eleventh Circuit affirmed.  Plaintiffs did not petition the Supreme Court for certiorari, petition the Eleventh Circuit for rehearing, or seek any further relief at that time.  Now, however, Plaintiffs seek to revive their claims on the basis that an intervening Supreme Court decision—which was itself handed down over eleven months ago—constitutes an "extraordinary circumstance" warranting reopening this case.  But the relief they seek is barred several times over, and the Court should put a final end to this misbegotten litigation.

This lawsuit was a failed attempt by Plaintiffs to assert a monopoly on the use of the term "Floribama," a portmanteau of "Florida" and "Alabama" that refers to "the Florida of the Northwest, the one with the panhandle shape."[1]  Plaintiffs MGFB Properties, Inc., Flora-Bama Management, LLC, and Flora-Bama Old S.A.L.T.S., Inc. (collectively, "Plaintiffs") own and operate the Flora-Bama Lounge, Package, and Oyster Bar (the "Flora-Bama Lounge") and other related establishments located on the Florida-Alabama border.  According to Plaintiffs' owner, no business or nonprofit can use the term "Flora-Bama" without Plaintiffs' permission—no matter the nature of its activities—because Plaintiffs "own the name, period."  ECF No.

---

[1] Al Burt, "The Seven Little Floridas," in *Becalmed In The Mullet Latitudes: Al Burt's Florida* 4 (1983) (discussing "*Floribama*").

103-27 at 69:11–17.

Defendants ViacomCBS Inc. (n/k/a Paramount Global),[2] 495 Productions Holdings LLC, and 495 Productions Services LLC (collectively, "Defendants") created and distributed the television program *MTV Floribama Shore* (the "Series"), one of several spinoffs of the hit reality series *Jersey Shore* set in a variety of beachside locations—with this Series set in Panama City Beach in the Florida panhandle.  Plaintiffs sued Defendants, arguing that consumers would be confused into thinking that the Series was endorsed or sponsored by the Flora-Bama Lounge.

This Court entered judgment in favor of Defendants in September 2021, and in November 2022, the Eleventh Circuit affirmed.  The Eleventh Circuit applied the *Rogers v. Grimaldi* test, which governs claims targeting uses of trademarks in expressive works.  The Eleventh Circuit held that, because Defendants' use of "Floribama" was artistically relevant to the Series and not explicitly misleading, it was subject to heightened protection under *Rogers*.  Plaintiffs did not petition the Supreme Court for a writ of certiorari or seek any other relief, and the Eleventh Circuit's decision was thus the final word in this litigation.

Before the Eleventh Circuit handed down its decision, the Supreme Court granted certiorari in a case implicating the *Rogers* doctrine, *Jack Daniel's*

---

[2] Effective February 16, 2022, ViacomCBS Inc. changed its name to Paramount Global.

*Properties, Inc. v. VIP Products LLC*, 599 U.S. 140 (2023) which involved a whiskey brand and a parody dog toy.  On June 8, 2023, the Supreme Court held that the *Rogers* test does not apply when the defendant is using the trademark at issue "as a trademark"—that is, as an identifier of the source of the defendant's products.

Plaintiffs now contend in their Motion to Set Aside the Judgment Under Rule 60(b), ECF No. 205 ("Mot."), that *Jack Daniel's* worked an intervening change in law that should cause this Court to reopen its nearly three-year-old judgment.  Their Motion fails for several reasons.  *First*, it is untimely; Plaintiffs waited nearly a year after the Supreme Court's decision in *Jack Daniel's*, with no justification for their delay.  *Second*, relief under Rule 60(b)(5) is unavailable because this Court's judgment was not "prospective" within the meaning of Rule 60(b)(5).  *Third*, under the catch-all provision in Rule 60(b)(6), Plaintiffs have not met their burden to show "extraordinary circumstances" justifying relief.  Among other things, Plaintiffs did not diligently pursue their rights on direct appeal, and the legal theory on which they now base their request to reopen is one Plaintiffs never advanced at any previous point in the litigation.  *Finally*, *Jack Daniel's* in any event has no bearing here because, in the title *MTV Floribama Shore*, "Floribama" is not being used as a trademark to designate the source of the Series.

## STATEMENT OF FACTS

### A. Procedural Background

Plaintiffs filed this action on August 6, 2019, nearly two years after the show first aired in November 2017.[3]  ECF No. 1.  On September 22, 2021, this Court granted Defendants' summary judgment motion and entered judgment in Defendants' favor on all claims.  ECF Nos. 188, 189.  This Court's decision hinged on "[a] now well-established line of cases hold[ing] that the Lanham Act must be applied narrowly to artistic works to avoid conflict with First Amendment interests." ECF No. 188 at 1–2.  The Court recognized that *Rogers*, by its terms, applies where the junior use involves an "allegedly infringing title[ ]," *id.* at 8, and establishes a two-part test: "the senior user can prevail only if the junior use (1) has no artistic relevance to the underlying work or (2) explicitly misleads as to the source or content of the work," *id.* at 7.  The Court also recognized that the Eleventh Circuit had adopted the *Rogers* two-part test in *University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012).  ECF No. 188 at 9.  At Plaintiffs'

