# EXHIBIT 2

```
 1           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF FLORIDA
 2                  PANAMA CITY DIVISION
 3   -------------------------------
     MGFB PROPERTIES, INC., et al.,:CASE NO.
 4                                 :5:19cv257-RH-MJF
              Plaintiffs,          :
 5   -vs-                          :
                                   :
 6   VIACOMCBS, INC., et al.,      :
                                   :
 7            Defendants.          :
     -------------------------------
 8
 9
                            -  -  -
10                    NOVEMBER 24, 2020
                            -  -  -
11
12
13
14            Oral videotaped deposition of JACKIE
15       FRENCH, taken via Zoom, at the location of
16       the witness, on the above date, before
17       Margaret M. Reihl, RPR, CCR, CRR, and Notary
18       Public, commencing at 10:07 a.m.
19
20
21
22            GOLKOW LITIGATION SERVICES
          877.370.3377  ph/917.591.5672 fax
23                 deps@golkow.com
24
25
```

```
 1   Q.      You don't associate trademarks with
 2   marketing?
 3   A.      No, I associate trademarks with a legal
 4   definition, and I associate the word brand with a
 5   marketing definition.
 6   Q.      As executive producer, are you aware of
 7   whether or not Viacom or MTV ever sought to apply
 8   for a trademark for the title of any of the shows on
 9   which you served as executive producer?
10           MS. KOHLMANN:  Objection to form.
11           You can answer.
12           THE WITNESS:  Sorry.  No, I don't
13           know whether they did or not.
14   BY MR. PERKINS:
15   Q.      Are you aware of whether or not Viacom owns
16   any trademarks?
17   A.      I'm not aware.
18   Q.      If Viacom or if MTV wanted to use certain
19   music in a TV show for which you were the executive
20   producer, what steps would be involved with that
21   process?
22           MS. KOHLMANN:  Objection as to form.
23           You can answer.
24           THE WITNESS:  We -- well, it's
25           usually on the -- it's usually the
```

```
 1   entity using the name MTV for a music broadcast?
 2              MS. KOHLMANN:  Objection as to form.
 3        You can answer.
 4              THE WITNESS:  Because MTV started out
 5        as a channel that aired music videos.
 6   BY MR. PERKINS:
 7   Q.   So people might view this other MTV music
 8   broadcast as somehow associated with the Viacom MTV
 9   broadcast station?
10              MS. KOHLMANN:  Objection as to form.
11        You can answer.
12              THE WITNESS:  Yes.
13   BY MR. PERKINS:
14   Q.   Do you think that the Viacom's rights in the
15   MTV trademark are valuable?
16              MS. KOHLMANN:  Objection.
17              THE WITNESS:  I'm sorry.  Can you say
18        it again.
19   BY MR. PERKINS:
20   Q.   Do you think that Viacom's rights in the MTV
21   trademark are valuable?
22              MS. KOHLMANN:  Objection.  You can
23        answer.
24              THE WITNESS:  I mean, yeah, I just
25        want to be clear that I know nothing about
```

```
 1              trademarks.  So, you know, if what you're
 2              asking me, these are sort of logical
 3              questions like, sure, is the MTV brand
 4              valuable, I imagine that it is.  I don't
 5              know that firsthand.  I don't have any
 6              knowledge of trademarks, and it's not any
 7              discussion I've ever been part of.  So
 8              that's why if I seem uncomfortable in
 9              answering these questions, I kind of am,
10              because I don't know anything about
11              trademarks.  But, sure, if, you know, I
12              would imagine that the MTV brand has value,
13              to answer your question.
14     BY MR. PERKINS:
15     Q.      Okay.  And I understand you're not an
16     attorney, and I'm not trying to ask you legal
17     conclusions.  I'm asking you questions based upon
18     your knowledge and your belief as having been in the
19     entertainment industry for close to three decades
20     and having been at MTV as a network executive and
21     executive producer for over 20 years, just to
22     clarify.
