# EXHIBIT 3

CONFIDENTIAL - Drew Tappon

```
 1              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF FLORIDA
 2                  PANAMA CITY DIVISION
 3

     MGFB PROPERTIES,      )
 4   INC., et al.,         )
                           )
 5           Plaintiffs,   )  Case No.
                           )  5:19cv257-RH-MJF
 6   v.                    )
                           )
 7   VIACOMCBS, INC., et   )
     al.,                  )
 8                         )
             Defendants.   )
 9
10           WEDNESDAY, OCTOBER 14, 2020
        **CONTAINS CONFIDENTIAL PORTION***
11
                       - - -
12
13          Remote videotaped deposition of
14   30(b)(6) designee of 495 Productions, Drew
15   Tappon, held at the location of the witness
16   in California, commencing at 10:03 a.m., on
17   the above date, before Carrie A. Campbell,
18   Registered Diplomate Reporter, Certified
19   Realtime Reporter, Illinois, California &
20   Texas Certified Shorthand Reporter, Missouri
21   & Kansas Certified Court Reporter.
22                     - - -
              GOLKOW LITIGATION SERVICES
23       877.370.3377 ph | 917.591.5672 fax
                 deps@golkow.com
24
25
```

```
 1                MS. KOHLMANN:  And I'm just
 2        going to advise the witness not to
 3        disclose inadvertently any potential
 4        attorney-client privilege that might
 5        have existed at the time between you
 6        and lawyers for MTV.
 7                THE WITNESS:  I do not know the
 8        entire process, no.
 9   QUESTIONS BY MR. PERKINS:
10        Q.     Do you know any part of the
11   process?
12        A.     From my chair, I took the
13   titles to our attorneys, who then put the
14   titles through some sort of legal procedure,
15   which I was not privy to.
16        Q.     Have you ever seen or heard of
17   a trademark search report?
18        A.     Yes, I have heard of a
19   trademark search report.
20        Q.     And what do you understand the
21   trademark search report to be?
22        A.     I believe a trademark search
23   report is a listing of attributes around a
24   title providing information about other
25   marks, other potential titles, any potential
```

```
 1      A.    Yes, pages 6 through 8, yes.
 2      Q.    Okay.  You reviewed those
 3  topics?
 4      A.    Yes, sir.
 5      Q.    And are you -- do you believe
 6  you're knowledgeable about each of the topics
 7  listed in the deposition notice, what's been
 8  marked as Exhibit 2, and listed on pages 6, 7
 9  and 8?
10      A.    Yes.
11      Q.    And you understand you're being
12  produced as a representative for both 495
13  Production Holdings, LLC, and 495 Production
14  Services, LLC; is that correct?
15      A.    Yes, that's correct.
16      Q.    Okay.  What is the relationship
17  between those two entities?
18      A.    495 Production Holdings is what
19  I would use freely -- I'm not sure if it's
20  the legal term -- as the parent company for
21  495 Production Services.
22            So anytime 495 is hired for a
23  project, everything is paid through 495
24  Holdings and then filtered down to Services
25  for specific shows.
```

```
 1              MS. KOHLMANN:  Objection.
 2              Excuse me.  I think -- that's
 3     an object -- I'm going to object.  A
 4     name is not necessarily a trademark.
 5              But you can go ahead.
 6              MR. PERKINS:  And, Susan,
 7     obviously you're free to make whatever
 8     objections you think are appropriate.
 9     I'm just going to remind you that
10     under the federal rules you are
11     limited to stating your objection, not
12     making speaking objections.
13  QUESTIONS BY MR. PERKINS:
14       Q.   Is the concern, as you
15  understand it -- and I know you're not a
16  lawyer -- that would prompt you to seek the
17  permission of a company to use its name, that
18  the company might feel it doesn't want to be
19  associated with your show or doesn't want to
20  give permission to have its name be used in
21  your show?  Is that the concern?
22              MS. KOHLMANN:  Objection as to
23     form.
24              THE WITNESS:  Again, thank you
25     for acknowledging that I'm not a
```

```
 1          lawyer.  I really have to rely solely
 2          on what they tell me.  And there could
 3          be any number of reasons why they
 4          wouldn't want to be affiliated or be
 5          used on our shows.
 6   QUESTIONS BY MR. PERKINS:
 7          Q.    Okay.  Since you've been back
 8   at 495, have you had occasion to clear title
 9   for any of the shows that you've been working
10   on?  Or consult with your counsel about
11   clearing title for any of the shows that
12   you've been working on?
13          A.    Yes.
14          Q.    And approximately how many
15   times has that happened since you've been
16   back at 495?
17          A.    That I can think of, two times.
18          Q.    Okay.  And what shows were
19   those?
20          A.    One is a show for Facebook
21   featuring Taraji P. Henson, and the other is
22   a preliminary search for a program for the
23   Discovery Networks about slacklining.
24          Q.    And who did you go to to clear
25   the title for those two shows?
```

```
 1   trademarks?
 2        A.   Yes.
 3        Q.   And is there a policy or
 4   procedure with respect to 495 applying for
 5   and maintaining its trademarks?
 6             MS. KOHLMANN:  I'm going to
 7        object as beyond the scope.
 8             But you can answer.
 9             THE WITNESS:  Anytime I would
10        need to have a trademark created or
11        cleared, I would go to our production
12        counsel and have them guide me as to
13        what to do.
14   QUESTIONS BY MR. PERKINS:
15        Q.   Okay.  And does 495 own a
16   trademark which has in the trademark the
17   numbers 495?
18             MS. KOHLMANN:  Again, I'm
19        gonna -- I'll allow him to answer some
20        questions, Fred, but this is beyond
21        the scope.
22             MR. PERKINS:  I think, Susan,
23        it comes within the scope of policies
24        and procedures for investigating
25        potential trademark infringement and
```

```
 1                     CERTIFICATE
 2
 3            I, CARRIE A. CAMPBELL, Registered
    Diplomate Reporter, Certified Realtime
 4  Reporter and Certified Shorthand Reporter, do
    hereby certify that prior to the commencement
 5  of the examination, Drew Tappon, was duly
    sworn by me to testify to the truth, the
 6  whole truth and nothing but the truth.
 7            I DO FURTHER CERTIFY that the
    foregoing is a verbatim transcript of the
 8  testimony as taken stenographically by and
    before me at the time, place and on the date
 9  hereinbefore set forth, to the best of my
    ability.
10
              I DO FURTHER CERTIFY that I am
11  neither a relative nor employee nor attorney
    nor counsel of any of the parties to this
12  action, and that I am neither a relative nor
    employee of such attorney or counsel, and
13  that I am not financially interested in the
    action.
14
15        _____
17        CARRIE A. CAMPBELL,
          NCRA Registered Diplomate Reporter
18        Certified Realtime Reporter
          California Certified Shorthand
19        Reporter #13921
          Missouri Certified Court Reporter #859
20        Illinois Certified Shorthand Reporter
          #084-004229
21        Texas Certified Shorthand Reporter #9328
          Kansas Certified Court Reporter #1715
22        Notary Public
23        Dated:  October 28, 2020
24
25
```