UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**MGFB PROPERTIES, INC.,**
**FLORA-BAMA MANAGEMENT,**
**LLC, and**
**FLORA-BAMA OLD S.A.L.T.S.,**
**INC.,**

        Plaintiffs,

          *v.*

**VIACOMCBS INC.,** *et al.*,

        Defendants.

Case No. 5:19-cv-257-RH/MJF

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION TO SET ASIDE THE JUDGMENT**
**UNDER RULE 60(b)**

Plaintiffs submit this reply memorandum in further support of their motion to

reopen this action. As promised, Plaintiffs' reply is targeted at specific points raised

by the Defendants and not at Defendants' entire submission. Plaintiffs' silence on

other points should not be viewed as a concession because the core of Plaintiffs'

argument was presented in their opening motion.

**I.   Defendants' argument that Plaintiffs could have done more to preserve**
     **their rights is beside the point.**

Defendants argued that the Plaintiffs could have or should have done

something more to "preserve their rights" after losing this case in this Court and at

the Court of Appeals. Specifically, Defendants suggest that Plaintiffs should have sought *en banc* review or Supreme Court review on direct appeal. (Opp. Br. 15–17.) These arguments raise the bar too high, and the steps suggested would have been futile.

First of all, Rule 60 does not require a litigant to take such steps, particularly when the arguments Defendants would have had Plaintiffs make were foreclosed by the law as it stood. Plaintiffs were required to argue that Defendants' First Amendment rights did not trump Plaintiffs' trademark rights, which they did, and having lost on summary judgment here, Plaintiffs took their shot at an appeal and lost again. Nothing in Rule 60 requires a litigant to pursue a position to the very end of the road, particularly where that litigant—having been told twice—had a solid belief that its position was not a winning one based on then-existing law. What Defendants are asking the Court to hold is that Plaintiffs somehow knew that the Eleventh Circuit sitting en banc, or the Supreme Court, would change the law, but failed to pursue that claim. This is not required by the rule, nor do Defendants cite any case that says so.

Both this Court and the Eleventh Circuit held that due to the First Amendment principles embodied in *Rogers v. Grimaldi*, Plaintiffs' valid trademark rights would have to give way to Defendants' rights of free expression. What no one could have reasonably foreseen was the Supreme Court's later clarification in *Jack*

2

*Daniel's* that, when a trademark defendant's infringing mark is used as a source identifier, the First Amendment values must defer to the Lanham Act. An appeal to the Eleventh Circuit en banc would have been futile under the then-existing state of the law.

Somewhat curiously, Defendants alternatively criticize Plaintiffs for not pursuing "a theory that they could have—but did not—advance" prior in this litigation: that same theory that because "MTV Floribama Shore" was used as a source identifier, the *Rogers* test did not apply. (Opp. Br. 17.) Given the constraints of the binding law at the time, it is hard to see how Plaintiffs could have done so. Again, Defendants essentially are criticizing Plaintiffs for failing to predict that the Supreme Court would change the law in an important way. (Even later in their brief, Defendants contort themselves more by claiming that the law did not actually change at all. Opp. Br. 18–25. So they both argue that Plaintiffs should have advanced this obviously available legal theory, and at the same time, that this same theory doesn't fit and is unavailing.)

It is true that Plaintiffs did not apprise the Eleventh Circuit of the pendency of the *Jack Daniel's v. VIP Products* case at the Supreme Court. The Eleventh Circuit heard argument in our case in September 2022. The *Jack Daniel's* petition for certiorari had been filed just one month earlier in August 2022, and the Supreme Court did not have argument on *Jack Daniel's* until March 22, 2023. From the

3

vantage point of the Eleventh Circuit oral argument in September 2022, or afterward, it was not self-evident that *Jack Daniel's* would have affected the claims at issue here. In fact, the petition for certiorari[1] focuses heavily on the fact that VIP Products was engaged in a parody of Jack Daniel's whiskey and whether such parody bars a dilution by tarnishment claim. Parody is not at issue in the case at bar. The petition also focused on a "litigation tourism" argument that the Ninth Circuit's decision needed to be reined in, lest infringing defendants concentrate their energies in that Circuit. Plaintiffs did not foresee that *Jack Daniel's* would issue in a way that affected Defendants' First Amendment interests. (Neither, apparently, did Defendants.)

In sum, Plaintiffs are not attempting to use Rule 60 to accomplish what a direct appeal could have done, and Plaintiffs reject Defendants' contention that they seek a "second bite at the apple." (Opp. Br. 17.) Had the Supreme Court's new pronouncement—that *Rogers v. Grimaldi* is not available to trademark defendants using marks as source identifiers—been within reasonable sight, Plaintiffs would have argued it.

