

Portfolio Media. Inc. | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

## High Court's 'Narrow' Jack Daniel's Opinion Having Big Impact

By **Ivan Moreno**

Law360 (June 7, 2024, 8:09 PM EDT) -- When the U.S. Supreme Court decided a year ago that the maker of a squeaky dog toy that looks like a Jack Daniel's whiskey bottle had no free speech protections against trademark infringement claims, the justices described their holding as narrow, but lawyers and academics are now suggesting the opinion is having broader implications.



The U.S. Supreme Court ruled last year that VIP Products' chewy dog toy, left, was not entitled to First Amendment protection against trademark infringement claims for parodying Jack Daniel's whiskey bottles, right. (AP Photo/Jessica Gresko)

In a unanimous decision penned by Justice Elena Kagan, the justices concluded on June 8, 2023, that VIP Products Inc., the dog toy maker, could not avail itself of the so-called Rogers test, a free speech doctrine that protects defendants in trademark disputes. The difference in this case, according to the justices, was that VIP was admittedly using Jack Daniel's marks as its own — going as far as registering the name of its toy, "Bad Spaniels."

"That kind of use falls within the heartland of trademark law," Justice Kagan wrote.

In saying VIP was not entitled to that escape valve, the justices said the company could not avoid a traditional likelihood of confusion analysis in district court — where the parties are back, duking it out in an **Arizona court** nearly a decade after the case started.

The Rogers test has long been a powerful tool for defendants to quickly squelch trademark suits, and the high court's opinion emphasized that its conclusion does not disturb the doctrine, which originated in the Second Circuit in 1989 with Rogers v. Grimaldi 🔴. That case involved movie legend Ginger Rogers, who lost her lawsuit against the makers of "Ginger and Fred," a spoof of movies starring Rogers and Fred Astaire. At the time, the appeals court held in favor of the moviemakers that certain works, including movie titles, are protected by the First Amendment against trademark infringement claims, provided they had expressive value and did not explicitly mislead consumers.

The issue with the justices' conclusion that the Rogers test cannot apply to cases where an alleged infringer is using someone else's trademark as a trademark, as the Supreme Court put it in the Jack Daniel's case, is that what constitutes trademark use "is totally and deeply controversial," said Mark McKenna, a professor at UCLA School of Law's Institute for Technology, Law and Policy and vice dean of faculty and intellectual life.

"It's kind of you know it when you see it," said McKenna.

Complicating matters, the justices provided no "specific test to instruct courts how to decide whether an accused infringer has used a mark as a designation of source," said Hardy Ehlers, special counsel at Covington & Burling LLP.

That's led to some lower court decisions that have left some attorneys and academics scratching their heads, ne noted.

"Based on the last year, I would say [the justices' Jack Daniel's decision] might be remembered for purporting to issue a narrow holding, but having a more outsize impact than perhaps intended," Ehlers said.

**"Rogers Is Just Dead"**

Four months after the Supreme Court's opinion, Warner Bros. Discovery Inc., the creator of the "Ugliest House in America" show, raised the Rogers defense in trying to persuade a Delaware federal court to dismiss a trademark infringement suit from real estate company HomeVestors of America, which runs its own annual contest for ugliest house of the year and owns more than 30 registrations for the word "ugly" in connection to houses.

A Delaware magistrate judge **recommended** that WBD's motion to dismiss be denied, rejecting its arguments that the Jack Daniel's decision did not concern "the descriptive title of a television series" but rather branded consumer products and therefore should not affect the Delaware case.

The magistrate judge said the court was not determining whether WBD's show title was source-identifying, but simply whether its First Amendment defense warranted early dismissal of the suit. The magistrate judge's recommendations, which a district judge adopted in December, acknowledged that the fact patterns in Jack Daniel's differed from those in the present dispute.

"However, neither party could articulate a test or method for determining, at the motion to dismiss stage or otherwise, whether an allegedly infringing mark is being used in a source-identifying way," the magistrate judge said. That means both parties must resolve their dispute with the court applying a likelihood of confusion analysis.

Jane Shay Wald, a partner emeritus at Irell & Manella LLP who chairs the firm's trademark practice, cited the HomeVestors case as an example of the Jack Daniel's opinion being applied too broadly.

"Despite the fact that this whole doctrine of Rogers v. Grimaldi arose from a title context, now we're seeing cases where the courts are saying titles are descriptive and you can't use the Rogers analysis," she said.

In another case, authors Daniel E. Davis and Peter Conti sued Amazon and others in 2021 for making a movie called "Gringo" after Davis and Conti had published a book with the same name that shared a similar plot with the movie. The defendants successfully raised the Rogers doctrine to dismiss the suit twice before the Ninth Circuit remanded the case for reconsideration in light of the Jack Daniel's decision.

