Case 5:19-cv-00257-RH-MJF    Document 213-2    Filed 06/14/24    Page 1 of 6



Portfolio Media. Inc. | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Trademark In Artistic Works 1 Year After Jack Daniel's

By **Hardy Ehlers and Neema Sahni** (June 10, 2024, 2:31 PM EDT)

Last June, in Jack Daniel's v. VIP Products LLC, the U.S. Supreme Court **held that** the First Amendment did not protect a whiskey bottle-shaped dog toy from trademark infringement claims brought by Jack Daniel's, the owner of the trade dress that the toy evoked.

Over the past year, courts have applied Jack Daniel's to deny First Amendment protection to titles of artistic works — like movies and TV shows — that had previously enjoyed protection from infringement claims. And they have done so in ways that are seemingly inconsistent with Jack Daniel's and the authority it left intact.

Below, this article reminds readers of the Jack Daniel's ruling and the context in which it arose, highlights examples of courts applying Jack Daniel's inconsistently to deny First Amendment protection to true artistic works, offers post-Jack Daniel's guidance for dismissing claims alleging that film and TV titles infringe trademarks.



Hardy Ehlers



Neema Sahni

**The Rogers Test and Jack Daniel's Ruling on Its Scope**

For decades, courts around the country have applied a test from the U.S. Court of Appeals for the Second Circuit's Rogers v. Grimaldi 1989 decision to decide whether the First Amendment protects artistic works from trademark infringement claims.

Under Rogers, the Lanham Act does not apply to uses of marks in artistic works unless they have no artistic relevance to the work or explicitly mislead as to the source or content of the work.[1]

The U.S. Court of Appeals for the Ninth Circuit developed a protective articulation of the test, requiring artistic relevance to be only "above zero" and, absent extraordinary circumstances, an overt statement that the plaintiff is the source of the work to satisfy the second prong.[2]

The language used by the Ninth Circuit to describe a use entitled to Rogers protection also implicitly broadened its scope over time — by first referring to an "artistic work,"[3] then to an "expressive work",[4] and finally, to uses "communicating ideas."[5]

As a result, the Ninth Circuit applied Rogers to a "Bad Spaniels" dog toy designed to look like a Jack Daniel's bottle, because it conveyed a humorous message through an irreverent representation of the mark.[6]

Enter the Supreme Court. The Jack Daniel's court disagreed with the Ninth Circuit that the toy was entitled to Rogers protection simply because it communicated a humorous message.

The court held that "Rogers does not apply when the challenged use of a mark is as a mark" — that is, to "identify the source" of the product — even if that use is otherwise expressive.[7]

There, it was clear that the defendant used Bad Spaniels as a mark because:

- Its complaint admitted to using the "Bad Spaniels" trademark;

- It used the Bad Spaniels mark on the product's hangtag where source-identifiers are located; and

- It registered and enforced similar marks for toys in the same product line.

Apart from relying on these specific facts in its "mark as a mark" analysis, the court did not otherwise set forth a test, factors, or any other guidance for determining when marks are used as a mark and when they are not.[8]

**Lower Courts' Inconsistent Application of Jack Daniel's Over the Last Year**

While the Jack Daniel's court expressly declined to "decid[e] whether Rogers has merit in other contexts," it did not contemplate that its new "mark as a mark" question would strip First Amendment protection from true artistic works to which the Rogers test had routinely been applied.

For example, the court pointed out that "if we put this case to the side, the Rogers test has applied only to cases involving 'non-trademark uses'—or otherwise said, cases in which 'the defendant has used the mark' at issue in a 'non-source-identifying way.'"[9]

And yet, relying on Jack Daniel's, lower courts have already declined to apply Rogers to titles of television shows and movies. Without a specific test from Jack Daniel's as to how to decide whether a mark is being used as a mark, they have made that determination in ways that are seemingly inconsistent with both Jack Daniel's and the authority it left intact.

For example, in HomeVestors of America Inc. v. Warner Bros. Discovery Inc. last December, the U.S. District Court for the District of Delaware considered whether a TV show titled "Ugliest House in America" infringed an "Ugliest House of the Year" mark used by a home reseller in connection with a yearly home renovation contest.

