IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MGFB PROPERTIES, INC. et al.,

    Plaintiffs,

v.                                CASE NO. 5:19cv257-RH-MJF

VIACOMCBS INC. et al.,

    Defendants.

_____/

**ORDER DENYING THE MOTION
TO SET ASIDE THE JUDGMENT**

    This trademark case involved the regionally famous *Flora-Bama* lounge and entertainment complex, on the plaintiffs' side, and the later-created, nationally broadcast television series *MTV Floribama Shore*, on the defendants' side. The defendants prevailed in this court on summary judgment, and the United States Court of Appeals for the Eleventh Circuit affirmed. The plaintiffs did not seek review in the Supreme Court. The case was over.

    Both here and in the Eleventh Circuit, the parties crossed swords on the meaning and import of *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), a leading decision on the application of trademark law to artistic works, and its progeny.

Later, after the Eleventh Circuit had decided this case and the deadline for a certiorari petition had passed, the Supreme Court weighed in, putting a gloss on *Rogers* that neither side had advocated in this case. *See Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023).

The plaintiffs have moved for relief from the judgment under Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). The plaintiffs assert *Jack Daniel's* changed the law and that they now could prevail on the merits.

**I. Rule 60(b)(5)**

The plaintiffs first invoke Rule 60(b)(5), which allows relief from a judgment if "applying it prospectively is no longer equitable." The judgment here was a dismissal of the plaintiffs' claims—nothing more. The law of the circuit is that a dismissal is not "prospective" within the meaning of Rule 60(b)(5). *See Gibbs v. Maxwell House*, 738 F.2d 1153, 1155–56 (11th Cir. 1984); *see also Cook v. Birmingham News*, 618 F.2d 1149, 1152–53 (5th Cir. 1980). This view is widely accepted across the circuits. *See Tapper v. Hearn*, 833 F.3d 166, 171 (2d Cir. 2016) (collecting cases from the First, Third, Fourth, Fifth, Ninth, Tenth, and Eleventh (*Gibbs*) Circuits).

Regardless of the import of *Jack Daniel's*, the plaintiffs cannot obtain relief under Rule 60(b)(5).

## II. Rule 60(b)(6)

The plaintiffs also invoke Rule 60(b)(6), which allows relief from a judgment for "any other reason that justifies relief." This "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984) (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)). The movant "has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Id*. at 680 (quoting *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932)).

The Eleventh Circuit has said that "something more than a 'mere' change in the law is necessary to provide the grounds for Rule 60(b)(6) relief." *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987). In extraordinary circumstances, a change in law can warrant relief, but it is "hardly extraordinary" when, after a case has been decided based on a district or circuit court's interpretation of a statute, the Supreme Court adopts a different interpretation. *Gonzales v. Crosby*, 545 U.S. 524, 536 (2005). "Many courts have denied relief" based on a change in decisional law. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2864.

This makes sense. Routinely allowing relief based on a change in law would invite chaos. The Supreme Court renders decisions every term that change the law of one or more circuits. Indeed, circuit splits provide the clearest ground for the

Court to take a case. If every decision resolving a circuit split reopened all the final decisions on the issue in the circuits whose view was disapproved, finality in litigation would be an elusive goal rarely achieved. One example: district courts enter judgments in scores of employment cases every year—some appealed, some not—and almost every year, the Supreme Court issues one or more employment decisions. *See, e.g.*, *Muldrow v. City of St. Louis*, 144 S. Ct. 967 (2024); *Groff v. DeJoy*, 600 U.S. 447 (2023); *Houston Cmty. Coll Sys. v. Wilson*, 595 U.S. 468 (2022). Every Supreme Court decision could be cited by one side or the other in motions for relief from otherwise-long-final judgments. If a Supreme Court decision, without more, was ground for Rule 60(b)(6) relief, many employment cases, perhaps most, would never really end.

That *Jack Daniel's* does not match up with the Eleventh Circuit's analysis in this case is "hardly extraordinary." This is not an "exceptional circumstance" warranting relief under Rule 60(b)(6).

### III.  Substantive analysis of Jack Daniel's

*Rogers* established a two-part test for application of trademark law to at least some alleged infringement involving artistic expression. Under the test, the senior user of a mark can prevail against a junior use involving artistic expression only if the junior use (1) has no artistic relevance to the underlying work or (2) explicitly misleads as to the source or content of the work. There is an exception: the two-

part test does not apply to a junior user's title that is misleading and confusingly similar to a senior user's title. *See Rogers*, 875 F.2d at 999 n.5. The Eleventh Circuit adopted *Rogers*—but without mentioning the exception—in *University of Alabama Board of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012).