---

[3] Plaintiffs' litigation of this matter has exhibited a consistent pattern of delay. Plaintiffs sent Defendants a cease-and-desist letter in October 2017, shortly before the Series premiered, which Defendants promptly responded to.  ECF No. 32-1 ¶¶ 3-4.  Defendants then heard nothing further from Plaintiffs until they filed this lawsuit in August 2019—nearly two years later and after two seasons of the Series had already aired.  On this motion, again, Plaintiffs conferred with Defendants in late January 2024, *see* Mot. at 25, but then inexplicably waited over three months before filing.  And as discussed below, Plaintiffs filed their motion nearly a year after the *Jack Daniel's* decision, again with no explanation.

urging, *see* ECF No. 104 at 4, the Court considered a potential exception to *Rogers* for "misleading titles that are confusingly similar to other titles."  *See Rogers*, 875 F.2d at 999 n.5; ECF No. 188 at 9–15.  In light of that exception, the Court used a modified First Amendment analysis that did not begin and end with *Rogers*' two-part test, but rather considered Plaintiffs' showing of likelihood of confusion and balanced it against Defendants' First Amendment interests.  The Court concluded that Plaintiffs' "weak" showing of likelihood of confusion was insufficient to overcome those interests.  ECF No. 188 at 15–19.

Critically, this Court recognized that Defendants' "primary intent was expression—conveying to the audience the subject of the television series—not exploiting the plaintiffs' mark."  *Id.* at 19.  "At bottom, most potential viewers in the national audience surely understand the title *MTV Floribama Shore* to denote another show in the *Jersey Shore* line, this one set in the geographic area suggested by the title."  *Id.* at 20.  As such, "[t]he balance mandated by *Rogers*, *Cliffs Notes*, and, of controlling importance here, *University of Alabama* compels the conclusion that the defendants' use of *Floribama Shore* in the title of their show and attendant marketing materials does not infringe the plaintiffs' mark."  *Id.* at 20–21.  The Court thus granted summary judgment on Plaintiffs' federal and state-law claims.  *Id.* at 21–22.[4]

---

[4] The Court also held that there were independent grounds for summary judgment

Plaintiffs appealed to the Eleventh Circuit on October 6, 2021.  ECF No. 191.

While that appeal was pending, on November 21, 2022, the Supreme Court granted

certiorari in *Jack Daniel's*, 143 S. Ct. 476 (2022).  Plaintiffs did not apprise the

Eleventh Circuit that the Supreme Court would be hearing a case that would bear on

the applicability of *Rogers*.  In contrast, in the *Vans, Inc. v. MSCHF Product Studio,*

*Inc.* litigation from the Second Circuit that Plaintiffs cite in their Motion, Mot. 12,

the plaintiff promptly notified the Second Circuit that the Supreme Court had granted

certiorari in *Jack Daniel's*, and the Second Circuit held the matter in abeyance

pending the resolution of that case.  *See* No. 2022-1006 (2d Cir.), ECF Nos. 133,

137.

On November 29, 2022, the Eleventh Circuit affirmed this Court's summary

judgment order.  *See MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670 (11th Cir.

2022).  The Eleventh Circuit also viewed *University of Alabama* as controlling,

noting that that case had extended *Rogers* "to a trademark challenge to the content—

as opposed to only the title—of an artistic work protected by the First Amendment."[5]

*Id.* at 679–80.  The Eleventh Circuit thus applied the two-part *Rogers* test,

concluding that *MTV Floribama Shore* was both artistically relevant (because

---

on Plaintiffs' state-law dilution claim, because Plaintiffs had not substantiated
statewide fame as necessary to support that claim.  ECF No. 188 at 23–24.

[5] The Supreme Court cited *University of Alabama* approvingly in *Jack Daniel's*.  *See*
599 U.S. at 154.

"'Floribama' describes the subculture profiled in the Series and the geographic area exemplified by the subculture") and not explicitly misleading (because "there is no evidence Defendants held the series out as endorsed or sponsored by Plaintiffs, nor did they explicitly state that the series was affiliated with Plaintiffs"). *Id.* at 680–82. The court also rejected Plaintiffs' argument that a "title-versus-title" exception should apply, concluding that Plaintiffs themselves solely use Flora-Bama "to identify their bar and other commercial enterprises," and that any third-party uses of "Flora-Bama" in titles of expressive works purportedly licensed by Plaintiffs were not uses "*as trademarks* to identify and distinguish the source of the artistic works." *Id.* at 683.

Significantly, Plaintiffs did not seek rehearing from the Eleventh Circuit or petition for certiorari. In contrast, the plaintiff in *Diece-Lisa Industries, Inc. v. Disney Store USA, LLC* petitioned for certiorari specifically in light of *Jack Daniel's* and urged the Supreme Court to take up their case as a companion to *Jack Daniel's*. Supplemental Brief in Support of Petition for a Writ of Certiorari, *Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*, No. 22-347 (Nov. 22, 2022). And the Supreme Court granted the petition for the purpose of vacating and remanding the case to the Ninth Circuit. *Diece-Lisa Indus., Inc. v. Disney Store USA, LLC*, 143 S. Ct. 2634 (2023).