23              Do you understand?
24                 MS. KOHLMANN:  And I'm going to
25              object to that statement because I think
```

```
 1                THE WITNESS:  I don't know.  That
 2        would be up to -- I don't know -- the
 3        marketing team and lawyers, I think, to
 4        decide whether or not that would be
 5        objectionable.
 6  BY MR. PERKINS:
 7  Q.      What about wonderful shirts.com, do you know
 8  whether Viacom has licensed them to sell any
 9  Floribama branded -- Floribama Shore branded
10  merchandise?
11  A.      I don't know.
12  Q.      Do you believe that Viacom legal team would
13  object if there were another TV show with the name
14  Floribama in the title?
15                MS. KOHLMANN:  Objection as to form.
16        You can answer.
17                THE WITNESS:  Do I think we'd object,
18        or do I think if the lawyers would object if
19        there were another TV show called --
20  BY MR. PERKINS:
21  Q.      With the name Floribama in the title of the
22  show.
23  A.      I don't really want to speak for the
24  lawyers, but I would --
25  Q.      Speak for yourself.  Do you --
```

```
 1            You can answer.
 2                  THE WITNESS:  Yes, that would be one,
 3         that would be a reason.
 4    BY MR. PERKINS:
 5    Q.      And what rights do you believe MTV has in
 6    the name Floribama Shore or in the mark of Floribama
 7    Shore?
 8                  MS. KOHLMANN:  Objection.  You can
 9         answer.
10                  THE WITNESS:  What rights do I
11         believe we have?
12    BY MR. PERKINS:
13    Q.      Yes.
14    A.      I actually don't know.  But, honestly,
15    that's why I would go to the lawyers, and I would
16    say, you know, is this okay, or is this not okay?
17    Q.      Do you believe that MTV has certain rights
18    in the words Floribama Shore?
19                  MS. KOHLMANN:  Objection as to form.
20         You can answer.
21                  THE WITNESS:  Yeah, I don't know.
22         It's just when you say "rights," to me that
23         implies something that's legal, and I don't
24         know what the legality is around it.  I
25         mean, I could look at that and say that's
```

```
 1              annoying to me, but I don't know if that's a
 2              legal argument.
 3   BY MR. PERKINS:
 4   Q.        Well, if Redbubble made $5 million selling
 5   Floribama shirts or sweatshirts that weren't
 6   authorized by Viacom, do you think that would be a
 7   legal problem that Viacom would address?
 8                  MS. KOHLMANN:  Objection as to form.
 9                  THE WITNESS:  I would think that
10         Viacom would want to address that, yes.
11   BY MR. PERKINS:
12   Q.        And you think they'd want to address it
13   because they would assert they have rights in the
14   title Floribama Shore?
15                  MS. KOHLMANN:  Objection as to form.
16                  THE WITNESS:  Again, the rights -- I
17         feel like rights, I'm making a legal
18         judgment.
19   BY MR. PERKINS:
20   Q.        Okay.  Going back to French Exhibit 2, the
21   trademark search report.
22   A.        Okay, going back there.  Okay.
23   Q.        Do you see among the goods and services
24   listed on this search report is apparel?
25   A.        I do.
```

```
 1              C E R T I F I C A T I O N
 2                  I, MARGARET M. REIHL, a
 3        Registered Professional Reporter, Certified
 4        Realtime Reporter, Certified Court Reporter,
 5        Certified LiveNote Reporter and Notary
 6        Public, do hereby certify that the foregoing
 7        is a true and accurate transcript of the
 8        testimony as taken stenographically, by and
 9        before me, remotely, via Zoom, to the best
10        of my ability, and on the date hereinbefore
11        set forth.
12                  I DO FURTHER CERTIFY that I am
13        neither a relative nor employee nor attorney
14        nor counsel of any of the parties to this
15        action, and that I am neither a relative nor
16        employee of such attorney or counsel, and
17        that I am not financially interested in the
18        action.
19
20        [signature: Margaret M. Reihl]
21        ---------------------------------------------
          Margaret M. Reihl, RPR, CRR, CLR
22        CCR License #XI01497
          NCRA License #047425
23
24
25
```