---

[1] *Available at* https://www.supremecourt.gov/DocketPDF/22/22-148/233482/20220815135341762_Jack%20Daniels%20Petition%20for%20Writ%20of%20Certiorari_8.5.22_as%20refiled%208.15.22.pdf.

II.  **Plaintiffs' motion is timely, given the state of the law and the development of the law after *Jack Daniel's*.**

In seeking to reopen this action, Plaintiffs rely on *Jack Daniel's* as well as the growing number of cases following it. Rather than engaging in delay, Plaintiffs submit they have diligently followed the development of the law and are entitled to rest their motion on not only *Jack Daniel's*, but those cases that have increasingly clarified its impact. Those cases are discussed in Plaintiffs' motion and Plaintiffs will not reargue them today. (Incidentally, the Supreme Court *itself* continues to discuss *Jack Daniel's*, citing it a few times in a case that was just issued. *Vidal v. Elster*, No. 22-704 (U.S. June 13, 2024) (Lanham Act's clause barring trademarks based on individuals' names does not violate the First Amendment).)

As discussed above, Plaintiffs could not have predicted that *Jack Daniel's* would have adopted the new rule undercutting *Rogers v. Grimaldi* when the infringing mark is a source identifier. And the import of *Jack Daniel's* was by no means immediately clear when the decision came down in June 2023. Rather, its applicability to this case involving expressive titles has become clearer only as the lower courts have helped to elucidate it.

The legal press has covered the debate among courts and academics about the impact of *Jack Daniel's* and has been an important source of Plaintiffs' growing knowledge about the relevance of the case to their circumstances. (Ex. A, Ivan Moreno, *High Court's "Narrow" Jack Daniel's Opinion Having Big Impact*, Law360

(June 7, 2024).) One practitioner in the article was quoted as expressing confusion

with the decision because "the justices provided no 'specific test to instruct courts

how to decide whether an accused infringer has used a mark as a designation of

source,'" *id*. at 2, and said that what appeared initially to be a "narrow holding"

may have had a "more outsize impact than perhaps intended." *Id*. A UCLA law

professor suggested that "[i]f it's true that we can call the use of a mark in the title

of a television show a trademark use, *Rogers* is just dead. That doctrine is just

dead." *Id*. at 2. What comments like these highlight—a year on from the decision—

is that the impact and understanding of the case continues to evolve, and the full

impact was not immediately apparent the day the Supreme Court handed it down.

Plaintiffs did not delay this motion for a malicious purpose or to gain a tactical

advantage. Defendants cannot and did not point to increasing harm stemming from

the passage of time, particularly since Defendants are no longer making new

episodes of *MTV Floribama Shore* but simply airing old episodes. In their opposition

brief, Defendants did not argue that they had placed any reliance on settled

interests stemming from the resolution of this litigation; they did not argue that

they had done anything like entering into new contractual obligations or deeper

investments based on their belief that the "MTV Floribama Shore" trademark was

secure. And even if it is true that the financial tab for the corrective advertising

Plaintiffs seek is accruing, so is the harm Defendants are causing by having their

infringing show "continue[] to be available on multiple streaming platforms." (Opp. Br. 12.)

Defendants also claim that reopening this action would prejudice them if "evidence has been lost, memories have faded, and witnesses have disappeared." (Opp. Br. 11.) Whatever the merits of that argument may be in a vacuum, it surely does not apply here where the claims and defenses were fully litigated, discovered, and preserved. Every deposition of every relevant witness was videoed. There are no lost memories or evidence. The entire action was headed for trial on a fully preserved record.

## III.  Defendants' infringing mark, "MTV Floribama Shore," is certainly used as a source identifier.

In their opposition brief, and particularly on pages 20–24, Defendants attempt to argue that their "Floribama Shore" mark is not used as a source identifier. This is important to the Defendants because if true, it would allow them to claim that *Jack Daniel's* is therefore not controlling.

As part of their argument, Defendants claim that the logic of the Eleventh Circuit supports them. Defendants point to that part of the Court of Appeals' opinion that Plaintiffs' "Flora-Bama" mark was "being used to identify what the song or the book was about, rather than who produced it," *MGFB*, 54 F.4th at 683, and suggest that the same treatment ought to apply to Defendants' "Floribama" mark.

However creative that argument may be, it is fallacious. Defendants' use of "Floribama"—particularly within its full context, "MTV Floribama Shore"—*is* source-identifying in a way different from what the Eleventh Circuit said about Plaintiffs' mark. Defendants' argument is erroneous for two reasons.