This time, the California federal court where Davis and Conti filed their suit did not apply the Rogers test after concluding that the book had acquired secondary meaning and instead conducted a likelihood of confusion analysis. The court again decided in favor of Amazon and the other defendants.

That the Rogers analysis may not be an option in some cases for defendants to quickly escape trademark complaints involving titles is notable because it raises the question of what could have happened if the Rogers v. Grimaldi case were decided today under the high court's current guidance.

"The irony is that the courts that have taken this view that titles are source indicators could well have said that 'Ginger and Fred' was a source indicator," Wald said, and therefore the moviemakers would not have been entitled to the First Amendment protection that became the Rogers test.

UCLA's McKenna put it more bluntly.

"If it's true that we can call the use of a mark in the title of a television show a trademark use, Rogers is just dead. That doctrine is just dead," McKenna said.

**Tougher Road for Trademark Defendants**

The Rogers test has been a formidable defense to overcome. Consider the history of the dispute between Jack Daniel's and VIP Products: When the case was first tried nearly 10 years ago, a district court judge found the Rogers test did not apply, and after a bench trial, it decided in favor of Jack Daniel's.

The Ninth Circuit reversed, saying the Rogers test must apply because the dog toy was expressive and had a humorous message. Applying Rogers, the district court granted summary judgment to VIP and the Ninth Circuit affirmed, setting up Jack Daniel's appeal to the Supreme Court.

"I think the [Supreme Court] correctly identified that it didn't make much sense to interpret the Rogers test as creating such an incredibly high burden on trademark plaintiffs," said Jordan Feirman, intellectual property counsel at Skadden Arps Slate Meagher & Flom LLP.

But Feirman said the Ninth Circuit went too far in extending the Rogers doctrine to anything that had any kind of humorous message.

"What we've seen is it's been tougher for defendants to get trademark infringement cases dismissed on these kinds of free speech, First Amendment grounds at the pleading stage because courts are appropriately considering, Is this truly source identifying or not?" Feirman said.

The high court did provide some guidance regarding what it considers trademark use, according to Feirman, but he said "there are gray areas and certain contexts where courts may struggle a bit to understand exactly whether something constitutes a trademark use or a non-trademark use."



The Second Circuit in December said the shoes MSCHF Product Studio Inc. created to mimic Vans' Old Skool shoes (below) did not qualify for First Amendment protection against trademark infringement claims because MSCHF's shoes "evoked" elements of Vans trademarks. (Court Documents)

In another post-Jack Daniel's case, the Second Circuit in **December** upheld a New York federal judge's ruling allowing Vans Inc. to enforce a restraining order against a Brooklyn art collective that made shoes called "Wavy Baby," a parody of Vans' Old Skool Shoe. In deciding the case, the appeals court cited part of the Jack Daniel's opinion that said First Amendment protections did not apply "if the alleged infringer was 'trading on the good will of the trademark owner to market its own goods."

Feirman said that part of the opinion is among the guidance the Supreme Court provided for analyzing what constitutes trademark use.

"That language itself is very broad, and so I think how courts take that language and some of the other brief statements made by the [Supreme Court] about whether something is a trademark use or not is really going to determine what Jack Daniel's really means four or five or six years from now," Feirman said.

In an ongoing dispute, Disney Industries Inc. is fighting a Texas federal suit from Diece-Lisa Industries Inc., which accuses Disney of infringing the company's trademarks for "Lots of Hugs" stuffed animals by featuring a character named "Lots-o'-Huggin' Bear" in "Toy Story 3." Disney won several rounds in the lower courts using the Rogers test, but after the Jack Daniel's decision, the Supreme Court granted a petition from Diece-Lisa Industries and **remanded** the case.

J. Michael Keyes, a partner at Dorsey & Whitney LLP and co-head of its trial group, said he thinks the Supreme Court saw the potential harm for trademark owners if VIP Products were allowed to use the Rogers defense.

"I think what the court foresaw here potentially is if it didn't side with Jack Daniel's, then that opens up any brand under the sun to be the target of parody, and there's nothing that the brand could do about it," Keyes said.

Although Keyes said it's too early to get a full picture of how courts are interpreting the Jack Daniel's decision, he predicts that "we're going to see a lot fewer parodies along the lines of what we've seen."

Other attorneys see another possible path.

"I fancy myself an IP licensing professional, and so I'm always trying to promote licensing," said Jonathon Hance, a partner at Bracewell LLP. "I think [the decision] is the kind of thing that could promote additional licensing of brands into films."

--Editing by Alanna Weissman.

All Content © 2003-2024, Portfolio Media, Inc.