Concluding the show did use the mark as a source identifier and that the Rogers test should not apply, the HomeVestors court cited several factors, including that the marks were similar, that both parties had run a contest related to the ugliest homes, that internet searches for one returned results for the other, and that the parties were competing for houses and homeowners.[10]

Anyone who has litigated the merits of a trademark infringement claim will recognize most of the likelihood-of-confusion factors in this analysis, including similarity of the marks, marketing channels, proximity of goods, and evidence of actual confusion. But this cannot be what Jack Daniel's intended.

As the Supreme Court acknowledged, Rogers is a threshold test that, if passed, "offers an escape from the likelihood-of-confusion inquiry."[11] It makes little sense to use a likelihood-of-confusion type test in order to determine whether to conduct a likelihood-of-confusion inquiry.

The HomeVestors analysis also did not directly engage with the question of whether the mark at issue was being used as a source identifier — i.e., to tell the public who made the product — the actual inquiry commanded by Jack Daniel's.

In Davis v. Amazon.com Inc., the U.S. District Court for the Central District of California did consider this source identification question in assessing whether a movie titled "Gringo" infringed the plaintiff's alleged trademark in "Gringo," the title of the plaintiff's book.[12] But again, that court used another preexisting trademark test — secondary meaning — as a proxy for the issue.

As Davis observed, titles of single creative works can be protected upon a showing of secondary meaning — acquired when a significant number of people associate the title with a single, if unknown, source — and the court determined that this "finding of secondary meaning is largely congruent with source identification for the purposes of applying Jack Daniel's."[13] The court found secondary meaning and thus declined to apply Rogers.

This focus on secondary meaning — particularly for a single, one-off work not clearly tied to other

products, nor part of a larger franchise or series — does not squarely address the question posed by Jack Daniel's.

True, the secondary meaning test could arguably be relevant to the Jack Daniel's "mark as a mark" inquiry insofar as it bears on whether a title qualifies as a mark at all. But using it as a proxy for source identification could lead to seemingly irrational results.

For example, in evaluating secondary meaning for film and TV titles, courts often look to factors like critical acclaim, unsolicited press, advertising and the like. This means that a film or TV title could have no secondary meaning upon release — and thus qualify for First Amendment protection under Jack Daniel's as non-source-identifying — but then lose First Amendment protection the moment it achieves commercial and critical success.

Furthermore, in focusing on the public's view of the mark, the secondary-meaning question does not engage directly with Jack Daniel's inquiry of whether the "accused infringer has used a trademark to designate the source of its own goods."[14]

In framing the question that way, the Supreme Court suggests that the focus should be on the intent behind the defendant's use of the mark, noting, for example, that Rogers does not apply "when the defendant may be trading on the good will of the trademark owner to market its own goods."[15]

As another example, in two cases involving expressive uses of trade dress — Vans Inc. v. MSCHF in the Second Circuit and MGA Entertainment Inc. v. Clifford T.I. Harris in the Central District of California, both last year — the courts conducted detailed comparisons of the product designs to find the challenged use was source-identifying.[16]

Both cited a portion of Jack Daniel's in which the court describes the Jack Daniel's bottle and the various ways in which the Bad Spaniel's toy evoked it.

Critically, this portion of Jack Daniel's appears before the court announced the source identification rule and performed the source identification analysis — which did not refer back to, depend upon or mention any similarities between the two product designs.[17]

In nonetheless relying solely on design similarities to determine whether the challenged use was source-identifying, these courts do not fully address the Jack Daniel's question, which focuses on how the defendant uses the mark.

**Guidance for Dismissing Infringement Claims Against Artistic Works After Jack Daniel's**

As the above demonstrates, threshold defenses to infringement claims concerning film and TV titles should in theory be just as available as they were before Jack Daniel's. However, courts may be less predictable now in ruling on them.

Below, we offer some guidance and precautions for relying on Rogers in the aftermath of Jack Daniel's.

First, defendants should explain what source identification means for artistic works rather than seek to avoid the question altogether. Courts have not been receptive to the argument that Jack Daniel's — a case about a dog toy — simply does not apply to film and TV titles,[18] and nowhere in the opinion does the court limit its reasoning to, or even refer to, commercial or consumer goods.