The defendants obtained summary judgment in this court based on *Rogers* and its progeny. On appeal, the defendants again relied on *Rogers*, while the plaintiffs invoked the *Rogers* exception. The Eleventh Circuit held the exception inapplicable because, it said, the plaintiffs did not use their Flora-Bama mark as a title. *MGFB Props., Inc. v. Viacom Inc.*, 54 F.4th 670, 683–84 (11th Cir. 2022). The court affirmed the summary judgment for the defendants. It is that summary judgment from which the plaintiffs now seek relief.

In *Jack Daniel's*, the defendant marketed a dog toy designed to look like a bottle of Jack Daniel's whiskey. Jack Daniel's sued for infringement. The Ninth Circuit applied *Rogers*, but the Supreme Court unanimously vacated the decision. The Supreme Court held that the *Rogers* two-part test, even if appropriate in other circumstances, "is not appropriate when the accused infringer has used a trademark *to designate the source* of its own goods—in other words, has used a trademark as a trademark." *Rogers*, 599 U.S. at 154 (emphasis added).

The plaintiffs say this means *Rogers* does not apply here, because, they say, the defendants have used MTV Floribama Shore "as a trademark." But the Supreme Court's reference to use "as a trademark" was shorthand for "to designate the source of its own goods." The Court said its holding was consistent with many lower-court applications of *Rogers*; they had applied *Rogers* when a mark was "used not to designate a work's source, but solely to perform some other expressive function." *Id*. at 154.

That is precisely the situation here. The defendants use "MTV" to designate the source of the television show, but not "Floribama." And the plaintiffs' complaint, of course, is not about the defendants' use of "MTV," but about their use of "Floribama." The defendants use Floribama "solely to perform some other expressive function"—to identify the part of the country and culture the show purportedly depicts.

To be sure, in one sense "MTV Floribama Shore"—the whole title—is used as a trademark. If one wishes to stream an episode of the show, one will search for the show by title. The title identifies the work. If an unrelated party creates a new show and calls it "Floribama Shore," the defendants might have an infringement action.

That is not, however, the reason for the defendants' use of Floribama in their show's title. The Supreme Court's discussion of a different Ninth Circuit case

illustrates the point. In *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 901 (9th 2002), the issue was whether the song "Barbie Girl" infringed the famous Barbie mark—the mark associated with the doll. The reference in the song was plainly to the doll or at least to traits purportedly associated with the doll—that was the whole point. The Ninth Circuit, citing *Rogers*, said this use was not infringing. In *Jack Daniel's*, 599 U.S. at 154, the Supreme Court agreed, giving this as an example of using a mark "not to designate [an allegedly infringing] work's source, but solely to perform some other expressive function." *Id*. at 154. Or, in the Court's shorthand, not using a trademark "as a trademark." *Id*. at 145.

If "Barbie Girl," which was plainly a reference to Barbie herself, was not a use of the Barbie mark "to designate the source" of the song—was not a use "as a trademark"—within the meaning of *Jack Daniel's*, then the defendants' use of "Floribama," *not* as a reference to the Flora-Bama itself, also is not a use of the Flora-Bama mark "to designate the source" of the show or "as a trademark," within the meaning of *Jack Daniel's*. *Rogers* remains applicable.

This conclusion is consistent with the Eleventh Circuit's decision affirming the summary judgment the plaintiffs now seek to vacate. The court referred to uses of Flora-Bama in artistic works of unrelated third parties in language that could as easily have been written about the defendants' use of Floribama:

> Telling here, third parties are not using Flora-Bama in their titles to their artistic works—songs, books, or a concert—to indicate their works

>are created, sung, or authored by the Plaintiffs. The titles are being used to identify what the song or the book is about, rather than who produced it. For example, the television program "Kenny Chesney Live at the Flora-Bama" describes the content of the broadcast (i.e., Kenny Chesney performing live at the Flora-Bama Lounge). Similarly, the title of the book Food n' Fun at the Flora-Bama describes the book's content (i.e., recipes by the owners, musicians, songwriters, bartenders, and others from the Lounge).
>
>Simply put, the titles are not being used as trademarks to identify and distinguish the source of the artistic works.

*MGFB Props., Inc. v. Viacom Inc.*, 54 F. 4th 670, 683 (11th Cir. 2022).

If this view is applied to the defendants' use of Floribama—which is indistinguishable in this respect from the use by the third parties the Eleventh Circuit was addressing in the quoted passage—the import is clear: *Rogers* still applies after *Jack Daniel's*, just as before. There has been no relevant change of law.

This conclusion is consistent with at least one decision applying *Jack Daniel's* in similar circumstances. *See Down to Earth Organics LLC v. Efron*, No. 22-cv-6218, 2024 WL 1376532, at *4–5 (S.D.N.Y. Mar. 31, 2024) (holding, after *Jack Daniel's*, that the defendants' use of the mark "Down to Earth" in a series of shows was permissible under *Rogers*, because the mark was used not as a source identifier but instead to describe the content of the shows).