## B. The Supreme Court's Decision In *Jack Daniel's* And Plaintiffs' Motion To Reopen These Proceedings

On June 8, 2023, the Supreme Court decided *Jack Daniel's*. As noted above,

*Jack Daniel's* did not involve an expressive work like a film, television show, novel, or song, but rather a dispute between the makers of two quintessential consumer products: whiskey and dog toys. *Jack Daniel's*, 599 U.S. at 144. The Ninth Circuit had held that because the dog toy at issue conveyed a "humorous message," it could be subject to protection under *Rogers*. *Id.* at 152. The Supreme Court disagreed. It held that where marks are being used as "source identifiers—as things that function to 'indicate the source' of goods, and so to 'distinguish' them from ones 'manufactured or sold by others'"—then *Rogers* (or any other threshold First Amendment test) does not apply. *Id.* at 156–57, 159. However, the Supreme Court explicitly declined to decide the overall validity of the *Rogers* doctrine, characterizing its decision as "narrow." *Id.* at 163.

Almost a year later, on May 3, 2024, without explaining their delay, Plaintiffs filed the present motion to set aside the judgment under Rule 60(b), contending that *Jack Daniel's* constitutes an intervening change in law that warrants reopening the decision.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) empowers courts to grant relief from a final judgment or order in six enumerated circumstances. Plaintiffs seek relief under Rule 60(b)(5), which (as relevant here) applies when "applying [the judgment] prospectively is no longer equitable," and Rule 60(b)(6), a catch-all provision for

"any other reason that justifies relief."  Mot. 2–3.

Relief under Rule 60(b) is subject to this Court's discretion.  *See Arthur v. Thomas*, 739 F.3d 611, 627–28 (11th Cir. 2014).  However, the Eleventh Circuit has long cautioned that final judgments should not be "lightly reopened" due to "[t]he desirability for order and predictability in the judicial process."  *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

## ARGUMENT

## I.  PLAINTIFFS' MOTION IS UNTIMELY.

"A motion under Rule 60(b) must be made within a reasonable time."  Fed. R. Civ. P. 60(c).  While there is no express time limit for motions brought under Rules 60(b)(5) or (6),[6] courts deciding whether such motions are timely must "consider the circumstances of each case to determine 'whether the parties have been prejudiced by the delay and whether a good reason has been presented for failing to take action sooner.'"  *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1275 (11th Cir. 2008) (considering Rule 60(b)(5) motion); *accord, e.g.*, *United States v. Harrison*, 809 F. App'x 635, 636–67 (11th Cir. 2020) (considering Rule 60(b)(6) motion).  The party seeking relief must "affirmatively show" that the

---

[6] This stands in contrast to motions brought under Rules 60(b)(1), (2), or (3), which must be brought within one year of the judgment. Fed. R. Civ. P. 60(c)(1).  Because close to three years have passed since the Court's judgment in this case, Plaintiffs cannot invoke those grounds for reopening.

motion was made within a reasonable time.  *Vasconcelo v. Miami Auto Max, Inc.*, No. 17-cv-21765, 2020 WL 1452494, at *2 (S.D. Fla. Mar. 25, 2020), *aff'd*, 851 F. App'x 979 (11th Cir. 2021).

Plaintiffs filed their Motion on May 3, 2024.  But the event purportedly providing a basis to reopen this case—the Supreme Court's decision in *Jack Daniel's*—occurred *nearly eleven months earlier*.  Plaintiffs offer no justification whatsoever for their delay.

Courts routinely reject Rule 60(b) motions as untimely under similar circumstances.  *See Williams v. Florida*, No. 20-14231, 2021 WL 3720065, at *3 (11th Cir. Aug. 23, 2021) (denying Rule 60(b)(6) motion where movant "fail[ed] to offer any grounds" for concluding the delay was reasonable and, even without counting the time spent on appeal, "waited … over six months after the Supreme Court denied certiorari" in his case); *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (rejecting Rule 60(b)(6) motion where movant waited eight months following issuance of relevant decision); *see also Ferrer v. Bayview Loan Servicing, LLC*, 823 F. App'x 858, 861–62 (11th Cir. 2020) (denying Rule 60(b)(1) motion, even though it was filed within one year, where movant waited just under a year and failed to provide convincing reason why she could not have moved sooner); *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) (rejecting Rule 60(b)(4) motion where appellant did "not attempt to identify any good reason for not

filing [the] motion until more than eleven months after he was properly served with the complaint and the default-judgment motion"); *Gomez v. Fed. Emergency Mgmt. Agency*, No. 21-cv-21712, 2022 WL 20580430, at *2 (S.D. Fla. Oct. 19, 2022) (rejecting Rule 60(b)(1) motion where nine months elapsed with no justification).[7]