First, it is simply possible that Plaintiffs failed to convince the Eleventh Circuit that "Flora-Bama" was source-identifying when used in creative works which the court felt were tangential to Plaintiffs' main business interests, while Defendants' "Floribama" *is* source-identifying when it comes to *Defendants'* entire product—a television series. Just because Plaintiffs did not convince that court, does not mean that Defendants benefit from the same analysis. These are inherently different questions that turn on the specific facts of each claimed mark. And it certainly is hypocritical of Defendants to hide behind this part of the Eleventh Circuit's opinion today when, previously, Defendants argued that those same expressive works really had little or nothing to do with Plaintiffs' core business. Here, Defendants' use of "Floribama" in their mark in the title of their TV show *is* directly tied into their core business.

Second, Defendants would have this Court improperly slice their mark into pieces and consider their mark outside of the context which Defendants actually use it. This violates the law's anti-dissection rules, which require that courts must consider a mark as a whole. *E.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Longhorn*

*Steaks, Inc.*, 106 F.3d 355, 362 (11th Cir. 1997) ("validity of Plaintiff's LONE *

CAFE mark is to be determined by viewing the trademark as a whole and not just

the words 'Lone Star'").

A mark's protectability under the Lanham Act "depends on its meaning to

consumers." *United States PTO v. Booking.com, B.V.*, 140 S. Ct. 2298, 2306 (2020).

The Supreme Court held that even a mark containing a generic word like

"booking" can be trademarked and deserving of protection under the Lanham Act

if put into a context—like "Booking.com"—that holds distinctive meaning and is

source-identifying for consumers. *Id.* at 2306. "[F]or a compound term, the

distinctiveness inquiry trains on the term's meaning as a whole, not its parts in

isolation." *Id.* at 2304. That applies to "MTV Floribama Shore" (regardless of

Defendants' claim that Floribama is a generic geographic term). Plainly, since parts

of the mark denote a source, the mark as a whole does too. Here, "Shore" denotes

membership in a series of "Jersey Shore"-type TV shows, and "MTV" is an

extremely strong mark for a TV network. Unquestionably, "MTV Floribama

Shore," as a whole denotes the source of Defendants' goods. *See also In re*

*Steelbuilding.com*, 415 F.3d 1293, 1298–99 (Fed. Cir. 2005) (reversing PTO's denial

of trademark rights in "Steelbuilding.com" where PTO considered the mark to be

separate, generic components "steel" and "building").

Plaintiffs' position finds support in recent articles in the legal press discussing the *Jack Daniel's* doctrine. Two practitioners—associated with defending media clients in such cases—argued that "courts might ask, does the title in and of itself associate the film with a production house, distributor, studio or filmmaker?" (Ex. B, Hardy Ehlers and Neema Sahni, *Trademark in Artistic Works 1 Year After Jack Daniel's*, Law360 ( June 10, 2024).) Even under these defense practitioners' view of *Jack Daniel's*, the answer is, yes: "MTV Floribama Shore" *does* associate the TV show with a specific distributor.

Lastly, Defendants' attempt to relegate voluminous evidence and admissions in the record that establish their use of the mark was a trademark use falls flat. (Mot. 8–10.) That's where Plaintiffs put forward evidence such as that Defendants incorporated the MTV trademark into their "MTV Floribama Shore" mark, and testimony where Defendants' witnesses said they would act to enforce Defendants' mark if it were infringed. In responding to this motion, Defendants ignore most of this evidence, or attempt to kick it away as "out-of-context snippets . . . from two non-lawyers." (Opp. Br. 23.) In fact, this testimony was binding on Defendants directly, as the Rule 30(b)(6) testimony of their designees on topics including the "conception, selection, creation, design, development and/or adoption" of the "Floribama" and "Floribama Shore" marks. Defendants can't run from their own testimony here; they were (b)(6) depositions, and the answers are binding on them.

*Barham v. Royal Caribbean Cruises, Ltd.*, No. 20-22627-CIV, 2022 WL 4465407, at

*10 (S.D. Fla. Sept. 26, 2022).

In conclusion, it is clear that Defendants here are using their mark as a source

identifier and are subject to *Jack Daniel's*' new rule.

Respectfully submitted,

Dated: June 14, 2024

/s/ William F. Cash III
William F. Cash III (FBN 68443)
**LEVIN, PAPANTONIO, RAFFERTY,
PROCTOR, BUCHANAN, O'BRIEN,
BARR AND MOUGEY, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Phone: 850-435-7059
bcash@levinlaw.com
*Counsel for the Plaintiffs*

## CERTIFICATE UNDER LOC. R. 7.1(F)

The total word count of this entire document is 2,425 words, which is less than

the 3,200 words granted by the Court's June 4, 2024 order.

/s/ William F. Cash III