Defendants should instead articulate a view as to what source identification means for film and TV titles and how to apply Jack Daniel's in that context. Namely, the relevant source for a film or TV show should be understood as the copyright owner, or the producer or distributor of the work.

To assess whether a title is source-identifying, then, courts should be asking whether the title seeks to identify that kind of source — even if unknown.

For instance, courts might ask, does the title in and of itself associate the film with a production house, distributor, studio or filmmaker? Or does the title seek to trade on the goodwill of some other source?

That the relevant source for an artistic work should be understood as the producer or distributor of the work is not a new notion. For example, in Dastar Corp. v. Twentieth Century Fox Film Corp., in evaluating a false designation of origin claim under the Lanham Act, the Supreme Court held that TV shows have one source: the "producer of the tangible goods that are offered for sale" — that is, the "publishing house ... or the video producer."[19]

Similarly, when courts analyze whether the title of a movie or expressive work has obtained secondary meaning, they look to whether the public associates the title with the person or entity who can control the work's use.[20]

So in order for a title or other expressive use to be source-identifying, it needs to convey the impression that the artistic work comes from a particular kind of source as distinguished from other sources. Titles almost never convey such a message, and consumers don't expect them to.

As Rogers explains, "[t]hough consumers frequently look to the title of a work to determine what it is about, they do not regard titles of artistic works in the same way as the names of ordinary commercial products."[21]

This principle may be lessened in the context of modern tentpole movie or TV franchises and associated consumer products, for which consumers often associate certain titles with certain studios, producers, and filmmakers, and the titles themselves are intended to trade on that currency.

Second, defendants moving to dismiss under Rogers should consider moving on likelihood of confusion as well, even though granting a "likelihood of confusion" motion at the pleading stage has, to date, been "the exception, not the rule,"[22] since that inquiry asks the court to balance seven or eight factual factors.

Perhaps recognizing that its ruling might otherwise permit meritless infringement actions to proceed, Jack Daniel's provided, in a footnote, that courts should dismiss complaints that fail to plausibly allege a likelihood of confusion.

And the example it gives of such a complaint — where there is no plausible confusion "because of dissimilarity in the marks or various contextual considerations" — rests on just a single likelihood-of-confusion factor.[23]

Before Jack Daniel's, some courts had indeed dismissed infringement claims at the 12(b)(6) stage based on a single factor.[24] These included dismissals:

- Because a consumer survey company was clearly not going to get into network television;[25]

- Because a security software program is vastly different from a major motion picture;[26] or

- Simply because no reasonable consumer would think the owner of the rights to a music album was the origin or source of a movie.[27]

After Jack Daniel's, more courts should be willing to follow suit, especially for one-off works that would have been clear candidates for Rogers protection. In Davis, for example, after finding that the "Gringo" film did not qualify for Rogers protection, the court dismissed the complaint for failure to plausibly allege a likelihood of confusion.

The court began its analysis with the Jack Daniel's 12(b)(6) footnote and dismissed despite finding that three factors supported a likelihood of confusion.[28] And in the past year, several other courts not dealing with Rogers issues have cited the Jack Daniel's footnote to issue 12(b)(6) dismissals of trademark infringement claims.[29]

Finally, owners of artistic works should weigh the impact of registration and enforcement actions on Rogers defenses. The enforcement of the "Bad Spaniels" mark, and registration of similar marks, was an all-but-dispositive fact in Jack Daniel's.

Owners of artistic works who may be confronted with confusing uses of their titles should weigh the impact of a registration or an enforcement action on the availability of a First Amendment defense in future defensive lawsuits.

For example, in Activision Publishing Inc. v. Warzone.com LLC, the Central District of California found in April that Activision's use of "Warzone" in a game titled Call of Duty: Warzone was not protected under Rogers, in large part due to its registration of "Warzone."[30]

---

*Hardy Ehlers is special counsel at Covington & Burling LLP.*

*Neema Sahni is a partner and co-chair of the commercial litigation and entertainment and media practices at the firm.*

*The opinions expressed are those of the author(s) and do not necessarily reflect the views of their employer, its clients, or Portfolio Media Inc., or any of its or their respective affiliates. This article is for general information purposes and is not intended to be and should not be taken as legal advice.*

[1] Rogers v. Grimaldi , 875 F.2d 994, 999 (2d Cir. 1989).