The bottom line: the defendants are entitled to prevail on the merits, after *Jack Daniel's* as before. But even if this is not the *correct* reading of *Jack*

*Daniel's*, it is at least a *plausible* reading. The best that could be said for the plaintiffs at this point is that the decision *might* have changed the law in their favor, not that it clearly did so. Further, even if the decision *did* change the law in the plaintiffs' favor, rendering *Rogers* wholly inapplicable, and even if the case was here on the original summary-judgment motion rather than on a Rule 60(b) motion, the import would be only that the plaintiffs could go to trial, not that they would be entitled to prevail. Rare as it should be to vacate a judgment based on a clear change of law that would clearly change the outcome, it should be even more rare to vacate a judgment based on a merely arguable change of law that might or might not change the outcome. *See, e.g.*, *Ritter v. Smith*, 811 F.2d 1398, 1402–03 (11th Cir. 1987).

*Jack Daniel's* does not entitle the plaintiffs to relief under Rule 60(b).

## IV.  Diligence

This order could and would deny relief under Rule 60(b) based on the analysis to this point without further attention to the plaintiffs' diligence or lack of it. But the chronology should be noted:

    9/22/21:    summary judgment for defendants (this case);

    4/8/22:    briefing completed in Eleventh Circuit (this case);

    8/5/22:    petition for certiorari filed in *Jack Daniel's*;

    9/16/22:    oral argument in the Eleventh Circuit (this case);

11/21/22:     certiorari granted in *Jack Daniel's*;

11/29/22:     Eleventh Circuit opinion issued (this case);

12/28/22:     Eleventh Circuit mandate issued (this case);

1/21/23:      email anticipates GVR based on *Jack Daniel's*;

2/27/23:      deadline for certiorari petition (this case);

3/22/23:      oral argument in Supreme Court in *Jack Daniel's*;

6/8/23:       Supreme Court opinion issued in *Jack Daniel's*;

5/3/24:       current motion for relief from judgment (this case);

6/7–10/24:    commentary cited by plaintiffs in reply memo (this case).

To the extent an issue on the pending Rule 60 motion is when the plaintiffs knew, could have known, or should have known of the substantive argument they are now making, two things are noteworthy. First, the lower-court decisions the Supreme Court cited in *Jack Daniel's* as supporting its analysis of *Rogers* were decided before the summary-judgment papers were submitted in this case. The plaintiffs could have drawn from those decisions the same message the Supreme Court later drew from them. Second, at least by the time the Supreme Court briefs were filed in *Jack Daniel's*, it was clear *Rogers* was under review.

In support of their position that *Jack Daniel's* could not have been anticipated in time to raise the same argument in this case, the plaintiffs cite legal commentary from June 2024, as noted in the chronology set out above. *See* ECF

No. 213 at 5, 10. But the plaintiffs could have learned of *Jack Daniel's*' possible impact from earlier legal commentary—commentary that led me to send my law clerk the email also noted in the chronology:

> From: Robert Hinkle
> Sent: Saturday, January 21, 2023 10:23 AM
> To:
> Cc: Robert Hinkle
> Subject: Jack Daniels case
>
> I may have just forwarded to you the Bloomberg discussion of briefing in the Supreme Court on the Jack Daniels case.
>
> It's entirely possible we'll eventually get a GVR in our Florabama case.
>
> Robert L. Hinkle
> United States District Judge
> Northern District of Florida
> (850) 521-3601

When that email was sent, the plaintiffs still had time to petition for certiorari in this case. Had they done so, it is at least possible, perhaps likely, that the Supreme Court would have granted the petition, vacated the Eleventh Circuit decision, and remanded for further consideration in light of *Jack Daniel's*. The plaintiffs could have read the same legal news and drawn the same conclusion I did. They did not petition for certiorari.

A 60(b)(6) motion must be filed "within a reasonable time." Fed. R. Civ. P. 60(c). After *Jack Daniel's* was decided, the plaintiffs waited eleven more months before filing their motion. The delay is perhaps understandable for at least two reasons. First, the litigation was over, and the parties had moved on; that is what

happens when litigation ends. Second, it would not be unusual to hesitate before opening an old wound, especially when facing long odds, as the plaintiffs were here. That the delay was understandable does not mean it was reasonable.

Under the circumstances here—especially with alleged damages continuing to mount—this motion was not brought within a reasonable time.

## V. Conclusion

Had *Jack Daniel's* been decided before the summary judgment in this court and the Eleventh Circuit's affirmance of it, the result probably would have been the same. And in any event, the plaintiffs are not entitled to relief from the judgment.

IT IS ORDERED:

The motion to set aside the judgment, ECF No. 205, is denied.

SO ORDERED on August 1, 2024.

s/Robert L. Hinkle
United States District Judge