Plaintiffs' failure to provide any explanation for their delay, standing alone, is enough to foreclose their motion, irrespective of whether Defendants were prejudiced. But in any event, Plaintiffs' argument that their delay has not prejudiced Defendants is also plainly incorrect. Courts have long recognized the prejudice defendants face in "the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Hendry v. Cenergistic, Inc.*, 2017 WL 7792560, at *3 (S.D. Fla. July 17, 2017) (quoting *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965)) (denying motion under Rule 60(b)(1) and (6)); *see also Yang v. James R. Worrell, Gen. Agent, Inc.*, 512 F. App'x 997, 1000 (11th Cir. 2013) (defendant was "prejudiced" because it was "lulled into believing that this lawsuit was concluded" by plaintiff's delay); *A&I Int'l Trading Corp. v. Carrington Sales Co.*, 2014 WL 1612305, at *2 (S.D.N.Y. Apr. 21,

---

[7] Indeed, even where a movant has offered an explanation for the delay, courts can reject that explanation as insufficient. *See Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 738 (11th Cir. 2014) (denying Rule 60(b)(6) motion because "[e]ven assuming … that we should not expect Herrera to have filed his motion before his attorney was licensed, the five-month delay that followed his licensure surely was unreasonable").

11

2014) ("Defendants suffer prejudice in defending against claims as time elapses—memories grow stale and evidence is lost.").  Further, although new episodes of *MTV Floribama Shore* are no longer being produced, the Series continues to be available on multiple streaming platforms.  Because Plaintiffs are seeking, *inter alia*, millions of dollars in "corrective advertising" damages based on the amount of airtime the Series has received, *see generally* ECF No. 179-1 (Expert Report of Michael Albrecht), every additional day of delay increases Defendants' potential damages exposure.

## II.   THE JUDGMENT IS NOT PROSPECTIVE WITHIN THE MEANING OF RULE 60(B)(5).

Plaintiffs seek relief under the portion of Rule 60(b)(5) authorizing relief where "applying [the judgment] prospectively is no longer equitable."  Mot. 19.  "[J]udgments operate 'prospectively' within the meaning of Rule 60(b)(5) if they 'involve the supervision of changing conduct or conditions,'" with the "classic example" being a continuing injunction.  *Griffin v. Sec'y, Fla. Dep't of Corr.*, 787 F.3d 1086, 1091 (11th Cir. 2015) (quoting *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980)).  But relief is not available where, as here, a plaintiff seeks to reopen a final judgment *dismissing* its claims.  As the Eleventh Circuit has held, a "judgment of dismissal … [is] not prospective within the meaning of 60(b)(5)," but is rather "final and permanent."  *Gibbs v. Maxwell House*, 738 F.2d

1153, 1155–56 (11th Cir. 1984).[8]

All while emphasizing that the Series has stopped producing new episodes, *see* Mot. 23, Plaintiffs nevertheless suggest that the judgment here operates prospectively because it "allow[s] Defendants to *continue* to violate Plaintiffs' trademark rights based on a no-longer-viable First Amendment defense." Mot. 20. But this workaround is squarely foreclosed by *Gibbs*, which held that the fact "[t]hat plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning of rule 60(b)(5) any more than if plaintiff were continuing to feel the effects of a money judgment against him." *Gibbs*, 738 F.2d at 1156. Nor can Plaintiffs argue that the denial of injunctive relief is somehow prospective even where a dismissal ordinarily is not, *contra* Mot. 20. The Eleventh Circuit has specifically held that a denial of an injunction (as opposed to the entry of an injunction) is *not* prospective within the meaning of Rule 60(b)(5). *Cook*, 618 F.2d at 1152.

Rule 60(b)(5) simply is not available to Plaintiffs here.

## III. PLAINTIFFS HAVE FAILED TO SHOW "EXTRAORDINARY CIRCUMSTANCES" AS REQUIRED TO OBTAIN RELIEF UNDER RULE 60(B)(6).

"Relief from judgment under Rule 60(b)(6) is an extraordinary remedy."

---

[8] Plaintiffs' cases applying Rule 60(b)(5), *see* Mot. 19–20, involved judgments with accompanying injunctive relief or a consent decree, and so are inapposite. *See Flexiteek Ams., Inc. v. PlasTEAK, Inc.*, 2012 WL 5364263, at *9 (S.D. Fla. Sept. 10, 2012) (permanent injunction); *Life Techs. v. Promega Corp.*, 189 F.R.D. 334, 336–39 (D. Md. 1999) (consent decree).

*Arthur*, 739 F.3d at 628 (quotation marks omitted).  Courts have thus required a party

seeking relief under this provision to show "'extraordinary circumstances' justifying

the reopening of a final judgment."  *Id.* (quoting *Gonzalez v. Crosby*, 545 U.S. 524,

535 (2005)).  Plaintiffs have not come close to meeting this burden.