[2] E.g., Gordon v. Drape Creative, Inc. , 909 F.3d 257, 268–69 (9th Cir. 2018).

[3] Mattel, Inc. v. Walking Mountain Prods. , 353 F.3d 792, 807 (9th Cir. 2003); E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc. , 547 F.3d 1095, 1099–100 (9th Cir. 2008).

[4] Brown v. Elec. Arts, Inc. , 724 F.3d 1235, 1241–42 (9th Cir. 2013).

[5] Gordon v. Drape Creative, Inc. , 909 F.3d 257, 268–69 (9th Cir. 2018).

[6] VIP Prod. LLC v. Jack Daniel's Properties, Inc. , 953 F.3d 1170, 1174–75 (9th Cir. 2020).

[7] Jack Daniel's Properties, Inc. v. VIP Prod. LLC , 599 U.S. 140, 163 (2023).

[8] Id. at 159–60.

[9] Id. at 155–56.

[10] HomeVestors of Am., Inc. v. Warner Bros. Discovery , 2023 WL 6880341, at *5 (D. Del. Oct. 18, 2023), report and recommendation adopted, 2023 WL 8826729 (D. Del. Dec. 21, 2023).

[11] Jack Daniel's, 599 U.S. at 157 (emphasis added).

[12] Davis, et al. v. Amazon.com, Inc. , et al., 2023 WL 8113299, at *5 (C.D. Cal. Nov. 2, 2023). The court had previously dismissed the plaintiff's claims under Rogers in two separate orders, which were appealed and then vacated by the Ninth Circuit after Jack Daniel's for further consideration in light of the Supreme Court's opinion.

[13] Id.

[14] Jack Daniel's, 599 U.S. at 145.

[15] Id. at 156.

[16] Vans, Inc. v. MSCHF Prod. Studio, Inc. , 88 F.4th 125, 138 (2d Cir. 2023); MGA Ent. Inc. v. Harris , 2023 WL 8896883, at *4 (C.D. Cal. Dec. 8, 2023).

[17] Jack Daniel's, 599 U.S. at 148-50, 159-60.

[18] Davis, 2023 WL 8113299 at *5 (C.D. Cal. Nov. 2, 2023); HomeVestors, 2023 WL 6880341, at

*3.

[19] Dastar Corp. v. Twentieth Century Fox Film Corp. , 539 U.S. 23, 30–34 (2003).

[20] 2 McCarthy on Trademarks and Unfair Competition § 10:10 (5th ed.)

[21] Rogers, 875 F.2d at 1000.

[22] 6 McCarthy on Trademarks and Unfair Competition § 32:121.50 (5th ed.).

[23] Jack Daniel's, 599 U.S. at 157 n.2.

[24] 6 McCarthy on Trademarks and Unfair Competition § 32:121.75 (5th ed.)

[25] Murray v. Cable Nat. Broad. Co. , 86 F.3d 858, 861 (9th Cir. 1996),

[26] Fortres Grand Corp. v. Warner Bros. Ent. Inc. , 763 F.3d 696, 702-03 (7th Cir. 2014).

[27] Eastland Music Grp., LLC v. Lionsgate Ent., Inc. , 707 F.3d 869, 872 (7th Cir. 2013).

[28] Davis, 2023 WL 8113299, at *6-10.

[29] Medieval Times U.S.A., Inc. v. Medieval Times Performers United , 2023 WL 6307464, at *6 (D.N.J. Sept. 28, 2023); Trader Joe's Co. v. Trader Joe's United , 2024 WL 305697, at *5 (C.D. Cal. Jan. 12, 2024).

[30] Activision Publ'g, Inc. v. Warzone.com, LLC , No. 2:21-cv-03073-FLA-JC, ECF No. 69 (C.D. Cal. April 11, 2024). The court had previously granted summary judgment against the infringement claims under Rogers, which order was vacated by the Ninth Circuit after Jack Daniel's for further consideration in light of the Supreme Court's opinion.

---

All Content © 2003-2024, Portfolio Media, Inc.