### A. A Mere Change In Decisional Law Is Insufficient To Grant Relief Under Rule 60(b)(6).

Plaintiffs argue that *Jack Daniel's* constituted a change in the law that would

change the outcome of their case.  Mot. 21–22.  But the well-established law in this

Circuit is that "a change in decisional law," standing alone, does not "create an

'extraordinary circumstance' under Rule 60(b)(6)."  *Arthur*, 739 F.3d at 632.  As the

Supreme Court recognized in *Gonzalez v. Crosby*, a change in the Supreme Court's

interpretation of the law following a district court's application of then-binding

circuit precedent is "hardly extraordinary" and does not merit Rule 60(b)(6) relief.

545 U.S. 524, 536–37 (2005); *accord Arthur*, 739 F.3d at 632.[9]

A Rule 60(b)(6) motion should thus be denied where the movant has pointed

only to a change in the law with no additional basis for relief.  *See Arthur*, 739 F.3d

at 632–33; *Santiago-Lugo v. Warden*, 392 F. App'x 675, 677 (11th Cir. 2010)

---

[9] Plaintiffs reliance on Justice Sotomayor's concurrence in *Kemp v. United States*, 596 U.S. 528, 540 (2022), is unavailing.  *Kemp* involved Rule 60(b)(1), not Rule 60(b)(6), and in any event Justice Sotomayor's statement was consistent with *Gonzalez*.  Regardless, dicta in a concurrence about the availability of Rule 60(b)(6) cannot overcome this Circuit's well-settled law.

("[Santiago-Lugo] relies only on changes in the law to justify Rule 60(b) relief, and 'something more than a "mere" change in the law is necessary to provide the grounds for Rule 60(b)(6) relief.'").  Plaintiffs' Motion makes clear that the sole basis for their request for relief under Rule 60(b)(6) is that *Jack Daniel's* purportedly changed the law governing their claims.  The Eleventh Circuit has foreclosed that argument, and Plaintiffs are not entitled to relief on this ground.

### B. Plaintiffs Have Not Otherwise Demonstrated "Extraordinary Circumstances."

It is thus Plaintiffs' burden to identify circumstances, *in addition to* a change in the law, that justify "extraordinary" relief under Rule 60(b)(6).  Plaintiffs have made no such showing.  Indeed, the relevant additional circumstances here— Plaintiffs' failure to protect their rights on direct appeal and to previously raise an issue that they now claim is central to this case—simply confirm that relief is precluded.

***First,*** Plaintiffs did not diligently protect their rights on appeal.  "Rule 60(b)(6) does not reward a party that seeks to avoid the consequences of its own 'free, calculated, deliberate choices.'"  *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357–58 (11th Cir. 2014) (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)) (affirming denial of Rule 60(b)(6) relief where the plaintiffs "did not pursue a reasonable appeal").  Although Plaintiffs did "appeal the judgment to the Eleventh Circuit," Mot. 23, they "neither … filed a petition for

rehearing of the Eleventh Circuit's [decision], nor sought certiorari review of that [decision]." *Gonzalez*, 545 U.S. at 537. These are precisely the reasons that the Supreme Court in *Gonzalez* identified as rendering the circumstances "all the less extraordinary" following a change in law. *Id.*; *see also Loc. 332, Allied Indus. Workers of Am., AFL-CIO v. Johnson Controls, Inc.*, 969 F.2d 290, 292 (7th Cir. 1992) (denying Rule 60(b) motion based on intervening Supreme Court decision, because the movant "elected not to pursue an appeal before the Supreme Court, and … must abide by the results of that decision regardless of subsequent Supreme Court action").

Further, after certiorari was granted in *Jack Daniel's*, Plaintiffs were on notice of the possibility that the Supreme Court would issue a decision with the potential to affect this case. Plaintiffs could have filed a notice of supplemental authority with the Eleventh Circuit promptly after certiorari was granted, which, as in the Second Circuit's *Vans* litigation, could have resulted in the Eleventh Circuit holding the appeal in abeyance pending the outcome of *Jack Daniel's*. *See supra* page 6. Plaintiffs could also have petitioned for certiorari and urged the Supreme Court to take up their case as a companion to *Jack Daniel's*, which, as in the Ninth Circuit's *Diece-Lisa Industries* litigation, could have resulted in the Supreme Court vacating the Eleventh Circuit decision. *See supra* page 7. Plaintiffs here failed to take these straightforward steps to preserve their rights.

16

**_Second,_** Plaintiffs now rely on *Jack Daniel's* to support a theory that they could have—but did not—advance at any earlier point before this Court or the Eleventh Circuit.  Where a party has the opportunity to make an argument "in good faith, consistent with [its] ethical obligations," but chooses to rely on a different argument, it cannot get a second bite at the apple under Rule 60(b)(6).  *See Finnegan v. Comm'r of Internal Revenue*, 926 F.3d 1261, 1269–71 (11th Cir. 2019).

Plaintiffs could have argued at any point that *Rogers* should not apply to this case because (in their view) "Floribama" was being used as a source-identifier.  Such an argument would not have been foreclosed by any Supreme Court or Eleventh Circuit precedent.  But Plaintiffs opted to argue for *different* limitations on *Rogers*— that it should not apply in a dispute between two "confusingly similar titles" and that Defendants' use of the term "Floribama" was not a "necessary inclusion" in the title of the show.  ECF No. 104 at 4–15.  Plaintiffs cannot now piggyback on a holding that they were free to argue for at any point before this Court but chose not to.

**_Third,_** in the decisions cited by Plaintiffs where courts have granted Rule 60(b)(6) relief following a change in the law—none of which, conspicuously, are from the Eleventh Circuit—the movants adduced dramatically different support for their motion.  Mot. 21–22.  In the sole in-circuit decision Plaintiffs cite, the patent claim invalidated by the intervening decision was the exact same claim at issue before the district court, *Flexiteek*, 2012 WL 5364263, at *10, whereas here, *Jack*

*Daniel's* did not involve the title *MTV Floribama Shore*—or even the title of a creative work—but instead the use of a trademark on a dog toy.  Further, the court had already stayed execution of the judgment, and the movants diligently pursued their rights on direct appeal and filed the Rule 60(b)(6) motion less than thirty days after the change in intervening law.  *Id.*

The out-of-circuit cases on which Plaintiffs rely likewise involved vastly different facts.  *See Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 WL 1090947, at *2 (9th Cir. Apr. 12, 2022) (the intervening change in law "vindicated 'the interpretation [the movant] had pressed all along,'" and the movant filed its motion within a month of the alleged change in law); *Bynoe v. Baca*, 966 F.3d 972, 979, 983–84 (9th Cir. 2020) (prisoner diligently pursued all appeal rights, including petitioning for certiorari, the intervening change in law explicitly resolved an "unsettled area of law," and motion was filed within seven months of the change in law); *CMI Corp. v. Cedarapids, Inc.*, 149 F. Supp. 2d 1284, 1286 (W.D. Okla. 2001) (case was still on appeal, so court explicitly found finality concerns were absent).  If anything, these cases only drive home how much more a movant must demonstrate to show "extraordinary circumstances" beyond a mere change in law.

## IV.   JACK DANIEL'S DID NOT MATERIALLY CHANGE THE LAW APPLICABLE TO THIS CASE.

Even if relief were theoretically available under Rule 60(b)(5) or 60(b)(6), Plaintiffs' Motion fails for the basic reason that *Jack Daniel's* does not require a

different outcome in this case.  As discussed above, the Supreme Court was laser-focused on instances where a trademark is being used "as a mark"—that is, as an identifier of the source of the relevant goods or services.  *Jack Daniel's*, 599 U.S. at 159.  It held that in those instances, the conventional likelihood-of-confusion factors sufficiently account for the countervailing interest in free expression.  *Id.*  In that case, among other things, the dog toy manufacturer *explicitly alleged in its complaint* that it owned and used "Bad Spaniel's" *as a mark*, barring its claim.  *Id.* at 160–61. But the Supreme Court deliberately issued a "narrow" decision that did not disturb *Rogers* or its progeny, *see id.* at 163, including the case law on which this Court and the Eleventh Circuit relied in dismissing Plaintiffs' claims.  There are several reasons why *Jack Daniel's* does not mandate a different result here.

### A. *Jack Daniel's* Did Not Unsettle Existing Case Law Governing Titles Of Expressive Works.

First, the Supreme Court in *Jack Daniel's* expressly acknowledged (but did not unsettle) multiple cases applying the *Rogers* test to the titles of expressive works. This included *Rogers* itself, where Ginger Rogers objected to the use of her name in a film *titled* "Ginger and Fred."  *Id.* at 153–54 (discussing *Rogers v. Grimaldi*, 875 F.2d 994, 998–1000 (2d Cir. 1989)). It also included the Ninth Circuit's decision in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), where Mattel sued over a song entitled "Barbie Girl."  *Jack Daniel's*, 599 U.S. at 154.  Indeed, *Jack Daniel's* noted with approval the Ninth Circuit's reasoning that "the band's use of

the Barbie name was 'not [as] a source identifier': The use did not 'speak[ ] to [the song's] origin.'"  *Id.*

In contrast, the decision identified several cases where a mark *was* being used as a source-identifier—including a slogan for a political group, a logo branding a motorcycle repair and parts business, the trade dress for a liqueur brand, and the name of a band.  *See id.* at 155, 158.  In each of those cases, the slogan, mark, or trade dress at issue could reasonably be expected to convey to consumers the source of the products or services at issue.  But the Supreme Court did not include any titles of creative works in that discussion—and for good reason, because "[c]onsumers expect a title to communicate a message about the book or movie, but they do not expect it to identify the publisher or producer."  *Mattel*, 296 F.3d at 902.

**B. "Floribama" Here Is Used To Describe The Content Of The Series, Not As A Source Identifier.**

In the context of this particular use, "Floribama" (as opposed to "MTV" or "Shore") is plainly not being used as a source-identifier, but rather only to describe the content of the show.

The Eleventh Circuit's decision in this case is determinative. The Eleventh Circuit considered examples of titles of creative works *Plaintiffs* had purportedly authorized—including song titles (such as Kenney Chesney's "Flora-Bama"), book titles (such as *Bushwhacked at the Flora-Bama*), and television and film programs (such as "*Last American Roadhouse: The Documentary of the Flora-Bama*").  *See*

*MGFB Props.*, 54 F.4th at 673, 683–84.  It then *explicitly rejected* any suggestion that those works used "Flora-Bama" "to indicate [they] are created, sung, or authored by the Plaintiffs."  *Id.* at 683.

As the court explained: "[s]imply put, the titles are not being used *as trademarks* to identify and distinguish the source of the artistic works.  Plaintiffs have presented no evidence that any of these titles to the third parties' artistic works have any source-identifying function."  *Id.*  Instead, those titles were "being used to identify what the song or the book was about, rather than who produced it."  *Id.*

With respect to *Defendants'* Series, the Eleventh Circuit repeatedly recognized that the title *MTV Floribama Shore* contains both Defendants' "own house mark (MTV)" and the "name of one of its iconic franchises (Shore)."  *Id.* at 680–82.  Nowhere did it suggest that "Floribama" was also being used as a mark.

Likewise, this Court explicitly recognized that Defendants' intent in using the word "Floribama" was "conveying to the audience the subject of the television series" and that "most potential viewers in the national audience surely understand the title *MTV Floribama Shore* to denote another show in the *Jersey Shore* line, this one set in the geographic area suggested by the title."  ECF No. 188 at 19–20.

In a recent case specifically considering the impact of *Jack Daniel's* on a claim involving the title of a television show, the Southern District of New York rejected arguments analogous to Plaintiffs' and continued to apply the *Rogers* test.

21

*See Down to Earth Organics, LLC v. Efron*, No. 22-cv-6218, 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024).   The plaintiff in that case produced health-related podcasts and sold iced teas and clothing under the title and brand "Down to Earth." *Id.* at *1.   The defendants premiered the television show "Down to Earth with Zac Efron," an "eight episode online series focused on wellness and travel." *Id.* at *2. The court determined that *Rogers* applied because the defendants were not using "Down to Earth" as a mark within the meaning of *Jack Daniel's*: instead, "Defendants [were] undoubtedly using 'Down to Earth' simply to identify the subject matter and tone of the Series." *Id.* at *4. Here too—as this Court has already recognized—the use of "Floribama" conveys "the subject of the television series," in contrast to the references to "MTV" and the "Shore" franchise.[10]

### C. Plaintiffs' Arguments Are Unavailing.

Plaintiffs' arguments that Defendants use their mark as a source identifier are unavailing.   First, Plaintiffs point to a laundry list of purported admissions that support their theory.   *See* Mot. 8–10.   None of those are the silver bullet Plaintiffs

---

[10] To be clear, this is not to say that there may never be a case where a mark in a title might be used as a source identifier.   For example, as part of its analysis of what would constitute an "explicitly misleading" use, *Rogers* recognized that some titles "explicitly state the author of the work or at least the name of the person the publisher is entitled to associate with the preparation of the work," such as "Nimmer on Copyright" or "Jane Fonda's Workout Book." *Rogers*, 875 F.2d at 999.   In those examples, "Nimmer" and "Jane Fonda" perform a source-identifying function, whereas "on Copyright" and "Workout Book" do not.   Likewise, in the Series title, "MTV" and "Shore" perform a source-identifying function; "Floribama" does not.

think they are.  For example, Plaintiffs point to Defendants' use of "MTV" and "Shore" as source-identifiers. But that simply confirms that, as the Eleventh Circuit recognized, "MTV" denotes Defendants' "house mark" and "Shore" denotes the franchise.  *See supra* page 21.  It does not further establish that "Floribama" is also source-identifying.  So too, the fact that Defendants have referred to "MTV Floribama Shore" as a trademark does not mean that "Floribama"—the critical element for purposes of *Jack Daniel's*—is performing a source-identifying function. *See Jack Daniel's*, 599 U.S. at 157 (explaining that "confusion is most likely to arise when someone uses *another's trademark* as a trademark" (emphasis added)). Instead, as in "Ginger and Fred" and "Down to Earth"—and as this Court recognized in its summary judgment decision, *see* ECF No. 188 at 19–20—"Floribama" here describes the subject matter of the show.

The Court should also reject Plaintiffs' reliance on out-of-context snippets of deposition testimony from two non-lawyers who are not specialists in trademarks or marketing.   Jackie French, the executive producer of the Series, repeatedly disclaimed knowledge of Viacom's trademark practices and testified that she "know[s] nothing about trademarks" and "d[id]n't really want to speak for the lawyers."  *See* Kohlmann Decl. Ex. 1 (French 30(b)(6) Dep.) at 27:9–14, 27:21– 28:6; Kohlmann Decl. Ex. 2 (French Dep.) at 46:15–17, 59:24–60:13, 73:23–24, 79:5–80:2.  She also stated that she did not know whether Viacom considered

"Floribama Shore" or "Floribama" to be a trademark, Kohlmann Decl. Ex. 1 (French 30(b)(6) Dep.) at 29:24–30:14; Kohlmann Decl. Ex. 2 (French Dep.) at 79:5–80:2. Drew Tappon, the Chief Creative Officer at 495 Productions, likewise emphasized that he was not a lawyer and would seek guidance from counsel on trademark issues. Kohlmann Decl. Ex. 3 (Tappon 30(b)(6) Dep.) at 17:12–15, 55:24–56:5, 66:9–13.[11]

The cases Plaintiffs rely upon that have declined to apply *Rogers* to titles of creative works in light of *Jack Daniel's*, *see* Mot. 13–16, are inapposite—both in light of this Court's and the Eleventh Circuit's prior analysis and because they involved uses of titles in an obviously source-identifying context.

- Multiple cases Plaintiffs cite did not involve titles of creative works, and instead involved trade dress on consumer goods, which is much closer to the facts in *Jack Daniel's*. *See Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125 (2d Cir. 2023) (trade dress for sneakers); *MGA Ent. Inc. v. Harris*, No. 20-11548, 2023 WL 6194387 (C.D. Cal. Sept. 15, 2023) (trade dress for dolls).

- *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024), involved the name "Punchbowl" as applied to an online news publication. Just as *The New York Times* or *The Washington Post* use their names as marks to identify articles put out

---

[11] Indeed, Mr. Tappon worked at 495 Productions, not Viacom, so the purported "trademark" at issue is not even owned by his employer. *See* Kohlmann Decl. Ex. 3 (Tappon 30(b)(6) Dep.) at 46:11–25.

by those publications, the "Punchbowl" mark was the only tool a consumer could use to identify articles that were published by the defendant.

- In the unreported decision *Activision Publishing, Inc. v. Warzone.com LLC*, the junior user had registered the mark at issue, thus representing to the U.S. Patent and Trademark Office that it used that specific terminology as a source identifier. *See* ECF No. 205-7 (Exhibit 7 to Plaintiffs' motion) at 6–7. Defendants have not registered "MTV Floribama Shore."

- Two other cases hinged on the more lenient motion-to-dismiss standard. *See Homevestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, No. 22-1583, 2023 WL 8826729, at *1 (D. Del. Dec. 21, 2023) (determining the allegations in the complaint were "sufficient to support a plausible inference that Defendants' use of the mark was source-identifying"); *Davis v. Amazon.com, Inc.*, No. 21-cv-2090, 2023 WL 8113299, at *6 (C.D. Cal. Nov. 2, 2023) (determining that the plaintiff had adequately alleged secondary meaning).[12]

Critically, none of these cases were in the posture of a motion to reopen the case. Indeed, Defendants are not aware of any decision granting a Rule 60(b) motion

---

[12] In addition, *Davis* is unpersuasive because the court in that case improperly flipped the analysis, looking to whether the *trademark plaintiff* had adequately alleged a secondary meaning *in the plaintiff's* mark. *Davis*, 2023 WL 8113299, at *6 ( "[T]he SAC alleges a secondary meaning in 'GRINGO' as a source identifier of the Book."). *Jack Daniel's* instructs courts to look to whether the *defendant* is using the mark as a source identifier.

to reopen a case in light of *Jack Daniel's*.[13]

## CONCLUSION

The Court should deny Plaintiffs' motion.

---

[13] *Harris* involved a timely-filed motion for a new trial under Rule 59, *see* 2023 WL 6194387, at *1 & n.1, and thus did not implicate the same interest in finality counseling against Rule 60(b) relief from a long-entered judgment. *Cf. White v. N.H. Dep't of Emp. Sec'y*, 455 U.S. 445, 450 (1982) (recognizing the "clear and narrow aim" of a Rule 59(e) motion to alter or amend the judgment, which has the same deadline as a motion for a new trial, is to permit the district court "to rectify its own mistakes in the period immediately following the entry of judgment").

Date:   May 31, 2024                    By:   _/s/ Susan J. Kohlmann_____
                                              Susan J. Kohlmann (*Pro Hac Vice*)
                                              Rémi J.D. Jaffré (*Pro Hac Vice*)
                                              JENNER & BLOCK LLP
                                              1155 Avenue of the Americas
                                              New York, NY 10036
                                              Tel:  (212) 891-1600
                                              Fax: (212) 891-1699
                                              skohlmann@jenner.com
                                              astein@jenner.com
                                              rjaffre@jenner.com

                                              Christine Davis (FL Bar #569372)
                                              DAVIS APPEALS, PLLC
                                              1400 Village Square Blvd.
                                              Suite 3-181
                                              Tallahassee, FL 32312
                                              Tel:  (850) 739-0448
                                              cdavis@davisappeals.com

                                              *Counsel for Defendants*

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1</u>

Pursuant to N.D. Fla. Local Rule 7.1, I hereby certify that this Memorandum of Law is in compliance with the Court's word limit.   According to the word processing program used to prepare this memorandum, the total number of words in the memorandum, inclusive of headings, footnotes, and quotations, and exclusive of the case style, signature block, and any certificate of service is 6,413.

Date:   May 31, 2024

By:   /s/ Susan J. Kohlmann
Susan J. Kohlmann (*Pro Hac Vice*)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
Tel:  (212) 891-1600
Fax: (212) 891-1699
skohlmann@jenner.com